JONATHAN M. JACOBSON, State Bar No. 1350495 (N.Y.)
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
1301 Avenue of the Americas, 40th Floor
New York, NY 10019
Tel.: (212) 999-5800
Fax: (212) 999-5899
Email: jjacobson@wsgr.com

*Attorneys for Defendant Netflix, Inc.*

NEAL MANNE, State Bar No. 94101 (Cal.)
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, Texas 77002
Tel.: (713) 651-9366
Fax: (713) 654-6666
Email: nmanne@susmangodfrey.com

*Attorneys for Defendants Wal-Mart Stores, Inc. and Walmart.com USA LLC*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| In re: ONLINE DVD RENTAL ANTITRUST LITIGATION | Case No.: M:09-cv-02029-PJH |
| | MDL No. 2029 |
| This document relates to: | Hon. Phyllis J. Hamilton |
| *Spears v. Netflix, Inc., Wal-Mart Stores, Inc, and Walmart.com USA LLC* (Case No. 8:09-cv-00665-RAL-TGW (M.D. Fla.)) | **DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO REMAND** |

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................................................................ii

PRELIMINARY STATEMENT .............................................................................................................1

BACKGROUND .....................................................................................................................................1

ARGUMENT ...........................................................................................................................................2

I.     THE AMOUNT IN CONTROVERSY UNDER CAFA IS CALCULATED ON AN AGGREGATE, NOT INDIVIDUAL, BASIS ...................................................................3

II.     DEFENDANTS HAVE MET THEIR BURDEN OF ESTABLISHING THAT THE AMOUNT IN CONTROVERSY EXCEEDS FIVE MILLION DOLLARS ......................3

    A.     Ninth Circuit Law Applies ....................................................................................3

    B.     Defendants Have Demonstrated That it is "More Likely Than Not" that the Amount in Controversy Exceeds Five Million Dollars............................................5

        1.     Defendants Need Only Prove the Amount in Controversy By A Preponderance of the Evidence. ...............................................................5

        2.     The Amount in Controversy Exceeds $5 Million. ......................................6

CONCLUSION ........................................................................................................................................9

DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION TO REMAND     -i-

**TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Abrego Abrego v. The Dow Chemical Co.*,
　　443 F.3d 676 (9th Cir. 2006) .................................................................................. 3, 5

*Bradley v. United States*,
　　161 F.3d 777 (4th Cir. 1998) ........................................................................................ 4

*Bryan v. Wal-Mart Stores, Inc.*,
　　2009 WL 440485 (N.D. Cal. 2009) ............................................................................. 7

*Caterpillar Inc. v. Williams*,
　　482 U.S. 386 (1987) ..................................................................................................... 9

*Chabner v. United of Omaha Life Ins. Co.*,
　　225 F.3d 1042 (9th Cir. 2000) ...................................................................................... 7

*Eckstein v. Balcor Film Investors*,
　　8 F.3d 1121 (7th Cir. 1993) .......................................................................................... 4

*Glazer v. Whirlpool Corp.*,
　　2008 WL 4534131 (N.D. Ohio 2008) ......................................................................... 8

*Goddard v. Google Inc.*,
　　2008 WL 4542792 (N.D. Cal. 2008) ........................................................................... 8

*Guglielmino v. McKee Foods Corp.*,
　　506 F.3d 696 (9th Cir. 2007) ....................................................................................... 5

*Harrington v. Mattel, Inc.*,
　　2007 WL 4556920 (N.D. Cal. 2007) ........................................................................... 7

*Holmes Group, Inc. v. Vornado Air Circulation Sys., Inc.*,
　　535 U.S. 826 (2002) ..................................................................................................... 9

*In re General Am. Life Ins. Co. Sales Practices Litig.*,
　　391 F.3d 907 (8th Cir. 2004) ........................................................................................ 4

*In re Genetically Modified Rice Litig.*,
　　576 F. Supp. 2d 1063 (E.D. Mo. 2008) ........................................................................ 4

*In re Korean Air Lines Disaster*,
　　829 F.2d 1171 (D.C. Cir. 1987),
　　aff'd, 490 U.S. 122 (1989) ............................................................................................ 4

*In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*,
　　2005 WL 106936 (S.D.N.Y. 2005) .............................................................................. 4

*In re MP3Power Razor Sys. Mktg. & Sales Practices Litig.*,
　　2007 WL 128846 (D. Mass. 2007) .............................................................................. 4

*Intel Corp. Microprocessor Antitrust Litig.*,
   436 F. Supp. 2d 687 (D. Del. 2006) .............................................................................. 6, 7

*Korn v. Polo Ralph Lauren Corp.*,
   536 F. Supp. 2d 1199 (E.D. Cal. 2008) ......................................................................... 5, 6

*Lowdermilk v. United States Bank Nat'l Ass'n*,
   479 F.3d 994 (9th Cir. 2007) ............................................................................................ 2

*McCraw v. Lyons*,
   863 F. Supp. 430 (W.D. Ky. 1994) .................................................................................. 6

*Menowitz v. Brown*,
   991 F.2d 36 (2d Cir. 1993) ............................................................................................... 4

*Murphy v. F.D.I.C.*,
   208 F.3d 959 (11th Cir. 2000) .......................................................................................... 4

*Newton v. Thomason*,
   22 F.3d 1455 (9th Cir. 1994) ............................................................................................ 4

*Sanchez v. Monumental Life Ins. Co.*,
   102 F.3d 398 (9th Cir. 1996) ............................................................................................ 5

*St. Paul Mercury Indem. Co. v. Red Cab Co.*,
   303 U.S. 283 (1938) ......................................................................................................... 9

*Temporomandibular Joint (TMJ) Implant Recipients v.
   E.I. duPont de Nemours & Co.*,
   97 F.3d 1050 (8th Cir. 1996) ............................................................................................ 4

*Valdez v. Allstate Ins. Co.*,
   372 F.3d 1115 (9th Cir. 2004) .......................................................................................... 6

*Valles v. Ivy Hill Corp.*,
   410 F.3d 1071 (9th Cir. 2005) .......................................................................................... 9

**STATUTES**

28 U.S.C. § 1332(d) ................................................................................................................ 1, 2

28 U.S.C. § 1332(d)(6) ................................................................................................................ 3

28 U.S.C. § 1453 ......................................................................................................................... 1

28 U.S.C. § 1711 ......................................................................................................................... 1

28 U.S.C. § 1712 ......................................................................................................................... 1

28 U.S.C. § 1713 ......................................................................................................................... 1

28 U.S.C. § 1714 ......................................................................................................................... 1

28 U.S.C. § 1715 ......................................................................................................................... 1

Defendants Netflix, Inc. ("Netflix"), Wal-Mart Stores, Inc. ("Wal-Mart Stores") and Walmart.com USA LLC ("Walmart.com") (together, "Defendants"), respectfully submit this memorandum of law in opposition to Plaintiff Carla Spears' motion for an order remanding this case to the Circuit Court of Hillsborough County, Florida ("Pl.'s Mot.").

**PRELIMINARY STATEMENT**

The complaint in this case alleges conduct that is identical to that alleged in the other 54 cases in MDL 2029. In March, after over thirty cases alleging that conduct had been filed in federal court on behalf of nationwide classes, Plaintiff, a Florida citizen, chose to file her complaint in Florida state court. Defendants – none of whom is a citizen of Florida – timely removed the action pursuant to 28 U.S.C. § 1332(d), as amended by the Class Action Fairness Act ("CAFA"). 28 U.S.C. §§ 1332(d), 1453, 1711-15. Plaintiff now seeks remand to Florida state court on the basis that the complaint was "expressly pled to circumvent federal jurisdiction" and because "Plaintiff, and each and every class member, each seek less than $75,000, including prorated attorneys' fees and costs." Pl.'s Mot. 1, 3. However, conclusory statements such as these do not deprive this Court of jurisdiction pursuant to CAFA. Moreover, the $75,000 *individual* damages threshold is irrelevant under CAFA. The issue instead is whether the *aggregate* amount in controversy equals or exceeds $5,000,000, and here it clearly does. Given that diversity of citizenship is not disputed, and that Defendants have met their burden of showing the aggregate amount in controversy in this case exceeds $5 million, Defendants have established federal jurisdiction under CAFA. Plaintiff has failed to carry her burden to demonstrate a basis for remand. Therefore, the Court should retain jurisdiction over this case.

**BACKGROUND**

Plaintiff Carla Spears is a Florida citizen who alleges that she purchased DVDs from Wal-Mart for her personal use sometime between May 15, 2005 and the present. Complaint ("Compl.") ¶ 9. Plaintiff filed her complaint on March 3, 2009 in the Circuit Court of Hillsborough County, Florida, on behalf of a proposed class that is defined as "[a]ny person in the state of Florida who paid a subscription fee to Netflix to rent DVDs and/or who purchased DVDs from Wal-Mart Stores, on or after May 19, 2005 up to the present." Compl. ¶ 22.

1   Plaintiff alleges that Netflix, Wal-Mart Stores, and Walmart.com entered into a conspiracy to
2   "divide" markets for online DVD rentals and the sale of new DVDs in the United States in
3   violation of the Florida Deceptive and Unfair Trade Practices Act.  Compl. ¶ 16.  This alleged
4   conspiracy purportedly resulted in increased Wal-Mart DVD prices and increased Netflix
5   subscription fees.  Compl. ¶¶ 2, 19.  The underlying conduct alleged in Plaintiff's complaint is
6   precisely that alleged in the cases centralized in this Court in *In re Online DVD Rental Antitrust*
7   *Litigation*, MDL-2029.

8   Defendants filed a joint Notice of Removal on April 8, 2009, based on jurisdiction under
9   CAFA.  The case was transferred to this Court by the Judicial Panel on Multi-district Litigation
10  ("JPML") for centralization and coordination within MDL-2029 on April 30, 2009.

11  None of the Defendants is a citizen of Florida, and diversity of citizenship is not disputed
12  here.  *See* Pl.'s Mot. 2.  Wal-Mart Stores is today, and was at the time the complaint was filed, a
13  publicly-traded corporation organized in Delaware, with its principal place of business in
14  Bentonville, Arkansas.  Notice of Removal ¶ 10. Walmart.com is today, and was at the time the
15  complaint was filed, a limited liability corporation organized in California, with a principal place
16  of business in Brisbane, California.  *Id.* ¶ 9.  Netflix is today, and was at the time the complaint
17  was filed, a Delaware corporation with a principal place of business in Los Gatos, California.  *Id.*
18  ¶ 8.

19                                     **ARGUMENT**

20  Defendants have established federal jurisdiction under CAFA.  As amended by CAFA,
21  28 U.S.C. § 1332(d) "vests district courts with original jurisdiction of any civil action in which,
22  inter alia, the amount in controversy exceeds the sum or value of $5,000,000, exclusive of
23  interest and costs, and in which the aggregate number of proposed plaintiffs is 100 or greater,
24  and any member of the plaintiff class is a citizen of a state different from any defendant."
25  *Lowdermilk v. United States Bank Nat'l Ass'n*, 479 F.3d 994, 997 (9th Cir. 2007) (citing 28
26  U.S.C. § 1332(d)) (internal marks omitted).  Plaintiff concedes that Defendants "successfully
27  assert a claim for diversity of citizenship" in the Notice of Removal, Pl.'s Mot. 2, and does not
28  dispute that Defendants have established jurisdiction under CAFA other than to challenge

DEFENDANTS' OPPOSITION TO PLAINTIFF'S         -2-
MOTION TO REMAND

whether Defendants have demonstrated that the amount in controversy exceeds $5 million. Thus, this memorandum addresses only whether this case meets the "amount in controversy" requirement of CAFA.[1]

## I. THE AMOUNT IN CONTROVERSY UNDER CAFA IS CALCULATED ON AN AGGREGATE, NOT INDIVIDUAL, BASIS

CAFA requires that "the claims of the individual class members . . . be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs." 28 U.S.C. § 1332(d)(6). As stated in *Abrego Abrego v. The Dow Chemical Co.*, "certain aspects of CAFA . . . evidence Congress's intent that the district courts' jurisdiction vis-à-vis certain kinds of actions be broadened rather than restricted. For example, under § 1332(d)(6), the claims of class members are aggregated to determine whether the amount in controversy exceeds $5,000,000." 443 F.3d 676, 684 (9th Cir. 2006). To consider the amount of each class member's claims, rather than the aggregate of the claims of the class as a whole, would both contravene CAFA and render its amount-in-controversy threshold meaningless. Therefore, Plaintiff's allegation that "the Plaintiff, and each and every class member, each seek less than $75,000, including prorated attorneys' fees and costs," Compl. ¶ 7, is irrelevant to the determination of whether the amount in controversy exceeds $5 million. As demonstrated below and in the Notice of Removal, Defendants have established that the aggregated amount in controversy exceeds $5 million as required under CAFA.

## II. DEFENDANTS HAVE MET THEIR BURDEN OF ESTABLISHING THAT THE AMOUNT IN CONTROVERSY EXCEEDS FIVE MILLION DOLLARS

### A. Ninth Circuit Law Applies

The law of the Ninth Circuit applies in analyzing whether Defendants have established the jurisdictional amount in controversy here. Plaintiff cites only Eleventh Circuit law in her motion to remand this case to Florida state court. Eleventh Circuit law is not binding on this

---

[1] Defendants have established, and Plaintiff does not dispute, that the class size exceeds 100 members. The number of Netflix subscribers in the State of Florida within the alleged class period of May 19, 2005 to the present has been, on average, approximately 350,000 subscribers per month. *See* Notice of Removal ¶ 16.

1   Court.  "Binding precedent for all [courts] is set only by the Supreme Court, and for the district
2   courts within a circuit, only by the court of appeals for that circuit [in the absence of Supreme
3   Court authority]."  *Newton v. Thomason,* 22 F.3d 1455, 1460 (9th Cir. 1994) (quoting *In re*
4   *Korean Air Lines Disaster,* 829 F.2d 1171, 1176 (D.C. Cir. 1987), *aff'd,* 490 U.S. 122, 109
5   (1989)).  Thus, when analyzing questions of federal law, a Court should apply the law of the
6   circuit in which it is located.  *See Newton*, 22 F.3d at 1460; *Temporomandibular Joint (TMJ)*
7   *Implant Recipients v. E.I. duPont de Nemours & Co.,* 97 F.3d 1050, 1055 (8th Cir. 1996);
8   *Murphy v. F.D.I.C.,* 208 F.3d 959, 964-65 (11th Cir. 2000); *Bradley v. United States,* 161 F.3d
9   777, 782 n.4 (4th Cir. 1998); *Menowitz v. Brown,* 991 F.2d 36, 40-41 (2d Cir. 1993); *Eckstein v.*
10  *Balcor Film Investors,* 8 F.3d 1121, 1126 (7th Cir. 1993).
11         This principle applies even in cases where a court obtains jurisdiction over an action
12  through a transfer by the JPML.  *In re General Am. Life Ins. Co. Sales Practices Litig.*, 391 F.3d
13  907, 911 (8th Cir. 2004) ("When a transferee court receives a case from the MDL Panel, the
14  transferee court applies the law of the circuit in which it is located to issues of federal law.").  As
15  explained in *In re Korean Air Lines Disaster*, policy considerations weigh strongly in favor of
16  this approach, as it would be "logically inconsistent to require one judge to apply simultaneously
17  different and conflicting interpretations of what is supposed to be a unitary federal law." 829
18  F.2d at 1175-76.  A motion to remand an action to state court in a multi-district litigation is no
19  exception.  *See*, *e.g.*, *In re MP3Power Razor Sys. Mktg. & Sales Practices Litig.*, 2007 WL
20  128846, at *4 (D. Mass. 2007) (applying the law of the First Circuit to a motion to remand an
21  action to California state court in a multi-district litigation).
22         Here, the Court must determine how a federal statute applies to Plaintiff's claims.
23  Because a question of federal law – specifically, the interpretation of CAFA – is required in this
24  case, this Court should apply Ninth Circuit law, rather than Eleventh Circuit law.  *See Newton*,
25  22 F.3d at 1460; *In re Korean Air Lines Disaster*, 829 F.2d at 1175-76; *In re Genetically*
26  *Modified Rice Litig.*, 576 F. Supp. 2d 1063, 1077 (E.D. Mo. 2008) (resolving federal due process
27  questions in multi-district litigation by applying Eighth Circuit law, the circuit in which the court
28  is located); *see also In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.,* 2005 WL

106936, at *4 n.37 (S.D.N.Y. 2005) (listing examples of district court opinions holding that questions of federal law are governed by the law of the transferee circuit).

> **B.** **Defendants Have Demonstrated That it is "More Likely Than Not" that the Amount in Controversy Exceeds Five Million Dollars**
>
> > ***1.*** ***Defendants Need Only Prove the Amount in Controversy By A Preponderance of the Evidence.***

In the Ninth Circuit, a defendant asserting jurisdiction must meet different burdens depending on the underlying allegations in the complaint. *Abrego Abrego*, 443 F.3d at 685. Where, as here, a plaintiff fails to plead a specific amount of aggregate damages, the defendant seeking removal "must prove by a preponderance of the evidence that the amount in controversy requirement has been met." *Id.* at 683.

Plaintiff concedes that the amount in controversy is not stated in the Complaint. Pl.'s Mot. 2. Plaintiff, however, alleges that she and each class member seeks less than $75,000, and that the case was "expressly pled to circumvent federal jurisdiction." Pl.'s Mot. 1; Compl. ¶¶ 5, 7. These allegations, in addition to being irrelevant to whether the amount in controversy meets the CAFA requirement, are insufficient to trigger a more rigorous burden of proof. Even where a complaint alleges that damages are below the amount in controversy, but does not specify a total amount in controversy, the preponderance standard applies. *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 701 (9th Cir. 2007) (finding that the preponderance of the evidence standard applied where plaintiff alleged in a CAFA case that the sum of damages to each defendant was below $75,000 but did not allege a total dollar amount in controversy). Thus, Defendants need only establish the amount in controversy by a preponderance of the evidence.

Under the preponderance of the evidence standard, a defendant must provide evidence that it is "'more likely than not' that the amount in controversy" satisfies the federal diversity jurisdictional amount requirement. *Sanchez v. Monumental Life Ins. Co.,* 102 F.3d 398, 404 (9th Cir. 1996). The burden is "not 'daunting,' as courts recognize that under this standard, a removing defendant is not obligated to 'research, state, and prove the plaintiff's claims for damages.'" *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1204-05 (E.D. Cal. 2008)

(quoting *McCraw v. Lyons*, 863 F. Supp. 430, 434 (W.D. Ky. 1994)).  Defendants have easily carried the preponderance burden.

## 2. The Amount in Controversy Exceeds $5 Million.

Defendants have established by a preponderance of the evidence – indeed by overwhelming and uncontroverted evidence – that the amount in controversy in this case exceeds $5 million.  As demonstrated in the Notice of Removal and accompanying declarations, the amount in controversy exceeds $5 million if Plaintiff is claiming merely that the alleged conspiracy allowed the Wal-Mart defendants to raise prices on each DVD sold to the alleged class by less than two cents.  Notice of Removal ¶ 21.  Similarly, the amount in controversy exceeds $5 million if Plaintiff claims that the alleged conspiracy allowed Netflix to raise prices on its subscriptions by just eleven cents.  *Id.*  If the alleged damages inflicted on the class by both defendants are combined, as is appropriate when assessing the amount in controversy under CAFA, the alleged price increase resulting from the purported conspiracy would have to be truly miniscule not to exceed $5 million in the aggregate.  This evidence, never controverted by the plaintiff, requires the conclusion that the amount in controversy exceeds $5 million.  *See*, *e.g.*, *Intel Corp. Microprocessor Antitrust Litig.*, 436 F. Supp. 2d 687, 690 (D. Del. 2006) (concluding that in order for the amount in controversy to fall below $5,000,000, the damages per microprocessor would be based on an "implausibly low figure"). [2]

The bases for these calculations are as follows:

- Wal-Mart Stores sold more than 88 million DVDs in Florida during the alleged conspiracy period.  Notice of Removal ¶ 15.  Based on the volume of DVD sales, Plaintiff would only have to assert an overcharge of less than $0.06 per DVD from Wal-Mart Stores to put more than $5 million in damages at issue.  *Id.*

---

[2] In determining whether a case ought to be remanded to state court, a court may consider "summary-judgment-type evidence relevant to the amount in controversy at the time of removal, such as affidavits or declarations."  *Korn*, 536 F. Supp. 2d at 1205 (citing *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004) (internal marks omitted).

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO REMAND -6-

1       ● The number of Netflix subscribers in the State of Florida within the alleged class period of May 19, 2005 to the Notice of Removal filing date was, on average, approximately 350,000 subscribers per month. *Id.* ¶ 16. Based on the 47 months within Plaintiff's alleged class period, there were approximately 16.45 million monthly subscription charges. *Id.* Plaintiff would only have to assert an overcharge of $0.31 per monthly subscription charge from Netflix to put more than $5 million in damages at issue. *Id.*

●  Neither the $0.06 amount for DVD sales nor the $0.31 per rental subscription takes into account the statutory trebling Plaintiff demands. Compl. at 10. The amount of the overcharge required to exceed the aggregate amount in controversy is even less once treble damages are considered—less than $0.02 for any DVD sale or less than $0.11 for any monthly subscription fee. Notice of Removal ¶ 21. *See Chabner v. United of Omaha Life Ins. Co.*, 225 F.3d 1042, 1046 n.3 (9th Cir. 2000) (indicating that treble damages are taken into account in determining amount in controversy). Once the potential damages against both Defendants are aggregated – thus combining DVD sale damages with DVD rental damages – Plaintiff needs to seek even less to exceed the aggregate amount in controversy. It is undeniable that Plaintiff seeks damages in excess of those tiny amounts. Claims below those amounts would be "implausibly low." *Intel Corp. Microprocessor Antitrust Litig.*, 436 F. Supp. 2d at 690. Indeed, the case would never have been brought if the damages Plaintiff hopes to recover were less.

By presenting facts to demonstrate the large quantity of DVDs sold and DVD rental subscription fees paid during the alleged class period and the miniscule amount of damages that Plaintiff would need to assert to exceed the amount in controversy, Defendants have met the preponderance of evidence standard. In other words, Defendants have shown that it is more likely than not that Plaintiff is seeking damages in excess of the aggregate amount in controversy. *See, e.g*, *Bryan v. Wal-Mart Stores, Inc.*, 2009 WL 440485, at *2-3 (N.D. Cal. 2009) (holding that defendant satisfied amount-in-controversy requirement in an unpaid wage case where defendant submitted evidence of estimated damages through calculations based on salary assumptions); *Harrington v. Mattel, Inc.*, 2007 WL 4556920, at *3-4 (N.D. Cal. 2007) (where Defendant provided estimated costs of medical testing and number of children affected

DEFENDANTS' OPPOSITION TO PLAINTIFF'S                     -7-
MOTION TO REMAND

by recalled toys, Defendant "sufficiently demonstrated that the CAFA amount in controversy standard has been met"); *Glazer v. Whirlpool Corp.*, 2008 WL 4534131, at *2 (N.D. Ohio 2008) (finding sales data regarding the number of allegedly defective washers and the estimated cost of repairing such washers sufficient to meet the Defendant's burden under a preponderance of the evidence standard).

The reasoning employed by the court in *Goddard v. Google Inc.*, 2008 WL 4542792 (N.D. Cal. 2008), is instructive. In *Goddard*, Plaintiff brought a class action on behalf of those charged for unauthorized mobile content services after defendant Google allowed third parties to advertise allegedly deceptive cellular telephone subscription services through its AdWords program. Because Plaintiff did not allege an amount in controversy that was facially apparent, the court examined whether it was more likely than not that Plaintiff's claims exceeded the amount in controversy. Google argued that, if the Court accepted Plaintiff's allegations as true, Google could be required to disgorge revenues received from 250 allegedly deceptive cellular telephone subscription service advertisers at a rate of $10,000 per month and throughout the four-year period covered by Goddard's complaint. *Id.* at *2. This would result in $480,000 for each fraudulent advertiser. *Id.* The court concluded that even if only eleven of the purported 250 Google advertisers engaged in the alleged fraud, the CAFA threshold would be met. *Id.* In combination with evidence submitted by Google concerning quarterly revenues of over $5 billion in the first quarter of 2008, the court concluded that Google had met its burden of establishing by a preponderance of the evidence the CAFA amount in controversy. *Id.* at *3.

The Notice of Removal in this case applies reasoning similar to that used in the *Goddard* case. If Plaintiff's claims are true, Netflix, Wal-Mart, and Walmart.com could be required to provide compensation for overcharges to all Florida Wal-Mart DVD purchasers, who purchased approximately 88 million DVDs, and all Florida Netflix DVD rental subscribers, who purchased approximately 16.45 million monthly subscriptions, during the more than four years covered by Plaintiff's Complaint. If the claimed overcharges for DVD subscriptions alone exceeded eleven cents per month, then the CAFA threshold is met. If the claimed overcharges for DVD sales alone reached two cents per DVD, then the CAFA threshold is met. Based on these facts,

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO REMAND                                   -8-

Defendants have established that it is far more likely than not that the damages sought by Plaintiff exceeds the CAFA aggregate amount in controversy.

As "master of her complaint," Plaintiff could put to rest any doubt that the purported class seeks less than $5,000,000 in aggregate damages. *See Holmes Group, Inc. v. Vornado Air Circulation Sys., Inc.,* 535 U.S. 826, 831 (2002); *Caterpillar Inc. v. Williams,* 482 U.S. 386, 398-99 (1987); *St. Paul Mercury Indem. Co. v. Red Cab Co.,* 303 U.S. 283, 288-89 (1938); *Valles v. Ivy Hill Corp.,* 410 F.3d 1071, 1075 (9th Cir. 2005). Plaintiff's failure to do so confirms that the contrary is true: Plaintiff will seek more than $5,000,000 in aggregate damages. Plaintiff's intentional silence on the amount in controversy should not serve as the basis for remand in light of the uncontroverted evidence submitted. Therefore, the Court should retain jurisdiction over this case.

## CONCLUSION

For the foregoing reasons, Defendants Netflix and Wal-Mart respectfully request that the Court deny Plaintiff's motion to remand this action to the Circuit Court of Hillsborough County, Florida.

Date: June 17, 2009

Respectfully Submitted,

WILSON SONSINI GOODRICH & ROSATI
PROFESSIONAL CORPORATION

By: /s/ Jonathan M. Jacobson
    Jonathan M. Jacobson
    Sara Ciarelli Walsh
    1301 Avenue of the Americas, 40th Floor
    New York, New York 10019
    Telephone: (212) 999-5800
    Facsimile: (212) 999-5899
    Email: jjacobson@wsgr.com

Keith E. Eggleton
650 Page Mill Road
Palo Alto, California 94304
Telephone: (650) 493-9300
Facsimile: (650) 493-6811
Email: keggleton@wsgr.com

*Attorneys for Defendant Netflix, Inc.*

SUSMAN GODFREY L.L.P.

By: /s/ Neal S. Manne
    Neal S. Manne
    Richard W. Hess
    1000 Louisiana Street, Suite 5100
    Houston, Texas 77002
    Telephone: (713) 651-9366
    Facsimile: (713) 654-6666
    Email:  nmanne@susmangodfrey.com

    Marc M. Seltzer
    Stephen E. Morrissey
    Kathryn P. Hoek
    1901 Avenue of the Stars, Suite 950
    Los Angeles, CA 90067
    Telephone: (310) 789-3100
    Facsimile: (310) 789-3150
    Email:  mseltzer@susmangodfrey.com

*Attorneys for Defendants Wal-Mart Stores, Inc. and Walmart.com USA LLC*

1 | JONATHAN M. JACOBSON, State Bar No. 1350495 (N.Y.)
WILSON SONSINI GOODRICH & ROSATI
2 | Professional Corporation
1301 Avenue of the Americas, 40th Floor
3 | New York, NY 10019
Tel.: (212) 999-5800
4 | Fax: (212) 999-5899
Email: jjacobson@wsgr.com
5
*Attorneys for Defendant Netflix, Inc.*
6

7 | NEAL MANNE, State Bar No. 94101 (Cal.)
SUSMAN GODFREY L.L.P.
8 | 1000 Louisiana Street, Suite 5100
Houston, Texas 77002
9 | Tel: (713) 651-9366
Fax: (713) 654-6666
10 | Email: nmanne@susmangodfrey.com
11
*Attorneys for Defendants Wal-Mart Stores, Inc. and*
12 | *Walmart.com USA LLC*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| In re: ONLINE DVD RENTAL ANTITRUST LITIGATION | Case No.: M:09-cv-02029-PJH |
| | MDL No. 2029 |
| This document relates to: | Hon. Phyllis J. Hamilton |
| *Spears v. Netflix, Inc., Wal-Mart Stores, Inc, and Walmart.com USA LLC* (Case No. 8:09CV-0065-RAL-TG (M.D. Fl.) | **CERTIFICATE OF SERVICE** |

CERTIFICATE OF SERVICE        1

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO REMAND was served on the 17th day of June, 2009 as follows:

**Via First Class Mail and**
**Northern District of California CM/ECF Electronic Filing System**

Paul W. Rebein, Esq.
The Rebein Law Firm, PLLC
500 East Kennedy Blvd.
Suite 100
Tampa, Florida 33602
(813) 356-0567

**Via Northern District of California CM/ECF Electronic Filing System**

All counsel of record.

/s/ Sara Ciarelli Walsh
Sara Ciarelli Walsh

CERTIFICATE OF SERVICE                 2