

525 Market Street
Suite 3600
San Francisco, CA 94105-2708
www.howrey.com

**Emily L. Maxwell**
Partner
T 415.848.4947
F 415.848.4999
maxwelle@howrey.com

September 3, 2010

BY ECF

Hon. Magistrate Judge Joseph C. Spero
United States District Court for the Norther District of California
450 Golden Gate Avenue
San Francisco, CA 94102

> **Re:** ***In re Online DVD Rental Antitrust Litigation,***
> **No. 4:09-md-2029 PJH (JCS) (N.D.Ca.)**

Dear Judge Spero:

Pursuant to Federal Rule of Civil Procedure 26(f), your Honor's Standing Order on Discovery Disputes as revised November 3, 2008 and your Honor's Notice of Reference and Order re Discovery Procedures, MDL 09-2029 (N.D.Cal. July 14, 2009) ("Discovery Procedures Order"), Plaintiffs and non-party Blockbuster, Inc. ("Blockbuster") and its former executives (collectively the "Witnesses" or "Individual Non-Parties").

## PLAINTIFFS' POSITION

Through this Joint Letter, Plaintiffs seek to compel the deposition testimony from current and former executives of Blockbuster (collectively, "Witnesses"):

1. <u>Shane Evangelist</u>: Former Senior Vice President and General Manager of Blockbuster Online, responsible for launching and operating Blockbuster's Online DVD Rental service from 2004-2007, who made numerous public statement concerning the facts at issue;

2. <u>John Antioco</u>: Former Chief Executive Officer of Blockbuster through 2007, who met and communicated privately with Netflix CEO Reed Hastings on numerous occasions and made public statements concerning Blockbuster's pricing practices and ascribed certain of its pricing decisions to actions taken by Netflix;

3. <u>Edward Stead</u>: Former Executive Vice President and General Counsel through 2006, who met and communicated privately with Netflix CEO Reed Hastings on numerous occasions and discussed competitively sensitive information; and

AMSTERDAM  BRUSSELS  CHICAGO  EAST PALO ALTO  HOUSTON  IRVINE  LONDON  LOS ANGELES
MADRID  MUNICH  NEW YORK  NORTHERN VIRGINIA  PARIS  SALT LAKE
CITY  SAN FRANCISCO  TAIPEI  WASHINGTON, DC

4. <u>James Keyes</u>: Current Chief Executive Officer from 2007 to present, who met and communicated privately with Netflix CEO Reed Hastings on numerous occasions.

Despite the obvious relevance of their testimony and the relative lack of burden that a deposition would entail, the Witnesses – who are represented by Blockbuster's counsel – have refused to appear or articulate circumstances under which they would appear.

Particularly when viewed in the context of Blockbuster's overall strategy to avoid responding to the parties' discovery requests, the Witnesses' intransigence reveals a classic "runaround." On the one hand, Blockbuster refuses to proffer a corporate witness in response to Plaintiffs' April 8, 2010 30(b)(6) deposition subpoena, claiming that "most of the executives and employees involved in Blockbuster's early online operations no longer work at the company" and that, "[a]s a result, Blockbuster does not have corporate knowledge on many of the topics listed in the Subpoena." *See Non-party Blockbuster Inc's Motion to Quash, Motion for a Protective Order, and Brief in Support* at 3 (Attachment A to the Declaration of Emily Maxwell ("Maxwell Decl.")). On the other hand, Blockbuster's counsel – *now on behalf of those same former executives* – objects that these individuals "have no unique and superior personal knowledge of facts significant to this lawsuit," and should not be burdened with answering questions about "events that took place more than five years ago." *Non-Parties John Antioco and Edward Stead's Motion to Quash, Motion for a Protective Order, and Brief in Support* at 3 (Maxwell Decl. Attachment B) ("Antioco & Stead MTQ"); *see also Non-Party Shane Evangelist's Objections to Plaintiffs' Subpoena to Testify at Deposition in a Civil Action* at ¶ 2 (Maxwell Decl. Attachment C) ("Evangelist Objections"). Ironically, each Witness decries Plaintiffs' failure to seek the testimony from other sources. Maxwell Decl. Attachment B (Antioco and Stead MTQ) at 6; Maxwell Decl. Attachment C (Evangelist Objections) at ¶ 6; *Non-party James W. Keyes' Motion to Quash, Motion for a Protective Order, and Brief in Support* at 7 (Maxwell Decl. Attachment D ) ("Keyes MTQ").

In addition, each Witness has resisted compliance by filing (or expressing their intent to file) motions to quash in districts foreign to this MDL court, in violation of the precept that all pretrial proceedings in this consolidated action "***shall*** be conducted by" this Court. 28 U.S.C. § 1407(b) (emphasis added). *See* § III, *infra*. In so doing, the Witnesses have delayed these proceedings and frustrated the purpose of this MDL.

Putting aside curious juxtapositions and procedural tactics, the Witnesses simply cannot support a showing of undue burden as to these individual depositions, or refute Plaintiffs' showing that the requested testimony is directly relevant to this case. Given their refusal to cooperate, this Court's intervention is necessary.

I.   **BACKGROUND**

   a.   **History of the Discovery Dispute and of Plaintiffs' Efforts to Comply with This Court's Rules of Practice**

**HOWREY** LLP

On July 16, 2010, counsel for Blockbuster accepted service of deposition subpoenas issued to Witnesses Antioco, Stead and Evangelist. Plaintiffs' Counsel subsequently served a deposition subpoena on Witness Keyes on August 13, 2010.

On August 13, 2010, counsel for the Witnesses sent Plaintiffs' Counsel a letter seeking a meet and confer session on a motion to quash the Evangelist subpoena he intended to file in the Central District of California, as required by Local Rule 37-1 of that District. Maxwell Decl. Attachment E.

On August 16, 2010, counsel for Antioco and Stead moved the Northern District of Texas to quash the deposition subpoenas to those individuals. *See* Maxwell Decl. Attachment B (Stead and Antioco MTQ). Counsel for the Witnesses did not make any meaningful "meet and confer" efforts prior to filing their motion, instead simply telephoning Plaintiffs' Counsel to inform them of their intent to file the motion the same day it was filed. *Id.* at 10.

On August 17, 2010, Plaintiffs informed counsel for the Witnesses that they intended to cross-move to compel testimony pursuant to the outstanding subpoenas, and (in accordance with this Court's Discovery Procedures Order) demanded an "in-person" videoconference meet and confer session.[1]  Maxwell Decl. Attachment F. Plaintiffs suggested the videoconference take place contemporaneously with the meet and confer session on the Evangelist motion to quash. Counsel for Plaintiffs and the Witnesses agreed to a meet and confer to take place on Thursday, August 26, regarding Witness depositions. Counsel for the Witnesses did not agree to participate via videoconference. *See* Maxwell Decl. Attachments G and H.[2]

Counsel for the Witnesses moved to quash the Keyes subpoena on August 24, 2010, again in the Northern District of Texas and again without any meaningful meet and confer efforts. Maxwell Decl. Attachment D. Indeed, when presented with this motion, Magistrate Judge Ramirez issued an order explicitly noting the lack of adequate meet and confer efforts and ordering the parties to the dispute to meet and confer either face to face or by video teleconference. *See* Maxwell Decl. Attachment I.

On the heels of their Texas Court's order requiring a video conference meet and confer, and only a few hours before the scheduled August 26th telephone call, counsel for the Witnesses expressed a change of position on their willingness to participate via video conference. *See* Maxwell Decl. Attachment J. Unfortunately, the logistics of the videoconference – which Plaintiffs had requested earlier in the week and the Witnesses' counsel had rejected until hours before the scheduled time – could not be coordinated on such short notice.

---

[1]  Counsel for the witnesses was provided the Discovery Procedures Order on July 26, 2010.

[2]  Counsel for the witnesses had previously indicated they were only willing to participate in videoconference meet and confer sessions if paid to do so.

**HOWREY**

During the August 26, 2010 meet and confer, Plaintiffs' Counsel described why the Witnesses' testimony would be relevant. Counsel for the Witnesses not only failed to make any specific argument to the contrary, but refused to even confirm that he had interviewed his clients to determine what relevant information they might possess. Witnesses' counsel failed to describe any circumstances under which any of the Witnesses would be willing to sit for deposition.

Plaintiffs and the Witnesses were unable to come to resolution on these matters in follow-up discussions.

**b.   Description of the Witnesses**

Blockbuster occupies a unique place in this Litigation, insofar as one of the putative classes consists wholly of its customers and insofar as it serves as the only current competitor to Netflix, the sole remaining defendant in this Action.

Judge Hamilton has expressed particular interest in discovery related to Blockbuster. In her July 6, 2010 order denying Defendants' Motion to Dismiss, she specifically noted discovery may "prove the precise nature of Blockbuster's pricing in relation to Netflix's, or may demonstrate Blockbuster's awareness of the purportedly unlawful market agreement well prior to the agreement's public announcement, as well as the timing and substance of Blockbuster's response thereto." Order Denying Motion to Dismiss Second Amended Complaint, *In re Online DVD Rental Antitrust Litig.*, MDL-2029, at 10 (N.D. Cal. July 6, 2010). As set forth more fully in § IV(b), *infra*, each Witness possesses personal knowledge about one or more of these issues, which would be unavailable from any other source. Indeed, counsel for the Witnesses, in his capacity as counsel for Blockbuster, has indicated that certain information Plaintiffs seek from that entity is no longer available, as the employees possessing the relevant information are no longer in the employment of Blockbuster. Maxwell Decl. Attachment A at 3 (asserting "most of the executives and employees involved in Blockbuster's early online operations no longer work at the company").

**c.   Proceedings Before the MDL Panel**

Counsel for the Witnesses has also represented Blockbuster in discovery matters arising out of these consolidated proceedings. On April 8, 2010, Plaintiffs served a subpoena for 30(b)(6) deposition testimony on Blockbuster, which Blockbuster moved to quash in the Northern District of Texas. Because the Rules of the Judicial Panel on Multidistrict Litigation (J.P.M.L.) require Plaintiffs to notify the J.P.M.L of any potential "tag-along" action (i.e. an action pending in a District Court containing questions of law or fact similar to those in the MDL action), Plaintiffs filed a Notice of Tag-Along with the J.P.M.L. on May 18, 2010. J.P.M.L. Rule 7.5 (e). That Panel issued a Conditional Transfer Order on June 22, 2010, and Blockbuster sought to vacate that order. Blockbuster's effort to vacate the Conditional Transfer Order is

scheduled to be considered at the J.P.M.L. hearing on September 30, 2010.  That motion to quash will accordingly not be heard until early October, at the earliest.

Plaintiffs have also notified the J.P.M.L. of the various motions to quash filed on behalf of the Witnesses and expect a similar delay before that Panel transfers those motions to this Court.

## II.   AREAS OF DISAGREEMENT

Plaintiffs believe that this Court is the proper forum for this dispute, and each Witness disputes that contention.

In addition, each Witness has objected that (1) they possess no information relevant to this case, (2) the information sought is duplicative of information that can be obtained by the parties themselves, (3) the information sought is privileged and/or confidential, and (4) compliance would impose an undue burden.  Plaintiffs disagree with each of these contentions, and contend each Witness should be compelled to sit for deposition.

Keyes also contends that he is an "apex witness," that Plaintiffs cannot show he has any unique personal knowledge related to the cases before this Court, and that he should accordingly be excused from testifying.  Plaintiffs contend Mr. Keyes does have unique and personal knowledge of relevant facts and should accordingly be compelled to testify.

The "compromise" offered by counsel for the Witnesses – to hold the Evangelist deposition and to sit idle on all other witnesses for what may be weeks – is unreasonable.  Each and every witness subpoenaed is directly relevant to the case, and Plaintiffs are entitled to seek their testimony.  The witnesses' proposal therefore ignores precedent and would therefore only add delay to discovery in this case.  In fact, if the witnesses did not agree to appear after Mr. Evangelist's testimony, under the current discovery schedule there would not be sufficient time to move to compel the depositions and take them.  Thus, the delay would preclude the depositions from taking place as a practical matter.

## III.   THIS COURT IS THE PROPER FORUM FOR THIS DISPUTE

Blockbuster's challenge to this Court's ability to hear this dispute has no merit.  When multidistrict litigation is consolidated in a single forum pursuant to 28 U.S.C. § 1407, all pretrial proceedings "***shall*** be conducted by a judge or judges to whom such actions are assigned." 28 U.S.C. § 1407(b) (emphasis added).  To enable compliance with this mandate, transferee judges are specifically empowered to "exercise the powers of a district judge in any district for the purpose of conducting pretrial depositions." *Id.*  For that reason, MDL courts regularly preside over discovery disputes arising out of subpoenas served in foreign jurisdictions. *See, e.g. In re Intel Corp. Microprocessor Antitrust Litigation*, No. 05-1717, 2008 WL 5156628, at *1 (D. Del. Dec. 5, 2008).  Indeed, non-MDL courts presiding over discovery disputes arising out of MDL proceedings commonly transfer those disputes to the MDL court for resolution. *See, e.g. In re*

**HOWREY** LLP

*Subpoenas Served on Wilmer, Cutler & Pickering & Goodwin Proctor LLP*, 255 F.Supp.2d 1, 1-3 (D.D.C. 2003) (same); *Orthopedic Bone Screw Products Liability Litigation*, 79 F.3d 46, 48 (7th Cir. 1996).

The practical reasons for this rule are well demonstrated by the present circumstances. The Witnesses would have this dispute resolved by at least three separate proceedings before three separate tribunals, rather than in a single, unified proceeding before this Court. The separate proceedings sought by the Witnesses would be in addition to a fourth motion to quash the 30(b)(6) subpoena directed at Blockbuster, which the Witnesses' same counsel has filed in the Northern District of Texas. Moreover, counsel for the Witnesses has taken the position that Plaintiffs should be required to pursue documents from Blockbuster through a *fifth* proceeding in the Northern District of Texas.

The multiple proceedings sought by the Witnesses are wholly inconsistent with the efficiencies the Section 1407 transfer seeks to create. A "principal purpose of § 1407 is to allow one judge to take control of complex proceedings." *Orthopedic Bone Screw*, 79 F.3d at 48. Counsel for the Witnesses' insistence to the contrary is wholly unsupported by either law or logic, and has had the practical effect of significantly impeding progress of the case before this Court. *Id.* at 48 (noting transferee court "is much better situated . . . to know whether the depositions plaintiffs seek to take . . . are appropriate, cost-justified steps toward resolution of the litigation."); *Intel*, 2008 WL 5156628, at *1 (noting "the purposes of the MDL designation are served by ensuring that the parties and third party witnesses to this litigation are under the jurisdiction of [the MDL] Court when discovery disputes arise.").

Nor does the fact that counsel for the Witnesses has filed Motions to Quash in foreign jurisdictions prevent this Court from hearing the instant Motion to Compel. As set forth above, those motions were filed in the wrong jurisdiction, and the Witnesses should not be rewarded for seeking relief in an improper forum.

## IV.   PLAINTIFFS ARE ENTITLED TO THE DEPOSITIONS IN QUESTION

### a.   Standards of Law

It is "well settled that the scope of discovery under a subpoena is the same as the scope of discovery under Federal Rules of Civil Procedure 26(b) . . . ." *LG Display Co., Ltd. v. Chi Mei Optroelectronics Corp.*, 08-2408, 2009 WL 223585, at *2 (S.D.Cal. Jan 28, 2009) (compelling third party to produce documents and sit for deposition). It is similarly well-settled that "Rule 26(b) permits the examination of a deponent on `any matter, not privileged, which is relevant to the subject matter involved in the pending action.'" *U.S. v. American Optical Co.*, 39 F.R.D. 580, 582 (N.D.Cal.1966) (quoting F.R.C.P. 26(b)). Accordingly, if the recipient of a deposition subpoena possesses relevant information, that recipient must sit for deposition unless he or she can demonstrate that compliance would be "unduly burdensome." *LG Display Co.*, 2009 WL 223585, at *2.

**b.   Each Deponent Possesses Information Relevant to the Subject Matter Involved in the Pending Actions**

**i.   John Antioco**

John Antioco served as Blockbuster's CEO through August 2007, and accordingly presided over Blockbuster's entry into the Online DVD Rental Market. While serving in that capacity, he made public statements concerning Blockbuster's pricing decisions and directly ascribed certain of those decisions to pricing decisions made by Netflix. *See Blockbuster Subscribers Consolidated Second Amended Class Action Complaint* at ¶ 66. He therefore has direct personal knowledge of the "nature of Blockbuster's pricing in relation to Netflix's," MTD Opinion at 11. He also met privately on numerous occasions during the class period with Netflix CEO Reed Hastings. (Barile Decl. in Support of Class Cert Ex. 72, 74, 75, 76, 77, 78, 79) (under seal).

**ii.   Edward Stead**

Edward Stead served as Executive Vice President and general Counsel of Blockbuster through February 2006. Plaintiffs allege he met and exchanged competitively sensitive information with Reed Hastings of Netflix on January 26, 2005, and that he kept in contact with Hastings throughout the Class Period, which facilitated pricing similarities between Netflix and Blockbuster. *See Blockbuster Subscribers Consolidated Second Amended Class Action Complaint* at ¶ 88. The meeting was carefully planned. (*See* Barile Decl. in Opposition to Defendants Mot. to Dismiss Second Blockbuster Compl. at Ex. A-D (Docket 174-4). Stead and Hastings met and communicated other times as well. (Barile Decl. in Support of Class Cert Ex. 72) (under seal). He accordingly has personal knowledge of the precise nature of Blockbuster's pricing relative to Netflix's and of non-public communications between Netflix and Blockbuster, and should be compelled to testify.

**iii.   James W. Keyes**

James W. Keyes is Blockbuster's current Chief Executive Officer and has served in that capacity from 2007 to present. Among other things, he has met numerous times with Netflix CEO Reed Hastings. Documents reflecting this have been submitted with Plaintiffs' motion for Class Certification. (See Barile Decl. in Support of Class Cert Ex. 80, 81, 82, 83) (under seal). Keyes has presided over Blockbuster during the time that the relevant market consisted of only two firms – Blockbuster and Netflix. Under the command of Keyes, Blockbuster maintained the exact same price as Netflix for basic online DVD rental subscription plans. Keyes' testimony as to his meetings with Hastings (and Blockbuster's responses thereto), as well as to the "nature of Blockbuster's pricing in relation to Netflix's," MTD Opinion at 11, is uniquely within Keyes' personal knowledge, and should be compelled.

**iv.   Shane Evangelist**

Evangelist served as the Senior Vice President and General Manager of Blockbuster Online from 2004 to 2007. Public reports indicate he "was responsible for leading the creation,

**HOWREY** LLP

development and launch of Blockbuster's online movie rental service." *See* Maxwell Decl.
Attachment K. In that capacity, Evangelist made multiple public announcements concerning
Blockbuster's pricing practices and was familiar with some 25 pricing tests throughout 2005.
Blockbuster Subscribers Second Amended Class Action Complaint at ¶¶ 59, 79, 104 (Docket #
140). Evangelist has been quoted numerous times in the public about Blockbuster Online and
the market. *See* Maxwell Decl. in Support of First Motion to Dismiss Blockbuster Complaint
Ex. 3, 5, 6, 9 (Docket 50-3) (public). His personal knowledge on these subjects is unavailable
from any other source, and he should be compelled to testify.

    **c.    There Is No Other Reasonable Alternative Source for the Witnesses'
    Information**

Through the depositions of these Witnesses, Plaintiffs seek to elicit information relevant
to these proceedings which is uniquely in the possession of the Witnesses. As set forth above,
each Witness had central and personal involvement in issues directly relevant to this case. There
is no other means to gather the Witnesses' personal knowledge on these issues other than
through the depositions sought here, and they have failed to articulate any viable alternative for
this information. This Court should accordingly order such depositions to take place.

    **d.    The Witnesses Will Not Suffer Undue Burden if Compelled to Testify**

Because any deposition of any of the Witnesses will take place within 100 miles of that
Witnesses' residence, the Witnesses will not be burdened by excessive travel. Moreover, because
Plaintiffs seek information within the personal knowledge of the Witnesses, there will be no need
for the Witnesses to educate themselves on any particular topic. The Witnesses accordingly will
not suffer any unique or undue burden – indeed, the purported burden they will face amounts to
nothing more than precisely the same "burden" faced by any other deponent in any other case.

    **e.    There Are No Reasonable Confidentiality Concerns**

The Witnesses' Motions to Quash make vague assertions that the Subpoenas call for
confidential and privileged information and that the protective order in place in this litigation is
insufficient to protect such information. The Witnesses do not, however, describe with any
specificity what confidential information might be disclosed. Nor do they describe why the
protective order in place is insufficient. Moreover, Plaintiffs have already worked extensively
with counsel for the Witnesses to address similar concerns with respect to Blockbuster's
production of documents, and crafted a Blockbuster-specific protective order to address those
concerns. Regardless, counsel for the Witnesses would be free to object to any questions calling
for privileged information at the deposition itself. *See Wright v. Life Investors Ins. Co. of
America*, No. 08-032009, WL 4347024, at *3 (N.D. Miss. Nov. 24, 2009) ("[C]ounsel must
determine whether assertion of the attorney-client privilege is proper on a question-by-question
basis.").

    **f.    The "Apex Witness" Argument Fails.**

**HOWREY**LLP

Keyes has also argued that he should be considered an "apex witnesses," and therefore excused from testifying.[3]  But depositions of apex witnesses are proper when those witnesses have "unique personal knowledge" unavailable by other means.  *Celerity, Inc. v. Ultra Clean Holding, Inc*.  2007 WL 205067, at *4 (N.D.Cal. Jan. 25, 2007).  As demonstrated above, Keyes possesses unique personal information, unavailable by other means, and he accordingly can seek no relief under the "apex witness" doctrine.  *WebSideStory, Inc. v. NetRatings, Inc.*, 06-408, 2007 WL 1120567, at *2 (S.D.Cal. April 6, 2007) ("[W]hen a witness has personal knowledge of facts relevant to the lawsuit, even a corporate president or CEO is subject to deposition.").  Nor do his responsibilities warrant a different conclusion: "the fact that the apex witness has a busy schedule is simply not a basis for foreclosing otherwise proper discovery."  *Id*.

## CONCLUSION

The Witnesses each possess relevant information, unavailable by other means, and each has failed to demonstrate the necessary "undue burden" to justify noncompliance with properly issued subpoenas.  As such, the Witnesses should be compelled to testify.

### INDIVIDUAL NON-PARTIES' POSITION

In response to Plaintiffs' portion of the Joint Letter to Your Honor, Blockbuster and its current and former executives (collectively "Individual Non-Parties" or "Blockbuster") respectfully submit this portion of the Joint Letter to the Court for its consideration.

## I.   SUMMARY OF INDIVIDUAL NON-PARTIES' POSITION

Blockbuster and its current and former executives are not parties to *In Re Online DVD Rental Antitrust Litigation,* MDL No. 2029 (N.D. Cal.) ("Underlying Case") and there are no allegations that they violated any antitrust laws.  Plaintiffs, however, have launched a harassing, burdensome course of non-party discovery on Blockbuster and its current and former executives.  In response, the Individual Non-Parties have properly moved to quash, or, alternatively, to protect them from this discovery in the districts where those subpoenas were issued (the Northern District of Texas and Central District of California (where Mr. Evangelist has initiated the process of obtaining protection as to himself)).  Instead of following the proper procedures of having those motions to quash transferred to this Court, Plaintiffs are instead seeking to have this Court compel discovery responses from the Individual Non-Parties, further and improperly multiplying the number of federal courts already involved in this discovery dispute.  Indeed, as demonstrated by Plaintiffs' August 27, 2010 notice of tag-along action filed in the MDL, Plaintiffs recognize they must first seek a transfer of these motions to quash.  A motion to compel by Plaintiffs filed directly with the MDL-transferee court is a violation of Rules 45 and

---

[3] Stead and Antioco have also made passing references to themselves as "apex" witnesses, but have failed to make any argument as to why they believe this is so.  In any event, the arguments that undermine Keyes' claim to apex witness protection are equally applicable to Stead and Antioco.

37 and is an end run around the properly invoked jurisdiction of the Northern District of Texas and Central District of California.  In addition, a motion to compel filed directly in this Court would also short-circuit the matters already under consideration by the Judicial Panel on Multidistrict Litigation, which, as noted above, were filed by Plaintiffs themselves.  Accordingly, and for the reasons discussed below, Blockbuster and the Individual Non-Parties respectfully request the Court to require Plaintiffs to comply with established transfer procedures before considering Plaintiffs' request.  Finally, while Plaintiffs have taken a uniformly uncompromising stance, the Individual Non-Parties want this Court to be aware that they have endeavored to resolve these discovery issues without any further court intervention, and will continue to work to resolve these disputes.  *See* Section V below.

## II.    BACKGROUND

### A.    The Underlying Case

The Underlying Case involves two plaintiff classes of Online DVD rental subscribers, who have alleged that defendants Netflix, Inc., Wal-Mart Stores, and Walmart.com entered into an illegal anticompetitive agreement to divide the market for sales and rentals of online rentals of DVDs.[4]  According to Plaintiffs, this alleged anticompetitive agreement between Netflix and Wal-Mart resulted in Netflix and Blockbuster charging higher subscription prices to their online customers.  As noted, Blockbuster is not a defendant in the Underlying Case and Blockbuster did not violate any antitrust laws.   Indeed, the allegations in the Underlying Case center on conduct in the online DVD market that occurred many years ago (approximately 2004-2005).

### B.    Pending Motions to Quash in the Northern District of Texas

Related to the Underlying Case, on July 16, 2010, Blockbuster's counsel accepted service for deposition subpoenas issued by Plaintiffs out of the Northern District of Texas for John Antioco ("Antioco"), Blockbuster's former chief executive officer, and Edward Stead ("Stead"), Blockbuster's former general counsel and executive vice president.  In addition, on that date, Blockbuster's counsel accepted service of a deposition subpoena issued by the Plaintiffs out of the Central District of California for Shane Evangelist ("Evangelist"), former general manager of Blockbuster Online and senior vice president.  On August 13, 2010, Plaintiffs personally served a deposition subpoena issued out of the Northern District of Texas on James Keyes ("Keyes"), Blockbuster's chief executive officer and chairman of the board.

On August 16, 2010, pursuant to Rules 45(c)(3) and 26(c) of the Federal Rules of Procedure, Antioco and Stead moved the Northern District of Texas to quash those subpoenas. *See* Maxwell Decl. Attachment B of Joint Letter (Stead and Antioco MTQ).   In addition, on

---

[4] The Individual Non-Parties understand that Plaintiffs have recently settled with the Wal-Mart defendants.

August 24, 2010, pursuant to Rules 45(c)(3) and 26(c) of the Federal Rules of Procedure, Keyes moved the Northern District of Texas to quash his subpoena. *See* Maxwell Decl. Attachment D of Joint Letter (Keyes MTQ). On August 13, 2010, counsel for Evangelist sent a letter to Plaintiffs' counsel seeking a meet and confer on a motion to quash the Evangelist subpoena in the Central District of California. Evangelist had previously filed objections to his subpoena in the Central District of California. *See* Maxwell Decl. Attachment C of Joint Letter (Evangelist Objections).

### C.   August 26, 2010 Meet and Confer

Notwithstanding the pending motions to quash filed in the Northern District of Texas and objections filed in the Central District of California, Plaintiffs' counsel stated they wanted to meet and confer on their planned "motions and/or cross-motions to compel the depositions of Stead, Antioco, and Evangelist" before the Northern District of California. *See* Maxwell Decl. Attachment F of Joint Letter (Aug. 17, 2010 email from McLellan). On August 26, 2010, pursuant to this Court's requirements, counsel for the Individual Non-Parties conferred with Plaintiffs' counsel on Plaintiffs' planned motion to compel. Prior to the meet and confer, Texas counsel for Individual Non-Parties stated he could meet and confer via videoconference. *See* Maxwell Decl. Attachment J (Aug. 26, 2010 email from Dan Kelly). In addition, at the beginning of the meet and confer, Texas counsel for the Individual Non-Parties also stated he could conduct the meet and confer via videoconference on another mutually agreeable date, including the next day, but lead counsel for Plaintiffs stated he wanted to go ahead with the meet and confer via telephone conference.

During the meet and confer, four different attorneys participated in the call on behalf of the Plaintiffs. Counsel for the Individual Non-Parties began the call by explaining their position that these discovery disputes should be heard in the Court that issued the subpoenas (the N.D of Tex. and the C.D. of Cal.) pursuant to Rules 45 and 37 and that it would be procedurally improper for Plaintiffs to take these disputes directly to the MDL judge in the Northern District of California without first having the motions to quash transferred and that Plaintiffs could be subject to fees and costs under Rule 37(a)(5)(B) for engaging in this tactic. Plaintiffs' counsel did not want to discuss the procedural issues related to the pending motions to quash in the Northern District of Texas and instead stated they wanted to know if the Non-Parties would be willing to produce Evangelist, Stead and Antioco for deposition.[5] In addition, counsel for the Individual Non-Parties asked if Plaintiffs' counsel could describe what topics Plaintiffs believed those witnesses had knowledge about, particularly given the lack of statements in Blockbuster

---

[5] The Keyes deposition subpoena was not discussed during the call because the parties are under an order from the Northern District of Texas to meet and confer via videoconference on that deposition subpoena. *See* Maxwell Decl. Attachment I (Order from Magistrate Ramirez of the N.D. of Tex.).

**HOWREY** LLP

Subscribers' Consolidated Second Amended Class Action ("SAC") concerning those witnesses.[6]
Counsel for Plaintiffs responded that they had documents that showed those witnesses had
relevant knowledge, but refused to share those documents (or the information within those
documents) with counsel for Blockbuster because those documents are "under seal."[7]

Tellingly, on August 27, 2010, the day after the meet and confer, Plaintiffs filed a Notice
of Tag-Along Actions to the Clerk of the Judicial Panel on Multidistrict Litigation, seeking a
conditional transfer of the motions to quash the Antioco, Stead and Keyes' subpoenas. *See*
Maxwell Decl. Attachment L of Joint Letter (Notice of Tag-Along Actions).[8]

### D.    Other Non-Party Subpoenas Served on Blockbuster in the ND of Tex.

Although Plaintiffs' portion of the Joint Letter only addresses the deposition subpoenas to
Antioco, Stead, Evangelist, and Keyes, the Individual Non-Parties believe a fair assessment of
Plaintiffs' broad discovery efforts necessarily includes the other two subpoenas issued by
Plaintiffs to Blockbuster in the Underlying Case.  Plaintiffs have previously issued a document
subpoena to Blockbuster.   In response to that document subpoena, Blockbuster has already
produced numerous documents (including business plans and financial information) to Plaintiffs.
Additionally, Blockbuster is in the process of finalizing a Statement of Work regarding
electronic discovery (which Blockbuster will provide to Plaintiffs on the condition that Plaintiffs
pay all costs associated with the extraction of the electronic information from Blockbuster
databases) and is working diligently to provide additional documents.  Blockbuster, as a non-
party, will seek reimbursement of all its costs incurred in connection with responding to
Plaintiffs' document subpoena, which has caused Blockbuster undue burden (in large part
because Plaintiffs waited nearly four years before filing their lawsuit).

In addition, on April 8, 2010, Plaintiffs served a Rule 30(b)(6) deposition subpoena,
issued out of the Northern District of Texas, on Blockbuster.   The 30(b)(6) subpoena was
extremely broad, burdensome, and sought irrelevant information or information that can be

---

[6] For example, Plaintiffs only mention of Antioco in their SAC is one paragraph referring to published statements he
made to the Reuters news service for one story in 2004. *See* SAC ¶ 66.  Similarly, the only mention of Stead in the
SAC is one paragraph alleging he had a conversation with a Netflix executive at a film festival in Utah in January
2005.  SAC ¶ 85.  In addition, there is no mention of Keyes at all in the SAC.  Indeed, the allegation in the
Underlying Case center on conduct that occurred many years before Keyes even joined Blockbuster.

[7] Plaintiffs' unwillingness to provide those documents to Blockbuster's counsel for review seems unreasonable
given that Plaintiffs will obviously show some of those documents to those witnesses in the event they are deposed
in the Underlying Case.

[8] Plaintiffs' unilaterally set all these depositions is a direct violation of this Court's Standing Orders. *See* Civil
Standing Orders for Magistrate Judge Joseph C. Spero at ¶ 15  ("Absent extraordinary circumstances, counsel shall
consult in advance with opposing counsel and unrepresented proposed deponents to schedule depositions at
mutually convenient times and places.")

provided by less burdensome means, including from the defendants in this case. As such, on May 7, 2010, Blockbuster properly filed a motion to quash that subpoena in the Northern District of Texas. *See* Maxwell Decl. Attachment A of Joint Letter (Non-Party Blockbuster MTQ). As noted in Plaintiffs' portion of the Joint Letter, the Judicial Panel on Multidistrict Litigation ("J.P.M.L") is currently considering Blockbuster's motion to vacate that Conditional Transfer Order of that motion to quash. Nevertheless, although that motion is pending before the J.P.M.L., Blockbuster has told Plaintiffs that it recognizes that there are some 30(b)(6) topics directed to Blockbuster that are relevant to the Underlying Case and, in an effort to resolve these discovery disputes, Blockbuster has offered to present a 30(b)(6) witness if the Plaintiffs and Blockbuster can reach agreement on the scope of those deposition topics. *See* Section V below.

**E.     Plaintiffs' Attempt to Circumvent Pending Motions to Quash**

Plaintiffs now seek to have this Court reach into other judicial districts to rule upon these properly filed motions to quash pending in the Northern District of Texas and objections filed in the Central District of California. Plaintiffs' own actions, however, show they recognize that the proper method to seek a ruling by the MDL court on these motions is to transfer these actions through the established procedures of the Judicial Panel on Multidistrict Litigation. *See, e.g.,* Maxwell Decl. Attachment L of Joint Letter (Notice of Tag-Along Actions). As noted, Plaintiffs have already filed notices of tag-along actions for the 30(b)(6) subpoena and the subpoenas for Antioco, Stead, and Keyes—all of which are currently pending before the Panel. Blockbuster submits that the proper procedure for transfer runs through the Panel, which has jurisdiction based upon Plaintiffs' tag-along notices, not through a motion to compel filed by Plaintiffs in this Court.[9]

Additionally, as is discussed below, Plaintiffs have rejected the Individual Non-Parties' recent offer to resolve these discovery disputes. In contravention of Your Honor's Notice of Reference and Order re Discovery Procedures of July 14, 2009, Plaintiffs' portion of the Joint Letter does not describe any proposed compromise. Unfortunately, this is consistent with Plaintiffs'                "all                or                nothing" course of conduct. Blockbuster's proposed compromise, offered to Plaintiffs on August 31, 2010, is described below. *See* Section V.

**III.   UNDER THE FEDERAL RULES OF CIVIL PROCEDURE, ANY TRANSFER OF THE MOTIONS TO QUASH SHOULD PROCEED THROUGH THE PROCEDURES OF THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**

---

[9] The Judicial Panel on Multidistrict Litigation has set Blockbuster's motion to quash Plaintiffs' Rule 30(b)(6) deposition for hearing on its September docket. The Panel issued a conditional transfer order based on Plaintiffs' notice of tag along action and, after briefing by both sides, set the matter for hearing. At no time in their briefing to the Panel did Plaintiffs ever suggest that the MDL court could or should rule on the motion to quash prior to any transfer by the Panel. Indeed, Plaintiffs have actively sought to have the Panel transfer the motion.

**HOWREY**

Plaintiffs assert the Individual Non-Parties have somehow violated the MDL statute and usurped the authority of the MDL court by filing motions to quash in the Northern District of Texas. Yet the Individual Non-Parties are entitled to seek relief from those courts because Plaintiffs engaged in discovery in those districts. *See* FED. R. CIV. P. 26(c) and FED. R. CIV. P. 45(c)(3)(B). In particular, Rule 26(c)(1) provides, in pertinent part, that, "A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending—or as an alternative on matters relating to a deposition, in court for the district where the deposition will be taken." Rule 45(c)(3)(B) provides that "the issuing court may, on motion, quash or modify the subpoena."

Further, a motion to compel discovery responses from "a nonparty must be made in the court where the discovery is or will be taken." FED. R. CIV. P. 37(a)(2); *see, e.g., In re Sealed Case*, 141 F.3d 337, 341 (D.C. Cir. 1998) ("Applications for orders compelling disclosure from nonparties must be made to the court in the district where the discovery is to be taken."). This applies to MDL cases as well. *See In re Wheat Farmers Antitrust Class Action,* 440 F.Supp. 1022 (D.D.C. 1977), *superseded on other grounds by* FED. R. CIV. P. 26(b)(1). In the *Wheat Farmers* case, plaintiffs, in an MDL pending in Oklahoma, subpoenaed testimony and documents from the United States Agriculture and State departments and sought to compel discovery responses from those agencies. The D.C. district court found it, rather than the Oklahoma MDL court, was "the appropriate forum for plaintiffs' motion because the motion is directed at two non-party deponents and because the non-party depositions were taken and subpoenas duces tecum issued in this judicial district." 440 F. Supp. at 1024.

Notably, Plaintiffs do not cite one case in which an MDL court ruled on a properly filed motion to quash pending in another judicial district prior to transfer or referral either by a judge in that district or the J.P.M.L. None of the cases Plaintiffs cite involved an MDL court ruling on matters that were concurrently pending before the J.P.M.L. ***Plaintiffs thus do not provide any cases that have proceeded under their proposed course of action***,[10] which asks this Court to disregard the pending motions to quash that were properly filed in the Northern District of Texas, the objections filed in the Central District of California, and the J.P.M.L. on Plaintiffs' tag-along notices.

Transfer of cases under the MDL statute may be made if they are "for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions." 28 U.S.C. § 1407(a). Here, Plaintiffs' requested transfer would be for the convenience of only one party—

---

[10] *See Orthopedic Bone Screw Prods. Liab. Litig.*, 79 F.3d 46 (7th Cir. 1996) (motions to quash transferred by judges in the subpoena-issuing district to an MDL court); *In re Intel Corp. Microprocessor Antitrust Litig.*, No. 1:05-MD-1717, 2008 WL 5156628 (D. Del. Dec. 5, 2008) (involving neither motions to quash filed in other districts nor matters already pending before the J.P.M.L.); *In re Subpoenas Served on Wilmer, Cutler & Pickering and Goodwin Proctor LLP*, 255 F. Supp. 2d 1 (D.D.C. 2003) (motions to quash remitted by judge in the subpoena-issuing district to MDL court).

**HOWREY** LLP

themselves. The other parties, namely the defendants in the underlying litigation, appear indifferent at best and have not indicated they believe transfer would be any more convenient for them. The Individual Non-Parties assert that the balance of factors favors resolution of the Keyes, Antioco, and Stead motions in Texas, literally two blocks from Blockbuster's corporate headquarters. This determination is underscored by the policy determinations inherent in the Federal Rules of Civil Procedure, which provide reasonable protections to non-parties. *See In re Sealed Case*, 141 F.3d at 341 ("[T]he rules governing subpoenas and nonparty discovery have a clearly territorial focus . . . . Congress in the Rules has clearly been ready to sacrifice some efficiency in return for territorial protection for nonparties."). In contrast, Plaintiffs' argument centers on the slim reed of their own convenience, a fact that must be balanced by statutory mandate with the convenience of Blockbuster, other parties, and notions of justice and efficiency.

It is clear that the Judicial Panel on Multidistrict Litigation may transfer cases, including discovery disputes, to an MDL court if transfer "will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions." 28 U.S.C. § 1407(a). Plaintiffs obviously recognize this procedure is the proper method to seek a transfer, as evidenced by their tag-along notices and subsequent submissions to the Panel. A motion to compel by Plaintiffs filed directly with the MDL-transferee court is an end run around the properly invoked jurisdiction of the Northern District of Texas and Central District of California. It also would short-circuit the matters already under consideration by the Judicial Panel on Multidistrict Litigation, ***which were filed by Plaintiffs themselves***. *See, e.g.,* Maxwell Decl. Attachment L of Joint Letter (Notice of Tag-Along Actions).

## IV. THE INDIVIDUAL NON-PARTIES SHOULD BE PROTECTED FROM THIS HARASSING, OVERBROAD COURSE OF DISCOVERY

Notwithstanding the fact that Plaintiffs proposed motion to compel is procedurally improper given the pending motions to quash in the Northern District of Texas and objections in the Central District of California, the proposed discovery is harassing and overbroad. The Individual Non-Parties make the following arguments in support of their opposition to these subpoenas and hereby incorporate and adopt by reference their additional arguments in their motions to quash or objections to the subpoenas. *See* Maxwell Decl. Attachment B (Antioco and Stead MTQ), Attachment D (Keyes MTQ), and Attachment C (Evangelist Objections) of Joint Letter.

Pursuant to *Salter v. Upjohn*, 593 F.2d 649, 651 (5th Cir. 1979), and its progeny, a court can quash a subpoena or issue a protective order for an apex witness, a high-level corporate officer, if that person does not have unique or superior personal knowledge of material facts significant to the lawsuit. *See Salter*, 593 F.2d at 651; *Baine v. General Motors Corp.*, 141 F.R.D. 332, 335 (M.D. Ala. 1991). Indeed, courts have long recognized that depositions of top corporate officers impose too great a burden when "the proposed deponent is . . . a very high corporate officer unlikely to have personal familiarity with the facts of the case." 8A CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & RICHARD L. MARCUS, FEDERAL PRACTICE & PROCEDURE

§ 2037, at 500-02 (3d ed. 2010) (citing cases). Indeed, "[v]irtually every court that has addressed deposition notices at an official at the highest level or 'apex' of corporate management has observed that such discovery creates a tremendous potential for abuse or harassment." *Celerity v. Ultra Clean Holding*, No. C05-4374, 2007 WL 205067, at *3 (N.D. Cal. Jan. 25, 2007) (citations omitted).

**Keyes** — James Keyes, Blockbuster's current CEO, joined the company in 2007—**a full two to three years after the events in 2004 and 2005 that form the basis of Plaintiffs' complaint.** Plaintiffs' conclusory argument that Keyes has "unique personal knowledge" on certain topics recognizes that Keyes is fairly characterized as an apex witness. Plaintiffs contend that Keyes has unique knowledge about meetings with the CEO of Netflix and "Blockbuster's pricing in relation to Netflix's," yet offer no indication of how they believe Keyes would have any unique personal knowledge. As proof of his distant connection to any of the events in this case, Keyes is not mentioned once in Plaintiffs' complaint. *See* SAC.

As CEO of Blockbuster, Keyes is responsible for overseeing the efforts of a multi-million dollar international business with approximately 6,520 stores in 17 countries and over 48,000 employees worldwide. He is undoubtedly an apex witness, despite Plaintiffs' contention otherwise. The fact that Plaintiffs believe that Keyes might have some knowledge of discoverable information is not sufficient for an apex deposition. *See Thomas v. Int'l Bus. Machines*, 48 F.3d 478, 482 (10th Cir. 1995); *Lewelling v. Farmers Ins. of Columbus, Inc.*, 879 F.2d 212, 218 (6th Cir. 1989); *Salter*, 593 F.2d at 651; *Mulvey v. Chrysler Corp.*, 106 F.R.D. 364, 366 (D.R.I 1985) (noting a high-ranking executive of a large company is "a singularly unique and important individual who can be easily subjected to unwarranted harassment and abuse. He has a right to be protected, and the courts have a duty to recognize his vulnerability."). Plaintiffs have not attempted to or shown any effort to exhaust other less burdensome avenues of discovery, including obtaining the information from parties to the action, before serving the non-party subpoena on Keyes. Accordingly, Plaintiffs' conclusory assertion that Keyes has "unique personal knowledge" is insufficient to compel his deposition, and Plaintiffs should first seek discovery through other means. *See Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 679, 681–82 (7th Cir. 2002) (affirming district court's order refusing to compel the deposition of defendant's officer because it was overly burdensome in light of the fact that the witness was a "high-ranking executive at a multinational corporation" and plaintiff had not shown that it was unable to obtain the discovery through other means). *See* Maxwell Decl. Attachment D of Joint Letter (Keyes MTQ).

**Antioco** — John Antioco was Blockbuster's CEO until 2007. Plaintiffs' only mention of Antioco in the Blockbuster Subscribers' complaint concerns one public statement he gave to a wire news service in 2004. (SAC ¶ 66) The alleged private communications by Antioco with the Netflix CEO are not referenced anywhere in the complaint. His connection to Plaintiffs' claims against Netflix and Wal-Mart are tangential, at best. Given Antioco's former position as

**HOWREY** LLP

CEO of Blockbuster, he has no unique or superior personal knowledge of material facts significant to the lawsuit. *See Salter*, 593 F.2d at 651. Additionally, Antioco is now the CEO of CIC Advantage Holdings LLC and Chairman of Red Mango Inc. For these reasons, similar to Keyes, Antioco's positions as CEO make him an apex witness. Once again, Plaintiffs have not shown any effort to seek discovery through other means, and, with respect to Antioco, do not even allege that he has any unique knowledge of relevant matters. Antioco should be protected from deposition pending some further showing by Plaintiffs. *See Patterson*, 281 F.3d at 681–82.

**Stead** — Edward Stead, Blockbuster's former general counsel and executive vice president, left the company in early 2006. The only mention of Stead in Plaintiffs' complaint references a brief conversation he allegedly had with a competitor more than five years ago. (SAC ¶ 85) Stead, as a former attorney for Blockbuster, likely cannot even respond to most topics (assuming that Stead even has knowledge on some of these topics now given the number of years that have elapsed), without implicating privileged communications. Stead's position as a high-ranking corporate officer also makes him an effective apex witness. *See Patterson*, 281 F.3d at 681–82. As with Antioco, Plaintiffs do not assert that Stead has unique knowledge of relevant matters. Plaintiffs' assertion that Stead might have some knowledge of discoverable information is not sufficient for an apex deposition. *See Thomas*, 48 F.3d at 482; *Lewelling*, 879 F.2d at 218; *Salter*, 593 F.2d at 651; *Baine*, 141 F.R.D. at 335.

**Evangelist** — Shane Evangelist was a Blockbuster senior vice president and the general manager of Blockbuster Online until 2007. Although Evangelist is mentioned in three paragraphs of Plaintiffs' complaint (SAC ¶¶ 59, 79, 104), all three mentions concern only press releases and formal public announcements. It is unclear what "personal knowledge" Plaintiffs would seek from Evangelist that is not contained within his already public statements. Nevertheless, as a matter of compromise, counsel for Blockbuster and Evangelist offered to make Evangelist available for deposition, in the hope that his testimony would limit the need for further depositions. Plaintiffs have rejected this compromise offer, yet have made no suggestions in return. Once again, Plaintiffs would seek the Court's intervention without adequately addressing any alternative resolution or attempting to reach a suitable compromise.

## V.   BLOCKBUSTER AND THE INDIVIDUAL NON-PARTIES' PROPOSED COMPROMISE

Despite the unreasonable demands of Plaintiffs, the Individual Non-Parties have proposed a fair and reasonable compromise. Plaintiffs have rejected this compromise out of hand, yet offer no counterproposal.

The most recent compromise offered by Blockbuster and the Individual Non-Parties would have Plaintiffs depose Evangelist, the former head of Blockbuster's online operations. Then, based on Plaintiffs' assessment of their needs after taking Evangelist's deposition, counsel

**HOWREY** LLP

would confer on additional depositions of Stead, the former general counsel, or Antioco, Blockbuster's former CEO.

In addition, Blockbuster further offered to make a corporate representative available for a Rule 30(b)(6) deposition, subject to reaching agreement with the Plaintiffs on the scope of the topics. Blockbuster and Plaintiffs have been negotiating the scope of those twenty-nine 30(b)(6) topics. While Plaintiffs have narrowed some of the topics, Blockbuster and Plaintiffs are continuing to negotiate the topics so that a fair accommodation can be made to balance Plaintiffs' needs for discovery from Blockbuster with reasonable protections for Blockbuster, a non-party to this action.

## VI.    **CONCLUSION**

Contrary to Plaintiffs' statements, the Individual Non-Parties have appropriately sought relief in the district courts where the subpoenas were issued. By contrast, notwithstanding the fact Plaintiffs invoked the proper transfer procedures of the Judicial Panel on Multidistrict Litigation, Plaintiffs now ask this Court to engage in an unprecedented procedural move by hearing this matter while the motions to quash have yet to even be transferred to this Court. Blockbuster and the Individual Non-Parties respectfully request the Court require Plaintiffs to comply with established transfer procedures. Further, Blockbuster and the Individual Non-Parties would further request protection of these non-party witnesses based on the foregoing reasons. *See* Section IV above and Maxwell Decl. Attachment B (Antioco and Stead MTQ), Attachment D (Keyes MTQ), and Attachment C (Evangelist Objections) of Joint Letter (incorporated herein).

Respectfully Submitted,
By: /s Emily Maxwell
Emily L. Maxwell  (185646)
HOWREY LLP
525 Market Street, Suite 3600
San Francisco, CA 94105
Tel.: (415) 848-4947
Fax: (415) 848-4999
maxwelle@howrey.com
*Counsel for Netflix Plaintiffs and*
*Blockbuster Plaintiffs*


By: /s Gerald E. Hawxhurst
Gerald E. Hawxhurst
 Cal. Bar No. 220327
BAKER MARQUART CRONE & HAWXHURST LLP
10990 Wilshire Boulevard, 4th Floor
Los Angeles, California 90024
Telephone: (424) 652-7800

Facsimile: (424) 652-7850
Email: jhawxhurst@bmchlaw.com

Michael L. Raiff
Texas Bar No. 00784803
Daniel J. Kelly
Texas Bar No. 24041229
VINSON & ELKINS L.L.P.
2001 Ross Avenue, Suite 3700
Dallas, Texas 75201-2975
Telephone: (214) 220-7700
Facsimile: (214) 220-7716
Email: mraiff@velaw.com
Email: dkelly@velaw.com

***ATTORNEYS FOR BLOCKBUSTER INC.,
JAMES W. KEYES, JOHN ANTIOCO,
EDWARD STEAD, and SHANE
EVANGELIST***