Robert G. Abrams  (*pro hac vice*)
Thomas A. Isaacson  (*pro hac vice*)
Peter A. Barile III  (*pro hac vice*)
HOWREY LLP
1299 Pennsylvania Avenue, N.W.
Washington, DC 20004
Tel.: (202) 783-0800
Fax: (202) 383-6610
abramsr@howrey.com
isaacsont@howrey.com
barilep@howrey.com

Paul Alexander  (49997)
HOWREY LLP
1950 University Avenue
East Palo Alto, CA 94303
Tel.: (650) 798-3500
Fax: (650) 798-3600
alexanderp@howrey.com

Emily L. Maxwell  (185646)
HOWREY LLP
525 Market Street, Suite 3600
San Francisco, CA 94105
Tel.: (415) 848-4947
Fax: (415) 848-4999
maxwelle@howrey.com

Guido Saveri  (22349)
R. Alexander Saveri  (173102)
Lisa Saveri  (112043)
Cadio Zirpoli  (179108)
Melissa Shapiro  (242724)
SAVERI & SAVERI, INC.
706 Sansome Street
San Francisco, CA 94111
Tel.: (415) 217-6810
Fax: (415) 217-6813
guido@saveri.com
rick@saveri.com
lisa@saveri.com
cadio@saveri.com
melissa@saveri.com

**Lead Counsel for Plaintiffs and the
Proposed Class**

**Liaison Counsel for Plaintiffs and the
Proposed Class**

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

| | |
|---|---|
| **IN RE ONLINE DVD RENTAL ANTITRUST LITIGATION** | **Master File No. 4:09-md-2029 PJH**<br><br>**MDL No. 2029**<br><br>**Hon. Phyllis J. Hamilton** |
| **This document relates to:**<br><br><br>**ALL ACTIONS** | **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT WITH WAL-MART DEFENDANTS AND CERTIFICATION OF SUB-CLASSES FOR PURPOSES OF SETTLEMENT; AND MEMORANDUM IN SUPPORT THEREOF**<br><br>Date:  January 19, 2011<br>Time: 9:00 a.m.<br>Courtroom: 3 |

HOWREY LLP

PLIFS' NOTICE OF MOT. AND MOT. FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT WITH WAL-MART
DEFENDANTS: MEM. IN SUPPORT THEREOF; Master File No. 4:09-md-2029 PJH

### **TABLE OF CONTENTS**

**I. INTRODUCTION** ........................................................................................... 2

**II. FACTUAL AND PROCEDURAL BACKGROUND** ................................. 3

    **A. PLAINTIFFS' CLAIMS** .......................................................................... 3

    **B. PROCEDURAL HISTORY** ...................................................................... 4

    **C. SETTLEMENT NEGOTIATIONS** .......................................................... 5

**III. TERMS OF THE SETTLEMENT** ............................................................ 5

    **A. SETTLEMENT SUB-CLASSES** ............................................................ 5

    **B. BASIC SETTLEMENT TERMS** ............................................................ 6

    **C. PROPOSED NOTICE AND CLAIMS PLAN** ........................................ 7

    **D. RELATIONSHIP TO CALIFORNIA STATE ACTIONS** ..................... 8

**IV. LEGAL ARGUMENT** ............................................................................... 9

    **A. THE SETTLEMENT SHOULD BE PRELIMINARILY
        APPROVED** ............................................................................................ 9

        **1. The Proposed Settlement Was the Product of Informed,
           Non-Collusive Negotiations** .......................................................... 10

        **2. The Proposed Settlement Falls Well Within the Range of
           Possible Approval** .......................................................................... 11

        **3. The Proposed Settlement Has No Obvious Deficiencies and
           Does Not Present Any Grounds to Doubt Its Fairness** ................. 13

            **a) The Settlement Does Not Improperly Grant
                Preferential Treatment to Segments of the Clas** ..................... 13

            **b) The Proposed Service Awards to Class
                Representatives Are Reasonable** ............................................... 14

    **B. THE COURT SHOULD CERTIFY THE NETFLIX AND
        BLOCKBUSTER SUB-CLASSES FOR PURPOSES OF
        SETTLEMENT** .................................................................................... 14

        **1. The Requirements of Rule 23(a) Are Satisfied** ........................... 14

            **a) The Sub-Classes Are So Numerous that Joinder of
                All Members Is Impracticable** ................................................. 14

            **b) The Class Involves Questions of Law and Fact
                Common to Each Sub-Class** ..................................................... 15

HOWREY LLP

i

c) The Claims of the Class Representatives Are Typical of the Claims of the Sub-Classes ................................................. 15

d) The Class Representatives Will Fairly and Adequately Protect the Interests of the Sub-Classes ................................................................................. 16

2. The Requirements of Rule 23(b)(3) Are Satisfied ............................ 16

a) Common Questions of Law and Fact Predominate Over Individual Questions .......................................... 17

b) A Class Action Is Superior to Other Available Methods for the Fair and Efficient Adjudication of the Settlement ........................................................ 17

C. THE COURT SHOULD APPOINT THE PLAINTIFFS' CURRENT COUNSEL AS COUNSEL FOR THE SETTLEMENT CLASSES ................................................. 18

V. CONCLUSION ....................................................................................... 19

HOWREY LLP

**TABLE OF AUTHORITIES**

**FEDERAL CASES**

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997) ............................................................................... 17, 18

*Browning v. Yahoo! Inc., No.*,
    C04-01463 HRL, 2006 WL 3826714 (N.D. Cal. Dec. 27, 2006) ............... 8

*Browning v. Yahoo! Inc., No.*,
    C04-01463-HRL, 2007 WL 4105971 (N.D. Cal. Nov. 16, 2007) ............. 8

*Carson v. Am. Brands, Inc.*,
    450 U.S. 79 n.14 (1981) ........................................................................... 11

*Churchill Village, L.L.C. v. General Elec.*,
    361 F.3d 566 (9th Cir. 2004) ..................................................................... 9

*Farinella v. PayPal, Inc.*,
    611 F. Supp. 2d 250 (E.D.N.Y. 2009) ....................................................... 8

*Glass v. UBS Financial Servs., Inc.*,
    2007 WL 221862 (N.D. Cal. Jan. 26, 2007) ............................................ 14

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1988) ...................................................... 9, 15, 16

*Hawaii v. Standard Oil Co. of California*,
    405 U.S. 251 (1972) ................................................................................. 18

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
    No. M-02-1486-PJH, 2006 WL 1530166 (N.D. Cal. June 5, 2006) ............... 15, 16, 17

*In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*,
    MDL No. 901, 1992 WL 226321 (C.D. Cal. June 10, 1992) ...................... 11

*In re HealthSouth Corp. Secs. Litig.*,
    334 Fed. App'x 248 (11th Cir. 2009) ......................................................... 8

*In re Infineon Techs. AG Sec. Litig.*,
    266 F.R.D. 386 (N.D. Cal. 2009) ............................................................. 15

*In re Lorazepam & Clorazepate Antitrust Litig.*,
    202 F.R.D. 12 (D.D.C. 2001) ................................................................... 18

*In re Mego Financial Corp. Sec. Litig.*,
    213 F.3d 454 (9th Cir. 2000) ................................................................... 14

*In re Portal Software, Inc. Sec. Litig.*,
    No. 03-5138, 2007 WL 1991529 (N.D. Cal. Jun. 30, 2007) ..................... 14

HOWREY LLP

iii

*In re Static Random Access Memory (SRAM) Antitrust Litig.*,
    264 F.R.D. 603 (N.D. Cal. 2009) ................................................................................ 16

*In re Tableware Antitrust Litig.*,
    484 F. Supp. 2d 1078 (N.D. Cal. 2007) ........................................................... 2, 9, 10

*In re Toys "R" Us Antitrust Litig.*,
    191 F.R.D. 347 (E.D.N.Y. 2000) ................................................................................ 10

*In re Vitamins Antitrust Litig.*,
    2001 WL 856292 (D.D.C. Jul. 25, 2001) .............................................................. 9, 13

*In re Wireless Facilities, Inc., Secs. Litig. II*,
    253 F.R.D. 607 (S.D. Cal. 2008) ................................................................................ 17

*In re WorldCom, Inc. Secs. Litig.*,
    2004 WL 2591402 (S.D.N.Y. Nov. 12, 2004) ............................................................ 12

*Lozano v. AT&T Wireless Servs., Inc.*,
    504 F.3d 718 (9th Cir. 2007) ..................................................................................... 15

*Lucas v. Kmart Corp.*,
    234 F.R.D. 688 (D. Colo. 2006) ................................................................................ 13

*Lundell v. Dell, Inc.*,
    No. C05-3970, 2006 WL 3507938 (N.D. Cal. Dec. 5, 2006) ....................................... 8

*Officers for Justice v. Civil Service Comm'n of the City and County of San Francisco*,
    688 F.2d 615 (9th Cir. 1982) ..................................................................................... 11

*O'Keefe v. Mercedes-Benz USA, LLC.*,
    214 F.R.D. 266 (E.D. Pa. 2003) ................................................................................ 17

*Oregon Laborers-Employers Health & Welfare Trust Fund v. Philip Morris*,
    188 F.R.D. 365 (D. Or. 1998) .................................................................................... 17

*Palamara v. Kings Family Restaurants*,
    No. 07-cv-317, 2008 WL 1818453 (W.D. Pa. Apr. 22, 2008) ................................... 13

*Rankin v. Rots*,
    No. 02-71045, 2006 WL 1876538 (E.D. Mich. June 27, 2006) ................................ 11

*Reed v. General Motors Corp.*,
    703 F.2d 170 (5th Cir. 1983) ..................................................................................... 11

*Simpson v. Fireman's Fund Ins. Co.*,
    231 F.R.D. 391 (N.D. Cal. 2005) .............................................................................. 15

*Texas Indus. v. Radcliff Materials, Inc.*,
    451 U.S. 630 (1981) ................................................................................................... 12

*Van Bronkhorst v. Safeco Corp.*,
    529 F.2d 943 (9th Cir. 1976) ....................................................................................... 9

HOWREY LLP

iv

*Vasquez v. Coast Valley Roofing, Inc.*,
    670 F. Supp. 2d 1114 (E.D. Cal. 2009) ........................................................................ 2, 9

*Waller v. Financial Corp. of America*,
    828 F.2d 579 (9th Cir. 1987) ................................................................................... 3, 5, 6

*Wellman v. Dickinson*,
    497 F. Supp. 824 (S.D.N.Y. 1980) ................................................................................ 9

*Young v. Polo Retail, LLC*,
    No. C-02-4546-VRW, 2007 WL 951821 (N.D. Cal. Mar. 28, 2007) ........................ 13

**STATE CASES**

*Chavez v. Netflix, Inc.*,
    162 Cal. App.4th 43; 75 Cal. Rptr.3d 413 (2008) ........................................................ 8

**FEDERAL RULES**

Fed. R. Civ. P. 23 ........................................................................................................ passim

**OTHER AUTHORITIES**

*Manual for Complex Litigation (Fourth)* §13.14 ...................................................... 2, 9

HOWREY LLP

## <u>NOTICE OF MOTION AND MOTION</u>

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on January 19, 2011, at 9:00 a.m., or as soon thereafter as counsel can be heard, before the Honorable Phyllis J. Hamilton, United States District Judge, at the United States District Courthouse, 1301 Clay Street, Courtroom 3, 3rd Floor, Oakland, California 94612, Plaintiffs Andrea Resnick, Bryan Eastman, Amy Latham, Melanie Misciosia Salvi, Stan Magee, Michael Orozco, Lisa Sivek, Michael Wiener, Daniel Kaffer, Alan Levy, Jason Lawton, Justin Meadows, Rosemary Pierson, and Rebecca Silverman ("Plaintiffs" or "Class Representatives"), will move this Court for an Order: (i) granting preliminary approval of the settlement agreement Plaintiffs have executed with Defendants Wal-Mart Stores, Inc. and Walmart.com USA LLC (collectively, "Wal-Mart"); (ii) certifying the Settlement Sub-Classes for purposes of settlement; and (iii) deferring approval of the manner and form of giving notice of the settlement agreement and certification of the sub-classes to class members, and deferring dissemination of such notice pending the Court's decision regarding class certification in the litigation as against defendant Netflix, Inc. ("Netflix").

This motion is based upon this Notice of Motion and Motion, the following Memorandum of points and Authorities, the Affidavit of Layn R. Phillips, the Declaration of Guido Saveri ("Saveri Decl."), all exhibits attached thereto, and such other written or oral arguments that may be presented to the Court. The Proposed Order is attached as Exhibit 5 to the Settlement Agreement. The Settlement Agreement is attached as Exhibit A to the Declaration of Guido Saveri.

HOWREY LLP

PLFS' NOTICE OF MOT. AND MOT. FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT WITH WAL-MART DEFENDANTS;MEM. IN SUPPORT THEREOF; Master File No. 4:09-md-2029 PJH

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.  INTRODUCTION

Plaintiffs have reached a settlement of these actions with the Wal-Mart Defendants.  Wal-Mart has agreed to pay a maximum of $40 million in cash and cash equivalents, and a minimum of $29 million.  *See* Settlement Agreement, dated December 3, 2010 (the "Agreement").  Class members will receive gift cards for the purchase of any products sold by Wal-Mart.com or, at the class member's election, cash.  As further detailed in the Agreement, Wal-Mart has agreed to pay, out of the minimum, the costs of providing class notice and administering claims, reasonable attorneys' fees, service awards for the representative plaintiffs, and monies to help fund the continued litigation against Netflix.  The Agreement is the product of many hours of arm's length negotiation between counsel for Wal-Mart and the Plaintiffs, and a mediation conducted by Layn R. Phillips, a former United States Attorney and former United States District Judge.  *See* Affidavit of Layn R. Phillips, dated December 3, 2010 ("Phillips Aff.").

The Court should grant preliminary approval of the Settlement because it satisfies the standards for preliminary approval – it is within the range of possible approval to justify sending and publishing notice of the settlement to class members and scheduling final approval proceedings.  *See In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007); *Vasquez v. Coast Valley Roofing, Inc.*, 670 F. Supp. 2d 1114, 1124-25 (E.D. Cal. 2009); *Manual for Complex Litigation (Fourth)* §13.14 at 173 ("First, the judge reviews the proposal preliminarily to determine whether it is sufficient to warrant public notice and a hearing.  If so, the final decision on approval is made after the hearing.").

In connection with the Settlement, Plaintiffs ask the Court to certify two settlement sub-classes pursuant to Fed. R. Civ. P. 23, for settlement purposes only, defined as follows:

HOWREY LLP

2

<u>Netflix Sub-Class</u>: Any person or entity residing in the United States or Puerto Rico that paid a subscription fee to rent DVDs online from Netflix on or after May 19, 2005, up to and including the date the Court grants preliminary approval to the settlement; and

<u>Blockbuster Sub-Class</u>: Any person or entity residing in the United States or Puerto Rico that paid a subscription fee to rent DVDs online from Blockbuster on or after May 19, 2005, up to and including the date the Court grants preliminary approval to the settlement.

Agreement ¶ 5.1 (collectively, the "Settlement Sub-Classes").[1]   The Agreement, if finally approved, would resolve all claims against Wal-Mart in this MDL proceeding and in the actions in California State Court.[2]

At this time, Plaintiffs are not requesting a schedule for notifying Settlement Class Members of the Settlement, but request that such notice be deferred until after the Court has ruled on the pending motion by Plaintiffs to certify a litigation class against defendant Netflix.  In the event the Court grants that motion for certification, Plaintiffs would seek Court approval of a single, combined notice for both the Settlement with Wal-Mart, and certification of the litigation class against Netflix.  Such combined notice would be far more efficient and cost-effective than two rounds of notice (*i.e.*, one now for the Wal-Mart Settlement, and another later for a litigation class against Netflix), particularly given the large size of the sub-classes at issue.  All of Plaintiffs' requests are unopposed by Wal-Mart, and the non-settling Defendant, Netflix, lacks standing to object. *See, e.g.*, *Waller v. Financial Corp. of America*, 828 F.2d 579, 582 (9th Cir. 1987) ("[A] non-settling defendant, in general, lacks standing to object to a partial settlement").

Accordingly, Plaintiffs respectfully seek an order (i) granting preliminary approval of the Settlement; (ii) certifying the Settlement Sub-Classes; and (iii) deferring approval of the manner and forms of giving notice to Settlement Class Members and deferring approval of the claims administrator.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   PLAINTIFFS' CLAIMS

---

[1] Members of the settlement sub-classes will be referred to, collectively, as "Settlement Class Members."

[2] *See* Agreement ¶ 15.1 (setting forth terms of release).

HOWREY LLP

3

1    Plaintiffs allege that, on or before May 19, 2005, Defendants Wal-Mart and Netflix completed

2    and entered into an illegal anticompetitive agreement (the "Market Allocation Agreement") to divide

3    the markets for sales and online rentals of DVDs in the United States, with the purpose and effect of

4    monopolizing and unreasonably restraining trade in the market for online DVD rentals (the "Online

5    DVD Rental Market").   Plaintiffs allege that Defendants' agreement and conduct resulted in

6    overcharges to both Netflix subscribers and Blockbuster subscribers.   Plaintiffs assert four causes of

7    action:  1) a claim for unlawful market allocation of the online DVD rental market, pursuant to section

8    1 of the Sherman Act (against both Netflix and Wal-Mart); 2) a claim for monopolization of the online

9    DVD rental market pursuant to section 2 of the Sherman Act (against Netflix only); 3) a claim for

10   attempted monopolization for the online DVD rental market pursuant to section 2 of the Sherman Act

11   (against Netflix only); and 4) a claim for conspiracy to monopolize the online DVD rental market

12   pursuant to section 2 of the Sherman Act (against both Netflix and Wal-Mart).  *See* CAC ¶¶ 74-92;

13   Blockbuster Compl. ¶¶ 133-152.  Wal-Mart denies these allegations.

14         The representative plaintiffs for the Netflix Sub-Class are Bryan Eastman, Amy Latham,

15   Melanie Misciosia Salvi, Stan Magee, Michael Orozco, Andrea Resnick, Lisa Sivek, and Michael

16   Wiener (the "Netflix Plaintiffs").   The representative plaintiffs for the Blockbuster Sub-Class are

17   Daniel Kaffer, Jason Lawton, Alan Levy, Justin Meadows, Rosemary Pierson, and Rebecca Silverman

18   (the "Blockbuster Plaintiffs") (collectively, the "Class Representatives").  *See* Agreement ¶ 2.14.

19         **B.    PROCEDURAL HISTORY**

20         On March 23, 2010, the Netflix Plaintiffs moved for class certification.  (Dkt. No. 128.)  In

21   support of their motion, Plaintiffs submitted the expert report of Dr. John C. Beyer.  (Dkt. No. 130.)

22   The Netflix Plaintiffs' motion for class certification has been fully briefed, and the Court held a

23   hearing on September 1, 2010.  (Dkt. No. 206).  The Blockbuster Plaintiffs have not yet moved for

24   class certification.  *See* Dkt. No. 209 (setting deadline for Blockbuster Plaintiffs' motion for class

25   certification).[3]

26   —————————————

27   [3] On July 21, 2009, Defendants moved to dismiss the Blockbuster Plaintiffs' Complaint for lack of
antitrust standing.  (Dkt. No. 52.)  The Court granted the motion to dismiss on December 1, 2009, but,

28   on January 29, 2010, the Court granted the Blockbuster Plaintiffs leave to file a second amended
(Continued...)

HOWREY LLP

4

Plaintiffs have engaged in vigorous discovery, including: (1) obtaining and reviewing approximately 1.5 million documents (comprising roughly 15 million pages) from Defendants; (2) obtaining data and documents from a number of third parties pursuant to subpoena; (3) conducting 27 depositions of fact witnesses of Defendants and third parties; and (4) deposing Defendants' economic expert on class certification issues.  In addition, all 14 Class Representatives have been deposed.

## C.   SETTLEMENT NEGOTIATIONS

On May 16, 2010, Plaintiffs and Wal-Mart participated in a private mediation with the Honorable Layn R. Phillips.  *See* Phillips Aff. ¶ 5.  Judge Phillips is a former United States Attorney and served as a United States District Judge for four years, presiding over more than 140 federal trials.  *Id.* at ¶ 2.  He is nationally recognized as a mediator by the Center for Public Resources Institute for Dispute Resolution ("CPR"), serving on CPR's National Panel of Distinguished Neutrals.  *Id.* at ¶ 3. He is also a Diplomat Member of the California Academy of Distinguished Neutrals.  *Id.*

As a result of that mediation session and other arms-length negotiations, the parties signed a Term Sheet dated August 26, 2010.  *Id.* at ¶¶ 5-6.  The parties continued their negotiations, and the Agreement was reached on December 3, 2010.[4]

Based on Class Counsel's extensive review of the facts of this case, and given that the proposed settlement is a partial one that will substantially aid the continued prosecution of the case against Netflix, Class Counsel believe the proposed settlement is fair, reasonable and adequate in light of the risks of continued litigation, and should be preliminarily approved.

Judge Phillips agrees.  *See* Phillips Aff. ¶ 9 ("I believe that the terms of the settlement are fair, adequate, reasonable and in the best interests of the Settlement Sub-Classes.").

## III.   TERMS OF THE SETTLEMENT

### A.   SETTLEMENT SUB-CLASSES

The Agreement proposes two Settlement Sub-Classes for settlement purposes only, defined as:

---

(...Continued)

complaint, setting forth additional allegations.  (Dkt. Nos. 87 & 112.)  The Court denied Defendants' second motion to dismiss on July 6, 2010.  (Dkt. No. 168).
[4]  It took several more days to collect all 20 signatures provided for in the Agreement.

HOWREY LLP

5

PLFS' NOTICE OF MOT. AND MOT.FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT WITH WAL-MART DEFENDANTS: MEM. IN SUPPORT THEREOF: Master File No. 4:09-md-2029 PJH

<u>Netflix Sub-Class</u>:  Any person or entity residing in the United States or Puerto Rico that paid a subscription fee to rent DVDs online from Netflix on or after May 19, 2005, up to and including the date the Court grants preliminary approval to the settlement; and

<u>Blockbuster Sub-Class</u>:  Any person or entity residing in the United States or Puerto Rico that paid a subscription fee to rent DVDs online from Blockbuster on or after May 19, 2005, up to and including the date the Court grants preliminary approval to the settlement.

Agreement ¶ 5.1.  As discussed further below, each Settlement Sub-Class satisfies all the requirements of Rule 23(a) and of Rule 23(b)(3)[5], contingent on and for purposes of settlement.

## B.   BASIC SETTLEMENT TERMS

In exchange for dismissal with prejudice and a release of all claims which were or could have been alleged in this litigation against it, Wal-Mart has agreed to pay a maximum of up $40,000,000 (the "Ceiling") and minimum of $29,000,000 (the "Floor").  Agreement ¶ 6.1.  Settlement Class Members who make timely and valid claims have the option of receiving a cash payment or a "Gift Card," an electronic gift card that is transferable and redeemable for purchases of any products sold by Walmart.com, in the same face amount.  Agreement ¶¶ 2.24, 6.1.2, 6.1.2.3.  Distributions to Settlement Class Members will be on a claims-made basis.  *Id.*

Wal-Mart has agreed to pay a "Cash Component" to cover: (a) reasonable attorneys' fees, costs and expenses as may be approved by the Court; (b) any incentive or service awards to the Class Representatives as may be approved by the Court; (c) $1,500,000 to be used to cover costs (other than billable time) incurred by Class Counsel after the date of the Agreement in pursuing the litigation against Netflix; and (d) actual Notice and Administration Costs.  *Id.* at ¶ 6.1.1. Plaintiffs will seek approval of incentive payments from the Court in the amount of $5,000 for each Class Representative. Plaintiffs will submit a separate motion for attorneys' fees, costs and expenses.

The Cash Component will be paid from the Floor amount ($29 million), and any portion of the Floor not used for the Cash Component will be paid to Settlement Class Members in the form of cash

---

[5]A person or entity may be a member of both Sub-Classes.  *Id.* at ¶ 5.2.  A person or entity who received a promotion for a free trial membership with either Netflix or Blockbuster but who did not subsequently purchase a subscription from either, however, would not be included as a Settlement Class Member.  *Id.* at ¶ 5.3.

HOWREY LLP

1    or Gift Cards. *Id.* at ¶ 6.1.1.5. To illustrate, assume that the Cash Component equals $15 million, and

2    that 20% of all eligible Settlement Class Members submit timely and valid claims. Twenty percent of

3    $25 million (the maximum additional amount Wal-Mart would pay in addition to the $15 million Cash

4    Component) is $5 million; and $5 million added to the Cash Component of $15 million equals $20

5    million. Because $20 million is less than the Floor of $29 million, the amount that Wal-Mart would

6    pay would be increased from $20 million to $29 million (the Floor). Thus, the 20% who submit

7    claims would receive a total of $14 million. Therefore, the amount Wal-Mart ends up paying is linked

8    to the number of valid claims, with the amount per-claimant increasing on a pro-rata basis as the total

9    number of claimants decreases. Wal-Mart would pay out the full $40 million in the event that all class

10   members chose to submit timely and proper claims. That is, the entire $40 million is available for

11   payment.

12           The per-claimant value of the cash (if elected) or Gift Cards to be distributed to members of the

13   Blockbuster Sub-Class will be one-half (1/2) the amount to members of the Netflix Sub-Class,

14   reflecting the additional litigation challenges faced by the Blockbuster Sub-Class. *Id.* at ¶ 6.1.2.1. In

15   Judge Phillips' opinion, "the 2:1 ratio for payments to members of the Netflix Settlement Sub-Class as

16   compared to the members of the Blockbuster Settlement Sub-Class is a fair reflection of the relative

17   strengths of the two Sub-Classes' claims, particularly in light of the Court's rulings on the two Motions

18   to Dismiss the Complaints(s) of the Blockbuster Class." Phillips Aff. ¶10.

19           **C.    PROPOSED NOTICE AND CLAIMS PLAN**

20           As stated, Plaintiffs propose that notice to the Settlement Class Members be deferred, pending

21   the Court's ruling on the pending motion of the Netflix Plaintiffs for class certification. (Dkt. No.

22   128). If the Court certifies a litigation class to proceed against Netflix, Plaintiffs would seek approval

23   of a combined form of notice, providing class members with notice both of the Settlement with Wal-

24   Mart, and the certification of a litigation class against Netflix. Wal-Mart has agreed to this plan. *See*

25   Agreement ¶ 7.7.

26           Plaintiffs and Wal-Mart agree that, if the Court certifies a litigation class to proceed against

27   Netflix, before the Court has granted preliminary approval to the Settlement with Wal-Mart, Plaintiffs

28   and Wal-Mart will request a combined notice -- providing notice of both the litigation class and the

HOWREY LLP

7

1    Settlement -- be approved and disseminated, to the maximum extent possible. If the Court were to

2    deny certification of a litigation class as to Netflix, but grant preliminary approval of the Settlement

3    and certify the settlement sub-classes, then, depending on the ruling, Plaintiffs and Wal-Mart would

4    request that notice proceed with respect to the Settlement Sub-Classes and the Settlement. *See*

5    Agreement ¶ 7.7.

6         Because a form of notice for the Settlement and certification of the Settlement Sub-Classes may

7    be needed, Plaintiffs and Wal-Mart have agreed on the proposed form of such notice. The proposed

8    form of direct, e-mailed notice is attached to the Agreement as Exhibit 1 thereto[6]; and the proposed

9    form of published notice is attached to the Agreement as Exhibit 2 thereto. The notice would explain,

10   *inter alia,* how Settlement Class Members could submit a "Verification Form" to obtain a share of the

11   Settlement.[7] Again, the parties are not asking the Court, at this time, to take any action regarding

12   notice, including the appointment of a claims administrator.[8]

13        **D.    RELATIONSHIP TO CALIFORNIA STATE ACTIONS**

14

15   _____

16   [6] This Court has found that e-mail notice is particularly suitable where, as here, the Settlement Class
     Members' claims arise from their visits to Defendants' websites. *See Browning v. Yahoo! Inc.*, No.
     C04-01463-HRL, 2007 WL 4105971, at *4 (N.D. Cal. Nov. 16, 2007) (citing *Lundell v. Dell, Inc.*, No.

17   C05-3970, 2006 WL 3507938, at *1 (N.D. Cal. Dec. 5, 2006) (approving notice by e-mail)); *Browning
     v. Yahoo! Inc.*, No. C04-01463 HRL, 2006 WL 3826714, at *8-*9 (N.D. Cal. Dec. 27, 2006)

18   (approving an "extensive, multifaceted, and innovative" plan of email notification of a class action
     settlement as "particularly suitable in this case, where Settlement Class Members' allegations arise

19   from their visits to Defendants' Internet websites, demonstrating that the Settlement Class Members
     are familiar and comfortable with email and the Internet."). *See also Chavez v. Netflix, Inc.*, 162 Cal.

20   App.4th 43, 58; 75 Cal. Rptr.3d 413, 427 (2008) (approving email notice to Netflix subscriber class
     with long form notice posted on a website as a "sensible and efficient way of providing notice," and

21   noting that "[t]he class members conducted business with defendant over the Internet, and can be
     assumed to know how to navigate between the summary notice and the Web site."); *Farinella v.*

22   *PayPal, Inc.*, 611 F. Supp. 2d 250, 256 (E.D.N.Y. 2009) (e-mail notice sent to more than 2.2 million
     PayPal users).

23   [7] The proposed Verification Form for the Netflix Sub-Class is attached to the Agreement as Exhibit 4-
     A. The proposed Verification Form for the Blockbuster Sub-Class is attached to the Agreement as

24   Exhibit 4-B.
     [8] Wal-Mart has the right to terminate the Settlement if the total opt-outs from all Settlement Sub-

25   Classes exceed a certain number and another specified condition is met. The exact number is set forth
     in a confidential side agreement to the Agreement. Such agreements (commonly called "blow-out"

26   provisions) are typically identified, but not publicly filed, to meet the requirements of Rule 23(e)
     (requiring the identification of agreements), while encouraging settlement and discouraging third

27   parties from soliciting class members to opt out. *See In re HealthSouth Corp. Secs. Litig.*, 334 Fed.
     App'x 248, 250 n.4 (11th Cir. 2009). Because Plaintiffs and Wal-Mart propose to defer notice, the

28   opt-out period also would be deferred.

HOWREY LLP

1    This Settlement releases all claims which were or could have been asserted against Wal-Mart in

2    the California State Actions. *Id.* at ¶ 13.1. Counsel for plaintiffs in the California State Actions have

3    signed the Agreement.

4    **IV.    LEGAL ARGUMENT**

5        **A.    THE SETTLEMENT SHOULD BE PRELIMINARILY APPROVED**

6        Approval of a proposed class action settlement is a two-step process. The first step is

7    preliminary approval, which requires the court to find that the terms of the proposed settlement fall

8    within the "range of possible approval." *See In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1079;

9    *Vasquez*, 670 F. Supp. 2d at 1125. In deciding on preliminary approval, the court determines whether

10   the proposed settlement warrants consideration by members of the class and a later, full examination

11   by the court at a final approval hearing. *Manual for Complex Litigation (Fourth)* § 13.14 at 173. After

12   notice to the class, preliminary approval is followed, in the second step, by a review of the fairness of

13   the settlement at final approval, and, if appropriate, a finding that it is "'fair, reasonable and

14   adequate.'" *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1988) (citation omitted).

15   Because preliminary approval is provisional, courts grant preliminary approval where a proposed

16   settlement has no "'obvious deficiencies.'" *See, e.g., In re Vitamins Antitrust Litig.*, 2001 WL 856292,

17   at *4 (D.D.C. Jul. 25, 2001) (citation omitted).

18       It is well-recognized that "[v]oluntary out of court settlement of disputes is 'highly favored in

19   the law' ... and approval of class action settlements will be generally left to the sound discretion of the

20   trial judge." *Wellman v. Dickinson*, 497 F. Supp. 824, 830 (S.D.N.Y. 1980) (citations omitted).

21   Indeed, "[i]t hardly seems necessary to point out that there is an overriding public interest in settling

22   and quieting litigation." *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976); *see also*

23   *Churchill Village, L.L.C. v. General Elec.*, 361 F.3d 566, 576 (9th Cir. 2004).

24       The settlement before the Court amply meets the requirements for preliminary approval. The

25   Agreement, negotiated by Plaintiffs and Wal-Mart after extensive negotiations overseen by an

26   experienced mediator, falls well within the range of possible approval since it meets each of the

27   requirements of substantive and procedural fairness and there are no grounds to doubt its

28   reasonableness.

HOWREY LLP

9

### 1. The Proposed Settlement Was the Product of Informed, Non-Collusive Negotiations

The Court should look to whether the proposed settlement appears to be the product of "serious, informed and non-collusive negotiations." *In re Medical X-Ray Film Antitrust Litig.,* 1997 U.S. Dist. LEXIS 21936, at *19 (E.D.N.Y. Dec. 10, 1997). In applying this factor, courts give substantial weight to the experience of the attorneys who prosecuted the case and negotiated the settlement. *See In re Tableware Antitrust Litig.,* 484 F. Supp. 2d at 1080.

The proposed Settlement was the product of intense and thorough arm's-length negotiations by experienced and informed counsel. The negotiations occurred over many months and involved telephonic and face-to-face meetings. A formal mediation was conducted by Judge Phillips, (*see* Phillips Aff.), followed by additional, arm's-length negotiations. Thus, the settlement is the product of non-collusive negotiations. *See In re Toys "R" Us Antitrust Litig.,* 191 F.R.D. 347, 352 (E.D.N.Y. 2000) ("[m]ost significantly, the settlements were reached only after arduous settlement discussions conducted in a good faith, non-collusive manner, over a lengthy period of time, and with the assistance of a highly experienced neutral mediator").

Plaintiffs conducted extensive investigations that allowed them to assess the strengths and weaknesses of the case against Wal-Mart. As detailed above, discovery has spanned more than a year, and has been very extensive. In addition, Class Counsel have devoted considerable effort in pursuing many discovery issues into meet and confer procedures and a number of issues relating to discovery from Netflix, which could not be resolved, were litigated before Magistrate Judge Spero.

The parties briefed and argued two motions to dismiss the Blockbuster Plaintiffs' case, and during class certification proceedings, Plaintiffs and Defendants submitted lengthy reports by expert economists. (Dkt. Nos. 130 & 158.) Both sides' experts were deposed.

Armed with this knowledge, Class Counsel participated in a mediation session with counsel for Wal-Mart on May 16, 2010. Phillips Aff. ¶ 5. As a result of that mediation session and other discussions, Plaintiffs and Wal-Mart reached an agreement in principle to settle the Plaintiffs and the Class' claims against Wal-Mart. *Id.* According to Judge Phillips, "the settlement between Plaintiffs and Wal-Mart is the product of vigorous and independent advocacy and arm's-length negotiation

HOWREY LLP

10

conducted in good faith." *Id.* at ¶ 8. Judge Philips believes that the terms of the settlement are "fair, adequate, reasonable and in the best interests of the Settlement Classes." *Id.* at ¶ 9.

Though in Plaintiffs' view the case here is strong, there are obviously risks and challenges as well. The Court, for example, granted Defendants' first motion to dismiss the Blockbuster Plaintiffs' Complaint.

Class Counsel's judgment that the Settlement is fair and reasonable is entitled to great weight. *Reed v. General Motors Corp.*, 703 F.2d 170, 175 (5th Cir. 1983) ("[T]he value of the assessment of able counsel negotiating at arm's length cannot be gainsaid."); *In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*, MDL No. 901, 1992 WL 226321, at *2 (C.D. Cal. June 10, 1992) (finding that belief of counsel that the proposed settlement represented the most beneficial result for the class to be a compelling factor in approval of settlement). Indeed, "there is typically an initial presumption of fairness where the class settlement was negotiated at arms' length." *Id.* at *2.

In light of the risks inherent in this litigation, and the considerable amount Wal-Mart has agreed to pay, the settlement merits preliminary approval. It provides substantial and certain benefits to the Settlement Class Members. Wal-Mart, one of the largest corporations in the world, would vigorously defend itself at trial. The uncertainties of any trial, and the unpredictable delays that would attend waiting for recovery after trial, verdict, and any appeal, all strongly counsel in favor of preliminary approval of the proposed Settlement.

### 2. The Proposed Settlement Falls Well Within the Range of Possible Approval

The proposed Settlement falls within the range of possible approval. When evaluating the adequacy of a settlement, the court does "not decide the merits of the case or resolve unsettled legal questions." *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981). *See also Officers for Justice v. Civil Service Comm'n of the City and County of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982) (same). Nor should a court "substitute its business judgment for that of the parties." *Rankin v. Rots*, No. 02-71045, 2006 WL 1876538, at *3 (E.D. Mich. June 27, 2006).

This complex case involves a range of disputed issues, including Plaintiffs' ability to prove an antitrust violation under *per se* or rule of reason analysis and the amount of damages. While Plaintiffs

HOWREY LLP

11

1  believe that they have very meritorious claims, Wal-Mart has denied, and continues to deny, each and

2  all of the arguments and contentions asserted by Plaintiffs.

3        Significantly, because this is a partial settlement only and because of joint and several liability,

4  all Settlement Class Members will retain their ability to recover their full damages from Netflix,

5  subject perhaps only to a credit for the amount paid by Wal-Mart. *See Texas Indus. v. Radcliff*

6  *Materials, Inc.,* 451 U.S. 630, 646 (1981).  Furthermore, Wal-Mart has agreed to pay up to $1.5

7  million (as part of the Cash Component) to fund the continued litigation against Netflix -- a substantial

8  benefit in light of the complexity and cost of class action litigation.[9]  Two other features of this case

9  make the ability to continue the litigation against Netflix especially significant.  First, while certainly

10  not the size of Wal-Mart, Netflix has become a substantial corporation (due in part to the conduct at

11  issue in this case) with a current stock market valuation of approximately $10 billion.  Thus, even

12  without Wal-Mart, there remains a very deep pocket to pay any judgment.  Second, some of Plaintiffs'

13  claims are brought against only Netflix.

14        As part of the compromise embodied in any settlement, however, Wal-Mart has agreed to pay

15  between $40 million and $29 million, and to provide certain limited cooperation in the continued

16  litigation against Netflix.  At the Settlement Class Member's election, Settlement Class Members will

17  receive either a cash payment, or a Gift Card to Walmart.com.  The Gift Card provides actual value to

18  class members.  Walmart.com sells a wide variety of products, including clothing, jewelry, electronics,

19  furniture, groceries, health and beauty products, movies, music, books, pharmacy items, sports and

20  fitness equipment, toys, and video games. *See, e.g.,* www.Walmart.com.  All Settlement Class

21  Members will be able to purchase something of actual value with these Gift Cards. *See* Advisory

22  Committee note for FRCP 23(2)(C)(h) (providing that a court should ensure that "nonmonetary

23  provisions" in a class settlement result in "actual value to the class.").  Because Settlement Class

24  Members are or were subscribers to online services (Netflix and/or Blockbuster.com), they are already

25  familiar with online purchases and will be able to utilize the Gift Cards easily and successfully.

26

27

---

[9] *See, e.g., In re WorldCom, Inc. Secs. Litig.,* 2004 WL 2591402, at *22 (S.D.N.Y. Nov. 12, 2004) ("It
28  is appropriate to establish a litigation fund out of the proceeds of a partial settlement.").

HOWREY LLP

12

The Gift Card is also transferable. *Cf., Young v. Polo Retail, LLC*, No. C-02-4546-VRW, 2007 WL 951821, at *4 (N.D. Cal. Mar. 28, 2007) ("More compelling than the availability of alternative items like Polo brand paint or perfume is the transferability of the gift cards; this enables class members to obtain cash-something all class members will find useful."); *Lucas v. Kmart Corp.*, 234 F.R.D. 688, 692-93 (D. Colo. 2006) (granting preliminary approval to class action settlement with portion of settlement in gift cards redeemable at face value); *Palamara v. Kings Family Restaurants*, No. 07-cv-317, 2008 WL 1818453, at *1, *6 (W.D. Pa. Apr. 22, 2008) (granting final approval to a settlement that involved vouchers with a retail value of $4.68).

In short, the proposed settlement here is well within the range of possible approval, and should be preliminarily approved.

### 3.   The Proposed Settlement Has No Obvious Deficiencies and Does Not Present Any Grounds to Doubt Its Fairness

Additionally, the proposed Settlement should be preliminarily approved because it has no "'obvious deficiencies.'" *See In re Vitamins Antitrust Litig.*, 2001 WL 856292, at *4. As described below, the proposed Settlement does not improperly grant preferential treatment to segments of the class.

### a)   The Settlement Does Not Improperly Grant Preferential Treatment to Segments of the Class

The relief provided in the Settlement will benefit all Settlement Class Members. They will, as explained in the proposed class notice, share in the settlement funds in proportion to the Sub-Class to which they belong.

The Gift Card and/or Cash Amount available to a member of the Blockbuster Sub-Class is one-half the Amount available to a member of the Netflix Sub-Class. Agreement ¶ 6.1.2.1. This distinction reflects the additional challenges faced by the Blockbuster Sub-Class. In denying Defendants' second motion to dismiss the Blockbuster Plaintiffs' Complaint, the Court stated it "continues to have strong doubts about plaintiffs' ultimate ability to *prove* the directness of their injury." *See* July 6, 2010 Order, Dkt. No. 168 at 11 (emphasis in original). The Blockbuster Plaintiffs and Blockbuster Sub-Class, accordingly, face additional litigation risk, and this additional risk is reflected in the Agreement. Courts have found that a settlement allocation that acknowledges the relative risks of claims supports

HOWREY LLP

13

the reasonableness of the settlement. *See In re Portal Software, Inc. Sec. Litig.*, No. 03-5138, 2007 WL 1991529, at *6 (N.D. Cal. Jun. 30, 2007) ("Courts frequently endorse distributing settlement proceeds according to the relative strengths and weaknesses of the various claims.") (collecting cases).

**b)    The Proposed Service Awards to Class Representatives Are Reasonable**

Additionally, the Agreement does not improperly grant preferential treatment to the Class Representatives. The Agreement provides for reasonable and relatively small service awards to the Class Representatives of $5,000 each, as compensation for their extensive services on behalf of other Settlement Class Members. Here, the Representative Plaintiffs have produced documents, answered interrogatories, and been deposed. The Ninth Circuit and other federal courts have repeatedly approved the award of service payments to class representatives to recognize the time, efforts, and the risks they undertake on behalf of a class. *See, e.g., In re Mego Financial Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000); *Glass v. UBS Financial Servs., Inc.*, 2007 WL 221862, *16-*17 (N.D. Cal. Jan. 26, 2007).

**B.    THE COURT SHOULD CERTIFY THE NETFLIX AND BLOCKBUSTER SUB-CLASSES FOR PURPOSES OF SETTLEMENT**

In connection with the proposed settlement, Plaintiffs and Wal-Mart agree that the Court may certify two settlement sub-classes, contingent on settlement. As discussed below, each sub-class satisfies all the requirements of Rule 23(a) and of Rule 23(b)(3), contingent on the settlement being approved.

**1.    The Requirements of Rule 23(a) Are Satisfied**

**a)    The Sub-Classes Are So Numerous that Joinder of All Members Is Impracticable**

Class certification requires that the class is so numerous that joinder of all members is "impracticable." Fed. R. Civ. P. 23(a)(1). There is no dispute that the proposed Blockbuster and Netflix Sub-Classes are each sufficiently numerous to satisfy this criterion. Indeed, in Defendants' memorandum of law in opposition to the Netflix Plaintiffs' motion for class certification, Defendants conceded that the Netflix Plaintiffs had satisfied the numerosity, commonality and typicality

1  requirements of Rule 23(a)(1)-(3).  Dkt. No. 158 at 8.  The Blockbuster Plaintiffs (and the Blockbuster

2  Sub-Class) meet these requirements for the same reasons.

### b)   The Class Involves Questions of Law and Fact Common to Each Sub-Class

Rule 23(a)(2)'s commonality requirement is satisfied by the existence of a "common core of salient facts."  *Hanlon*, 150 F.3d at 1019.  The "'very nature of a conspiracy antitrust action compels a finding that common questions of law and fact exist.'"  *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, No. M-02-1486-PJH, 2006 WL 1530166, at *3 (N.D. Cal. June 5, 2006) (citation omitted).  This case presents a number of common issues, including whether Defendants' conduct violated Section 1 of the Sherman Act.

### c)   The Claims of the Class Representatives Are Typical of the Claims of the Sub-Classes

Rule 23(a)(3)'s typicality requirement  is "permissive."  *In re Infineon Techs. AG Sec. Litig.*, 266 F.R.D. 386, 393-94 (N.D. Cal. 2009).  It is met if the class representatives' claims "are reasonably co-extensive with those of absent class members; they need not be substantially identical."  *Hanlon*, 150 F.3d at 1020.  *See also Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 734 (9th Cir. 2007) ("[I]t is not necessary that all class members suffer the same injury as the class representative.")

Here, the injuries are of the same type and stem from the same conduct.  The Netflix Plaintiffs and members of the Netflix Sub-Class paid supra-competitive prices to Netflix during the class period.  The Blockbuster Plaintiffs and the Blockbuster Sub-Class, likewise, paid supra-competitive prices to Blockbuster during the class period.  The Representative Plaintiffs, like all Settlement Class Members, must prove the same central elements:  the existence, scope and effects of Defendants' allegedly unlawful agreement.  *See Simpson v. Fireman's Fund Ins. Co.*, 231 F.R.D. 391, 396 (N.D. Cal. 2005) ("In determining whether typicality is met, the focus should be 'on the defendants' conduct and plaintiff's legal theory', not the injury caused to the plaintiff.") (internal citation omitted)).  As this Court held in *DRAM*, 2006 WL 1530166, at *5-*6:

> [P]laintiffs' claims are typical of the class because proof of their section 1 claim will depend on proof of violation *by defendants*, and not on the individual positioning of the plaintiff … .As such, the claims are typical of each other, despite the differences in types of DRAM, customer categories … and sales channels.

HOWREY LLP

15

(citations omitted) (emphasis in original).

The typicality requirement "'does not mandate that products purchased, methods of purchase, or even damages of the named plaintiffs must be the same as those of the absent class members.'" *In re Static Random Access Memory (SRAM) Antitrust Litig.*, 264 F.R.D. 603, 609 (N.D. Cal. 2009) (citation omitted); *see also DRAM*, 2006 WL 1530166, at *4 (typicality exists "even though the plaintiff followed different purchasing procedures, purchased in different quantities or at different prices, or purchased a different mix of products than did the members of the class"). Members of the Netflix Sub-Class and the Blockbuster Sub-Class each purchased the same products from the same companies through the same channels of distribution, respectively.

### d) The Class Representatives Will Fairly and Adequately Protect the Interests of the Sub-Classes

Rule 23(a)(4) requires that plaintiffs will "fairly and adequately protect the interests of the class." This involves an inquiry whether the representative plaintiffs and their counsel have conflicts of interest with the proposed class, and whether they can and will prosecute the case vigorously on behalf of the class. *Hanlon*, 150 F.3d at 1020.

There are no conflicts of interests between the class representatives and other Settlement Class Members. They all have an interest in recovering damages for Defendants' alleged violation of the antitrust laws, which resulted in higher Netflix and Blockbuster prices. Moreover, Plaintiffs have retained highly capable and well-recognized counsel with extensive experience litigating antitrust cases in general and class action antitrust cases in particular. Lead counsel Howrey LLP has the largest competition/antitrust practice of any law firm in the world. Liaison counsel – Saveri & Saveri, Inc. – and the other firms on the steering committee – Berger & Montague, P.C.; Berman DeValerio; and Spector, Roseman, Kodroff and Willis – are among the nation's most successful firms in the prosecution of antitrust class actions. Class counsel have pursued this case vigorously for the benefit of all Settlement Class Members.

### 2. The Requirements of Rule 23(b)(3) Are Satisfied

In addition to meeting the prerequisites of Rule 23(a), the Sub-Classes also satisfy Rule 23(b)(3), for purposes of settlement. A class can be certified under Rule 23(b)(3) if the court finds that

HOWREY LLP

16

the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. "Judicial economy and fairness are the focus of the predominance and superiority requirements." *Oregon Laborers-Employers Health & Welfare Trust Fund v. Philip Morris,* 188 F.R.D. 365, 375 (D. Or. 1998). Plaintiffs' claims meet these requirements.

### a) Common Questions of Law and Fact Predominate Over Individual Questions

As the Supreme Court has noted, predominance is a test that is "readily met" in antitrust cases. *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 625 (1997). As Rule 23 states, common questions need only predominate; the existence of some individualized questions does not defeat the predominance of the common questions. The common issues must be "numerically and qualitatively substantial in relation to the issues peculiar to individual class members." *DRAM*, 2006 WL 1530166, at *6 (citation omitted). The predominance analysis tracks the claim's substantive elements. *Id.* at *7.

As set forth in the Netflix Plaintiffs' Motion for Class Certification, common factual and legal issues relating to proof of Defendants' liability, the fact of injury, and damages, substantially predominate over individual questions. For purposes of settlement only, Wal-Mart agrees that the predominance requirement is satisfied and the Sub-Classes should be certified, conditioned on the settlement becoming final.

Many courts have held that settlement is a factor that may weigh in favor of class certification. *See Amchem Prods.,* 521 U.S. at 619-20 ("Settlement is relevant to a class certification. . . . Confronted with a request for a settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems."); *In re Wireless Facilities, Inc., Secs. Litig. II,* 253 F.R.D. 607 (S.D. Cal. 2008) (certifying class for purposes of settlement and granting preliminary approval of settlement); *O'Keefe v. Mercedes-Benz USA, LLC.,* 214 F.R.D. 266, 291-92 & n.19 (E.D. Pa. 2003) (noting that a number of potential individual questions relate to manageability, and, therefore, do not prevent a finding of predominance in the context of settlement).

### b) A Class Action Is Superior to Other Available Methods for the Fair and Efficient Adjudication of the Settlement

HOWREY LLP

17

The certification of the Settlement Sub-Classes for settlement purposes only is also superior to other methods for the fair and efficient adjudication of this case. The fact of settlement is relevant to class certification because issues of manageability fall away. *Amchem*, 521 U.S. at 620.

Here, class treatment for settlement purposes is superior to other available methods because it helps to carry out one of Rule 23's central purposes: enabling those with relatively small individual claims to pursue recovery that otherwise would be impossible or impractical in light of the high costs of litigation. Indeed, the class mechanism is integral to private enforcement of antitrust and other consumer protection laws. *See, e.g., Hawaii v. Standard Oil Co. of California*, 405 U.S. 251, 266 (1972) ("Rule 23 of the Federal Rules of Civil Procedure provides for class actions that may enhance the efficacy of private [antitrust] actions by permitting citizens to combine their limited resources to achieve a more powerful litigation posture."); *In re Lorazepam & Clorazepate Antitrust Litig.*, 202 F.R.D. 12, 21 (D.D.C. 2001) ("[L]ong ago the Supreme Court recognized the importance that class actions play in the private enforcement of antitrust actions . . . . Accordingly, courts have repeatedly found antitrust claims to be particularly well suited for class actions[.]").

Because the Rule 23 requirements have been met, the Court should certify the proposed Settlement Sub-Classes for purposes of settlement.

## C.   THE COURT SHOULD APPOINT THE PLAINTIFFS' CURRENT COUNSEL AS COUNSEL FOR THE SETTLEMENT CLASSES

Fed. R. Civ. P. 23(c)(1)(B) states that "[a]n order certifying a class action … must appoint class counsel under Rule 23(g)." Rule 23(g)(1)(C) states that "[i]n appointing class counsel, the court (i) must consider: [1] the work counsel has done in identifying or investigating potential claims in the action, [2] counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action, [3] counsel's knowledge of the applicable law, [4] the resources counsel will commit to representing the class." Class Counsel satisfy these criteria.

//

//

//

HOWREY LLP

18

1      V.     **CONCLUSION**

2              For the foregoing reasons, Plaintiffs respectfully submit that the Court should grant preliminary

3      approval to the Settlement, conditionally certify the Settlement Sub-Classes, and order that notice be

4      deferred until a ruling on the Netflix Plaintiffs' motion for class certification.

5

6      Dated:  December 14, 2010.              Respectfully submitted,

7

8                                              ___/s/ Robert G. Abrams_____
                                               Robert G. Abrams
9                                              Thomas A. Isaacson
                                               Peter A. Barile III
10                                             HOWREY LLP
                                               1299 Pennsylvania Avenue, N.W.
11                                             Washington, DC 20004
                                               Tel.: (202) 783-0800
12                                             Fax: (202) 383-6610

13                                             Paul Alexander
                                               HOWREY LLP
14                                             1950 University Avenue
                                               East Palo Alto, CA 94303
15                                             Tel.: (650) 798-3500
                                               Fax: (650) 798-3600

16                                             Emily L. Maxwell
                                               HOWREY LLP
17                                             525 Market Street, Suite 3600
                                               San Francisco, CA 94105
18                                             Tel.: (415) 848-4947
                                               Fax: (415) 848-4999

19
                                               ***Lead Class Counsel and Member of the Steering Committee for***
20                                             ***Plaintiffs in MDL No. 2029***

21                                             Guido Saveri
                                               R. Alexander Saveri
22                                             Lisa Saveri
                                               Cadio Zirpoli
23                                             Melissa Shapiro
                                               SAVERI & SAVERI, INC.
24                                             706 Sansome Street
                                               San Francisco, CA 94111
25                                             Tel.:  (415) 217-6810
                                               Fax:  (415) 217-6813
26
                                               ***Liaison Class Counsel and Member of the Steering Committee***
27                                             ***for Plaintiffs in MDL No. 2029***

28

HOWREY LLP

                                               19

1    Joseph J. Tabacco, Jr.
     Christopher T. Heffelfinger
2    Todd A. Seaver
     BERMAN DEVALERIO
3    425 California Street, Suite 2100
     San Francisco, CA 94104
4    Tel.: (415) 433-3200
     Fax: (415) 433-6382
5
     Manuel J. Dominguez
6    Daniel A. Bushell
     BERMAN DEVALERIO
7    4280 Professional Center Drive, Suite 350
     Palm Beach Gardens, FL 33410
8    Tel: (561) 835-9400
     Fax: (561) 835-0322
9
     Eugene A. Spector
10   Jeffrey J. Corrigan
     William G. Caldes
11   Theodore M. Lieverman
     Jay S. Cohen
12   Jonathan M. Jagher
     SPECTOR ROSEMAN KODROFF& WILLIS, P.C.
13   1818 Market Street, Suite 2500
     Philadelphia, PA 19103
14   Tel.: (215) 496-0300
     Fax: (215) 496-6611
15
     H. Laddie Montague, Jr.
16   David F. Sorensen
     Sarah R. Schalman-Bergen
17   BERGER & MONTAGUE, P.C.
     1622 Locust Street
18   Philadelphia, PA 19103
     Tel.: (215) 875-3010
19   Fax: (215) 875-4604

20   ***Members of the Steering Committee for Plaintiffs
     in MDL No. 2029***

21

22   Netflix.039

23

24

25

26

27

28
HOWREY LLP

PLFS' NOTICE OF MOT. AND MOT.FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT WITH WAL-MART DEFENDANTS:
MEM. IN SUPPORT THEREOF: Master File No. 4:09-md-2029 PJH