UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

IN RE: ONLINE DVD RENTAL
ANTITRUST LITIGATION
_____/

No. M 09-2029 PJH

**ORDER GRANTING MOTION
FOR CLASS CERTIFICATION**

This Document Relates to:

ALL ACTIONS
_____/

Plaintiffs' motion for class certification came on for hearing on September 1, 2010 before this court. Plaintiffs, individuals representing a putative class comprised of subscribers to Netflix's online DVD rental service, appeared through their class counsel, Robert G. Abrams, Peter Barile, Guido Saveri, Eugene Spector, Lisa Saveri, Joseph Tobacco, Sarah Schalman-Bergen, Thomas Isaacson, and Paul Alexander. Defendant Netflix, Inc. ("Netflix") appeared through its counsel, Jonathan M. Jacobson, Sarah Walsh, and David Reichenberg. Defendants Walmart.com USA LLC ("Walmart.com") and Wal-Mart Stores, Inc. ("Wal-Mart Stores")(collectively "Wal-Mart") appeared through their counsel, Stephen Morrissey. Having read all the papers submitted and carefully considered the relevant legal authority, the court hereby GRANTS plaintiffs' motion for class certification, for the reasons stated at the hearing, and as follows.

## BACKGROUND

Plaintiffs generally allege that defendants Netflix, Wal-Mart Stores, and Walmart.com (collectively "defendants") improperly entered into an unlawful market allocation agreement (the "Agreement") that was publicly announced on May 19, 2005, and which had the effect of illegally dividing the markets for sales and online rentals of DVDs in the United States.

See Consolidated Amended Class Action Complaint ("Complaint"), ¶¶ 1-2. Specifically, plaintiffs allege that Netflix and Wal-Mart were competing directly in the online rental DVD market in mid-2004, but that in the face of Blockbuster's mid-2004 entry into the market place and the ensuing price wars between the three competitors, Netflix began conspiratorial communications with Wal-Mart, with the aim of having Wal-Mart exit the market place and thereby reduce downward pricing pressure in the marketplace. See, e.g., Complaint, ¶¶ 45-46, 50-51, 55-56. These efforts were successful, and were memorialized in the May 19 Agreement.

Plaintiffs further allege that the purpose of the Agreement was to monopolize and unreasonably restrain trade in the market for online DVD rentals, thereby allowing Netflix to charge supracompetitive prices to its subscribers. See Complaint, ¶ 2. As a consequence of the Agreement, plaintiffs generally claim that defendant Wal-Mart exited the market and that Netflix was able to entrench and enhance its dominant market position in the online DVD rental market, and ultimately, raise its price, with the result that Netflix charged higher subscription prices for online rental DVD programs. Id. at ¶ 5. As a result, millions of Netflix online subscribers allegedly paid supracompetitive prices. Id.

The named plaintiffs are eight individuals who directly subscribed to Netflix and paid Netflix fees in connection therewith. See Complaint, ¶¶ 6-13. The named plaintiffs purport to represent the following class of persons: "Any person or entity in the United States that paid a subscription fee to Netflix on or after May 19, 2005 up to and including the date of class certification." See id., ¶ 64.[1]

Plaintiffs assert four causes of action against Netflix and Wal-Mart: (1) a Sherman Act, section 1 claim for unlawful market allocation of the online DVD rental market (against all defendants); (2) a Sherman Act, section 2 claim for monopolization of the online DVD rental market (against Netflix); (3) a Sherman Act, section 2 claim for attempted

---

[1] The proposed class carves out certain exclusions – i.e., for government entities, defendants and co-conspirators, counsel, the court and its staff – that are not relevant for purposes of the present motion. Complaint, ¶ 64.

2

1 monopolization of the online DVD rental market (against Netflix); and (4) a Sherman Act, section 2 claim for conspiracy to monopolize the online DVD rental market (against all defendants). See Complaint, ¶¶ 74-92.

Plaintiffs now move to certify the proposed class. The parties have also filed motions to seal in connection with the certification motion.[2]

**DISCUSSION**

A. Legal Standard

In order for a class action to be certified, plaintiffs must prove that they meet the requirements of Federal Rule of Civil Procedure 23(a) and (b). As a threshold to class certification, plaintiffs must satisfy four prerequisites under Rule 23(a). First, the class must be so numerous that joinder of all members individually is "impracticable." See Fed. R. Civ. P. 23(a)(1). Second, there must be questions of law or fact common to the class. Fed. R. Civ. P. 23(a)(2). Third, the claims or defenses of the class representative must be typical of the claims or defenses of the class. Fed. R. Civ. P. 23(a)(3). And fourth, the person representing the class must be able to protect fairly and adequately the interests of all members of the class. Fed. R. Civ. P. 23(a)(4). The parties moving for class certification bear the burden of establishing that the Rule 23(a) requirements are satisfied. Gen'l Tel. Co. of Southwest v. Falcon, 457 U.S. 147, 156 (1982); see also Dukes v. Wal-Mart Stores, Inc., 603 F.3d 571, 581 (9th Cir. 2010).

If all four prerequisites of Rule 23(a) are satisfied, the court then determines whether to certify the class under one of the three subsections of Rule 23(b), pursuant to which named plaintiffs must establish that either 1) there is a risk of substantial prejudice from separate actions; or 2) declaratory or injunctive relief benefitting the class as a whole would

---

[2] The parties have each filed accompanying motions to seal certain documents submitted in conjunction with the certification motion, as reflected at Docket Nos. 131, 157, 171, and 215. Having reviewed the motions to seal and the responses corresponding thereto, the court hereby DENIES the administrative motions to seal reflected in Docket Nos. 157, 171, and 215. The court also DENIES the administrative motion to seal reflected in Docket No. 131; however, to the extent that the parties seek to place Exhibit 37 to the Declaration of Peter Barile ISO Class Certification under seal, the court GRANTS the motion.

1 be appropriate; or 3) common questions of law or fact common to the class predominate
2 and that a class action is superior to other methods available for adjudicating the
3 controversy at issue. See Fed. R. Civ. P. 23(b)(3).

4     The court does not make a preliminary inquiry into the merits of plaintiffs' claims in
5 determining whether to certify a class. See Eisen v. Carlisle & Jacquelin, 417 U.S. 156,
6 177 (1974). It will, however, scrutinize plaintiffs' legal causes of action to determine
7 whether they are suitable for resolution on a class wide basis. See, e.g., Moore v. Hughes
8 Helicopters, Inc., 708 F.2d 475, 480 (9th Cir. 1983). Making such a determination "will
9 sometimes require examining issues that overlap with the merits." Dukes, 603 F.3d at 587
10 ("the court must consider evidence relating to the merits if such evidence also goes to the
11 requirements of Rule 23"). The court will consider matters beyond the pleadings, if
12 necessary, in order to ascertain whether the asserted claims or defenses are susceptible of
13 resolution on a class wide basis. See id. at 589; see also McCarthy v. Kleindienst, 741
14 F.2d 1406, 1419 n.8 (D.C. Cir. 1984).

15     Moreover, in antitrust actions such as this one, it has long been recognized that
16 class actions play an important role in the private enforcement of antitrust laws. See
17 Hawaii v. Standard Oil Co., 405 U.S. 251, 262 (1972). Accordingly, when courts are in
18 doubt as to whether certification is warranted, courts tend to favor class certification. See,
19 e.g., In re Vitamins Antitrust Litig., 209 F.R.D. 251, 258 (D.C. Cir. 2002); In re Playmobil
20 Antitrust Litig., 35 F. Supp. 2d 231, 238 (E.D. N.Y. 1998).

21 B.     Federal Rule of Civil Procedure 23(a) Requirements

22     As noted, plaintiffs must first demonstrate that they have satisfied the requirements
23 for class certification under Rule 23(a), which requires a showing as to the following four
24 elements: numerosity, commonality, typicality, and adequacy. As the Ninth Circuit recently
25 reiterated, district courts considering class certification motions "are not only at liberty to,
26 but must, perform a rigorous analysis to ensure that the prerequisites of Rule 23(a) have
27 been satisfied." See Dukes, 603 F.3d at 581. The Ninth Circuit in Dukes also made clear
28

that a district court is permitted to examine evidence supporting the merits of the case, only to the limited extent the court's examination of such evidence is necessary to determine whether Rule 23(a) factors have been met.

### 1. Numerosity

FRCP 23(a)(1) requires that a class be so numerous that joinder of all members is impracticable. In order to satisfy this requirement, plaintiffs need not state the "exact" number of potential class members, nor is there any specific magic number that is required. See In re Rubber Chem. Antitrust Litig., 232 F.R.D. 346, 350-51 (N.D. Cal. 2005); In re Bulk [Extruded] Graphite Prod. Antitrust Litig., 2006 WL 891362, *5 (D. N.J. 2006). The fact that a class is geographically dispersed, or class members difficult to identify, supports class certification. See In re Rubber Chem. Antitrust Litig., 232 F.R.D. at 350-51.

Here, plaintiffs estimate that the proposed class contains millions of members dispersed across the country. See Declaration of Peter A. Barile III ISO Pl. Mot. Class Cert. ("Barile Decl."), Ex. 7. Defendants, for their part, do not dispute either this evidence, or that the class satisfies the numerosity requirement.

The court accordingly finds that plaintiffs have satisfied the numerosity requirement.

### 2. Commonality

FRCP 23(a)(2) requires that there exist "questions of law or fact common to the class." Where an antitrust conspiracy has been alleged, courts have consistently held that "the very nature of a conspiracy antitrust action compels a finding that common questions of law and fact exist." See In re Rubber Chem. Antitrust Litig., 232 F.R.D. at 351; In re Bulk [Extruded] Graphite Prod. Antitrust Litig., 2006 WL 891362 at *5.

So here. As plaintiffs posit, the existence, scope, and efficacy of the alleged conspiracy to allocate and monopolize the online DVD rental market in the United States are common questions that all plaintiffs must address. Defendants do not dispute plaintiffs' commonality showing.

Accordingly, the court finds that plaintiffs have satisfied the commonality requirement

of FRCP 23(a)(2).

### 3. Typicality

FRCP 23(a)(3) also requires that the claims of the named plaintiffs be typical of those of the class. This does not require that the claims of the representative party be identical to the claims of class members. See, e.g., In re Playmobil Antitrust Litig., 35 F. Supp. 2d at 242; see also Staton v. Boeing Co., 327 F.3d 938, 957 (9th Cir. 2003) (representative claims are "typical" if they are reasonably co-extensive with those of absent class members); Hanlon v. Chrysler Corp., 150 F.3d 1011 (9th Cir. 1998). Rather, typicality results if the representative plaintiffs' claims "arise[] from the same event, practice or course of conduct that gives rise to the claims of the absent class members and if their claims are based on the same legal or remedial theory." See In re Auction Houses Antitrust Litig., 193 F.R.D. 162, 164 (S.D. N.Y. 2000). In evaluating typicality, the court should consider whether the named plaintiffs' "individual circumstances are markedly different or ... the legal theory upon which the claims are based differs from that upon which the claims of other class members will perforce be based." See In re Bulk [Extruded] Graphite Prod. Antitrust Litig., 2006 WL 891362 at *5.

Plaintiffs contend here that typicality is satisfied because the class representatives and absent class members' injuries are of the same type, and stem from the same conduct. All must prove the same central elements of their case – i.e., the existence, scope and effects of the Agreement. All purchased the same product from the same company, through the same channel of distribution, and all paid supra-competitive prices to Netflix as a result of the alleged conspiracy.

Plaintiffs' arguments are persuasive. The named plaintiffs' claims are typical of the class because for all claims, proof of the alleged violations in question will depend on proof of violation *by defendants*, and not on the individual positioning of each plaintiff. Specifically, both the named plaintiffs' claims and the claims of absent class members depend on allegations that they paid for a Netflix subscription at a price that was artificially

inflated as a result of the alleged conspiratorial agreement between Netflix and Wal-Mart.

Furthermore, as with the numerosity and commonality requirements, defendants do not dispute that plaintiffs' claims are typical of those of the class.

Accordingly, the court finds the typicality requirement satisfied.

4. Adequacy

FRCP 23(a)(4) requires that the representative parties fairly and adequately protect the interests of the class. The court must find that named plaintiffs' counsel is adequate, and that named plaintiffs can fairly and adequately protect the interests of the class. Legal adequacy is determined by resolution of two questions: (1) whether named plaintiffs and their counsel have any conflicts with class members; and (2) whether named plaintiffs and their counsel will prosecute the action vigorously on behalf of the class. Id.; see also In re Linerboard Antitrust Litig., 203 F.R.D. 197, 207 (E.D. Pa. 2001); In re Rubber Chem. Antitrust Litig., 232 F.R.D. at 351, citing Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc., 244 F.3d 1152, 1162 (9th Cir. 2001). Generally, representation will be found to be adequate when the attorneys representing the class are qualified and competent, and the class representatives are not disqualified by interests antagonistic to the remainder of the class. Lerwill v. Inflight Motion Pictures, 582 F.2d 507, 512 (9th Cir. 1978); see also Cummings v. Connell, 316 F.3d 886, 896 (9th Cir.2003)("[t]he mere potential for a conflict of interest is not sufficient to defeat class certification")("[T]his circuit does not favor denial of class certification on the basis of speculative conflicts").

Defendants' primary challenge to adequacy here is that plaintiffs' counsel represents the present class of Netflix plaintiff subscribers in the instant action, as well as a group of Blockbuster plaintiff subscribers in a related action brought against the same defendants. According to defendants, the related Blockbuster action alleges that defendants' conspiratorial conduct (premised on the identical conduct as that alleged in the present action) began in October 2004 – which suggests in turn that the instant action, filed on January 2, 2009, is in fact barred by the four year statute of limitations that is applicable.

Thus, conclude defendants, plaintiffs' counsel represents two groups of plaintiffs whose positioning is contrary to each other.

The court finds defendants' argument unpersuasive. As plaintiffs note, they have alleged that the unlawful conduct consisted of the unlawful market allocation agreement that was publicly announced on May 19, 2005. Notwithstanding any allegation that conspiratorial conduct leading up to the agreement began as early as October 2004, this does not alter the fact that it is Wal-Mart's exit from the marketplace following the May 19 agreement, and as a result of the agreement, that is the trigger date for plaintiffs' alleged injury – and thus, for the running of the statute of limitations. The present complaint's original filing date of January 2, 2009, thereby falls within the four year statute of limitations.

The defendants having failed to come forward with any other basis for asserting that a conflict between class members, or between plaintiffs' counsel and class members, exists, the court accordingly concludes that plaintiffs have satisfied the adequacy requirements of FRCP 23(a)(4).

C.   Federal Rule of Civil Procedure 23(b) Requirements

Plaintiffs seek certification pursuant to Rule 23(b)(3). This requires the court to determine whether (1) "questions of law or fact common to the members of the class predominate" and (2) whether "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." See Fed. R. Civ. P. 23(b)(3).

The parties' dispute focuses primarily on the predominance issue.

1.   Predominance

Predominance generally requires "that the common issues be both numerically and qualitatively substantial in relation to the issues peculiar to individual class members." See, e.g., In re Bulk [Extruded] Graphite Prod. Antitrust Litig., 2006 WL 891362 at *9. The test for predominance is met "when there exists generalized evidence which proves or disproves an [issue or element] on a simultaneous, class-wide basis, since such proof obviates the need to examine each class members' individual position." See In re Vitamins

8

Antitrust Litig., 209 F.R.D. at 262. In undertaking the predominance analysis, courts must identify the issues involved in the case and determine which are subject to "generalized proof" applicable to the class as a whole, and which must be the subject of individualized proof. To predominate, however, common questions "need not be dispositive of the litigation." See In re Potash Antitrust Litig., 159 F.R.D. 682, 693 (D. Minn. 1995).

To succeed in their antitrust claims here, plaintiffs must establish (1) an antitrust violation; (2) "impact" or "fact of injury"; and (3) the amount of damages sustained as a result of the antitrust violation. See, e.g., Allied Orthopedic Appliances, Inc. v. Tyco Healthcare Group L.P., 247 F.R.D. 156, 165 (C.D. Cal. 2007); In re Vitamins Antitrust Litig., 209 F.R.D. at 257. The question, of course, is whether these issues are subject to generalized proof – thereby satisfying Rule 23(b)(3) – or whether they are unique to the individual class members.

Defendants appear to concede that predominance may be satisfied with respect to plaintiffs' ability to demonstrate an antitrust violation.[3] The parties fiercely dispute, however, whether the latter two issues – impact and damages – can be satisfied with generalized class-wide proof.

    a.    impact

In antitrust cases, the critical inquiry is frequently whether injury is "an issue common to the class and subject to generalized proof" or an issue "unique to each class member." See, e.g., In re Warfarin Sodium Antitrust Litig., 391 F.3d 516, 528 (3d Cir. 2004); Alabama

---

[3] Though not an area of dispute between the parties, the court agrees with plaintiffs that the predominance element is satisfied with respect to the existence of an antitrust violation. Common issues predominate in proving an antitrust violation "when the focus is on the defendants' conduct and not on the conduct of the individual class members." See, e.g., In re Bulk [Extruded] Graphite Prod. Antitrust Litig., 2006 WL 891362 at *9; In re Flat Glass Antitrust Litig., 191 F.R.D. at 484. This is the case here. Plaintiffs have alleged that defendants conspired to enter into an unlawful market allocation agreement in order to illegally divide the markets for sales and online rentals of DVDs in the United States, thereby allowing Netflix to charge supra-competitive prices to its subscribers. See Complaint at ¶¶ 2, 5, 45-46, 50-51, 55-56. To prove these violations, all class members must establish that the defendants engaged in the conspiracy to monopolize and unreasonably restrain trade in violation of sections 1 and 2 of the Sherman Act. This requires proof common to all plaintiffs.

1  v. Blue Bird Body Co., 573 F.2d 309, 320 (5th Cir. 1978).  Predominance will not be found
2  when injury or impact can be shown only on an individualized basis.  See, e.g., Robinson v.
3  Texas Auto Dealers Ass'n, 387 F.3d 416, 424 (5th Cir. 2004); In re Indust. Diamonds
4  Antitrust Litig., 167 F.R.D. 384 (S.D. N.Y. 1996).

5       As a preliminary matter, both sides agree that in order to show that the plaintiff class
6  suffered injury as a result of defendants' anticompetitive agreement, and Wal-Mart's
7  ensuing exit from the market, plaintiffs must demonstrate that in the but for world – i.e., one
8  where Wal-Mart would not have exited the market – Netflix would have lowered its prices.
9  The parties dispute, however, whether plaintiffs can prove this issue with common class-
10 wide proof.

11      Plaintiffs rely on the evidentiary record thus far developed in the case, as well as the
12 supporting declaration, report, and testimony of Dr. John C. Beyer to show that common
13 evidence of class-wide impact exists.  Generally, plaintiffs propose to demonstrate that
14 Wal-Mart's continued competition in the 'but for' world would have lowered Netflix's pricing,
15 and that all class members would have paid less for their subscriptions to Netflix, with
16 reference to categories of facts showing:  that Wal-Mart was and would have remained a
17 significant competitive force in the online DVD rental market; that Wal-Mart's exit from the
18 market and the switch to a two-firm market favorably impacted Netflix's profitability; that
19 Blockbuster's competitive significance and strategies in the real-world two firm market that
20 included Netflix and Blockbuster suggests reduced competition in that two firm market; that
21 barriers to entry exist in the online DVD rental market; the extent of Netflix's own monopoly
22 and market power; and that Netflix employed standardized pricing among plans that were
23 essentially commoditized.  See Mot. Class Cert. at 16-18.

24      More specifically, plaintiffs rely on the testimony of Dr. Beyer, who was asked to
25 analyze the existence of impact in the but for world.  His report purports to set forth a
26 methodology for doing so, and similarly posits:

27 • that Netflix charges one national monthly subscription price for online DVD rentals that vary only by number of DVDs a subscriber has the option to rent,
28

10

and which do not vary based on any customer demographics or by region;

- that Netflix's subscription plans must maintain their relative pricing in relation to each other;

- that online DVD rental service providers primarily compete on price, and that the nature of online DVD rentals is "substantially commoditized" in that each company's services have limited opportunities to differentiate themselves from each other;

- that given the similarity in plans and the consistent ratio of revenue per disc shipped across plans, a change in costs or competitive conditions would have a price impact across each of the plans and on all subscribers equally;

- that the economic literature relevant to the online DVD rental market confirms that prices fall with increased competition that stems from two firm markets;

- that the pricing behavior in the actual online DVD rental market before and following the market allocation agreement is consistent with the economic literature;

- that analysis of actual price data shows that subscription prices and gross profit margins were falling during the period of three-firm competition between Netflix, Blockbuster and Wal-Mart, and stabilized after the market allocation agreement and Wal-Mart's exit;

- and that all class members were equally affected.

See generally Dr. Beyer Report, ¶¶ 12, 38, 40-41, 49; see also, e.g., Dr. Beyer Rebuttal Report ¶¶ 22-35.

Plaintiffs contend that Dr. Beyer's testimony, and all supporting evidence demonstrating the lowered prices that would have resulted in the 'but for' world – i.e., demonstrating proof of impact – are rooted in and consist of generalized evidence common to the class, thereby satisfying the test for predominance.

Defendants, for their part, dispute that plaintiffs have come forward with a plausible methodology, based on common class-wide proof, that demonstrates that every member of the class was worse off in the actual world than they would have been in the "but-for" world. Defendants, relying on their own expert – Dr. Janusz Ordover – essentially challenge Dr. Beyer's methodology and analysis as failing to adequately assess crucial competitive variables related to Wal-Mart's exit from the online DVD rental market (and its continued competition in the "but-for" world), the examination of which defendants say demonstrates

that certain portions of the class suffered no injury at all as a result of Wal-Mart's exit from the online DVD rental market. Defendants also note that Dr. Beyer's failure to take these variables into account also exposes conflicts between the class members in the but for world.

As expressed by defense counsel at the hearing on the instant motion, the deficiencies in Dr. Beyer's analysis and plaintiffs' impact showing can be grouped into three principal failures: (1) plaintiffs' failure to adequately account for Netflix's subscriber growth over the class period; (2) the intra-class conflict between class members evidenced by the foregoing failure; and (3) plaintiffs' failure to adequately account for Wal-Mart's performance in the but for world.

More specifically, and beginning with the first of these deficiencies, defendants assert that Dr. Beyer's analysis fails to account for the growth in Netflix's subscriber base – which increased from 3 million subscribers to more than 14 million subscribers between May 2005 and the present – during the class period. Dr. Beyer's error lies in assuming that new Netflix subscribers added during the class period would have become Netflix subscribers in the but for world, while ignoring evidence that in fact demonstrates that if prices in the but for world were lowered – as plaintiffs posit – then Netflix would have been unable to make the technological improvements that are solely responsible for at least some of the new subscribers' membership. Dr. Beyer's total failure to account for the effect of investment and development on the rate of new subscribers in the but for world is fatal to plaintiffs' predominance showing as to impact, say defendants, because he fails to distinguish between those class members who would not have joined Netflix in the but for world (due to lack of technological investments) – and thus would not have been impacted by Wal-Mart's exit from the marketplace – and those class members whose decision to join Netflix in the but for world was price-dependent – and who would have suffered impact. Without providing a methodology to make the appropriate distinction, conclude defendants, plaintiffs cannot use Dr. Beyer's analysis to demonstrate, with recourse to generalized

class-wide evidence, that *all* members of the class suffered impact.

Second, defendants also claim that this fundamental deficiency exposes an intra-class conflict between existing subscribers as of May 19, 2005, and those who joined after that date. Since the former don't need to demonstrate, as a preliminary matter, that they would have subscribed to Netflix in the but for world, and the latter do, defendants contend that Dr. Beyer's foregoing failure to distinguish class members who would have joined Netflix in the but for world regardless of technological investments, from those who would not, places these class members in an adverse position to those for whom no such showing must be made. Defendants assert that the presence of this unresolved conflict obviates a finding that predominance has been met.

Finally, via the testimony of Dr. Ordover, defendants detail Dr. Beyer's failure to take into account critical factors bearing on Wal-Mart's performance in the but for world – and thus, the influence of Wal-Mart's performance on Netflix's pricing. Defendants highlight, for example:

- Dr. Beyer's reliance on the assumption that Wal-Mart was a major competitor, rather than conducting analysis of actual evidence to prove Wal-Mart's competitive significance – which evidence in fact suggests Wal-Mart's lack of competitive significance;

- that Wal-Mart's lack of competitive significance would have required Dr. Beyer to analyze whether Wal-Mart ever could have developed into a significant competitor and if so, the degree that such competition would have had on Netflix's prices in the but for world – an analysis that was never done;

- Dr. Beyer's erroneous assumption that the online DVD rental market is substantially commoditized, and his failure to account for the difference in range of subscription plans offered by Wal-Mart and Netflix (and to explain how the plan differences would have allowed Wal-Mart's continued competition with Netflix in the but for world to impact Netflix's prices);

- that Dr. Beyer's conclusions regarding the increased competition that would have resulted from a three firm market are based on speculation and unsupported by any real-world evidence;

- Dr. Beyer's failure to account for any competitive alternatives in the but for world (e.g., DVR boxes, "brick and mortar" retail chains, video rental kiosks and video on demand services) that could provide a plausible reason – distinct from Wal-Mart's exit from the marketplace – for any influence on Netflix's pricing.

See generally Dr. Ordover Report, ¶¶ 12-20.  All these deficiencies, claim defendants, evidence plaintiffs' failure to demonstrate impact for the class as a whole, with generalized evidence.

The court has given much thought to the parties' competing arguments and evidence – particularly defendants' – but ultimately concludes that plaintiffs have adequately demonstrated that the issue of impact is one common to the class and capable of resolution with recourse to generalized, class-wide proof.

Contrary to defendants' contentions, Dr. Beyer's reports and the analyses contained therein are supported by actual documentary evidence and data thus far produced in the action, and provide an adequate basis from which plaintiffs propose to demonstrate with proof common to the class that Wal-Mart's exit from the online DVD rental market harmed class members.  See, e.g., Beyer Report, ¶ 11.  The proposed methodologies that Dr. Beyer sets forth in order to analyze the existence of impact upon the class members – the cost-margin analysis and benchmark approach – are also well-established and find support in the economic literature.  See, e.g., In re TFT-LCD (Flat Panel) Antitrust Litigation, 267 F.R.D. 583, 606 (N.D. Cal. 2010); Beyer Report, ¶ 69.  Even if not ultimately persuasive to a trier of fact, for class certification purposes, the court is persuaded that plaintiffs have put forth a feasible methodology to show that the impact of Wal-Mart's exit from the online DVD rental market can be measured, in a manner and with regard to evidence that applies equally to all class members.

To be sure, defendants raise valid objections to Dr. Beyer's analysis.  They have, for example, noted Dr. Beyer's failure to discuss or explain the importance of certain competitive variables in the but for world – e.g., increases in Netflix's quality and service, increased competition from other competitors or distribution channels in the online DVD rental market, Wal-Mart's comparative influence in the market – that would likely influence Netflix pricing, and possibly prevent Netflix from lowering its prices (thereby discounting the existence of injury caused by virtue of Wal-Mart's exit from the market).  The court is also

troubled by defendants' argument that Dr. Beyer's failure to adequately account for Netflix's rapid subscriber growth exposes the possible existence of members of the class for whom Wal-Mart's exit from the market presented no injury, as well as the potential for difficulty in discerning those class members suffering injury from those who have not.

However, the fact remains that defendants' arguments – while admittedly highlighting vulnerabilities in Dr. Beyer's analysis, in light of the analysis set forth by Dr. Ordover – are ultimately directed to the merits of plaintiffs' ability to prove impact: i.e., plaintiffs' ability to ultimately *prove* that all plaintiffs suffered impact.[4]  Defendants' objections do not, in the court's view, establish that plaintiffs' methodology for proving impact will necessarily require *individualized* evidence.  Indeed, defendants' objections to plaintiffs' methodology are themselves made with reference to generalized proof applicable to the class.  For example, the issue of Wal-Mart's competitive significance and the effects stemming therefrom in the but for world, the impact of a three firm market versus a two firm market on Netflix's pricing, or the effects on Netflix pricing of alternative online DVD rental distribution channels in the but for world – all of these are substantive challenges that will be determined based upon the strength of evidence that applies equally to all members of the class.  And while defendants do an arguably better job of arguing that individualized evidence will be necessary in order to distinguish those plaintiffs whose decision to subscribe to Netflix was price-dependent and thus would have participated in the but for world, even this challenge to plaintiffs' impact showing does not depend upon individualized evidence per se.  Rather, defendants have presented a challenge that will ultimately either disprove or prove the viability of plaintiffs' impact theory on its merits.

---

[4] Moreover, to the extent that defendants make much of the fact that Dr. Beyer's report was rejected as deficient and used as a basis to deny certification in <u>Allied Orthopedic Appliances v. Tyco Healthcare Grp.</u>, 247 F.R.D. 156 (2007), this does not control the court's analysis here.  Certification was denied in <u>Allied Ortho</u>. in part because Dr. Beyer failed to take into account the various levels of predatory pricing alleged in that case, and the various products that were alleged there.  Here, by contrast, the online DVD rental plans purchased by plaintiffs were distributed via the same channel and entity, and are differentiated only according to plan type.  Thus, <u>Allied Ortho</u>. is distinguishable.

15

In short, despite defendants' objections to plaintiffs' methodology and analysis, as courts have recognized, "the issue at class certification is not which expert is the most credible, or the most accurate modeler, but rather have the plaintiffs demonstrated that there is a way to prove a class-wide measure of [impact] through generalized proof." In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litig., 256 F.R.D. 82, 100 (D. Conn. 2009). In resolving this issue, however, plaintiffs are not required to "prove the merits of their case-in-chief at the class certification stage. They need not demonstrate that their [] analysis captures all the proper variables and thus reaches the 'right' answer, as the defendants would require them to.... It is unnecessary to delve further into the merits by going point-by-point through each expert's theory to decide who has designed the 'better' [] equation." Id. at 101. The court must thus ultimately leave "disputes over the results reached and assumptions made with respect to competing methodologies to the trier of fact, and discern only whether the plaintiffs have advanced a plausible methodology to demonstrate that antitrust injury can be proved on a class-wide basis." In re eBay Seller Antitrust Litig., 2009 WL 2779374 *1 (N.D. Cal. 2009).

The court concludes, for the foregoing reasons, that plaintiffs have done so here. The court accordingly finds that the predominance requirement has been satisfied with regard to impact.

    b.  damages

Plaintiffs also rely on Dr. Beyer for class wide proof of damages. Dr. Beyer opines that there are two methodologies that are available for calculating damages: (1) the price-cost margin approach; and (2) the benchmark approach. See Dr. Beyer Report, ¶ 68. Dr. Beyer's report contains an explanation for how each approach works, and for how each approach can be utilized to arrive at a damages number. See id., ¶¶ 69-76.

As with Dr. Beyer's impact analysis, defendants attack both methodologies set forth by Dr. Beyer as a means for proving damages on a class-wide basis. Defendants do not take issue with the methodologies themselves, as they appear to concede that these

methodologies are generally well-accepted in the field of antitrust economics analysis. What defendants argue instead is essentially that Dr. Beyer's analysis and use of these methodologies fails to take significant factors into account, which failure essentially renders his analysis worthless.

With respect to Dr. Beyer's price-cost margin approach, for example, defendants note that his approach is based on a comparison of Netflix's gross profit margins while Wal-Mart remained in the online DVD rental business, with Netflix's higher gross profit margins after Wal-Mart's exit from the business in 2005, and the assumption that Netflix's gross profit margins would have remained low if Wal-Mart had not exited the marketplace. But, say defendants, Dr. Beyer's analysis contains no method for considering whether changes in Netflix's gross profit margins over time had anything to do with Wal-Mart at all. With respect to Dr. Beyer's benchmark methodology, defendants assert that Dr. Beyer's methodology is speculative, because he states that a benchmark price can be used to quantify damages, without explaining how he would determine whether a given benchmark made sense to apply to millions of class members over the duration of the class period.

As noted previously by this court, at the certification stage of an antitrust class action, plaintiffs have "a limited burden with respect to showing that individual damages issues" do not predominate. See In re Rubber Chem. Antitrust Litig., 232 F.R.D. at 354; In re Potash Antitrust Litig., 159 F.R.D. at 697. Plaintiffs need not supply a "precise damage formula," but must simply offer a proposed method for determining damages that is not "so insubstantial as to amount to no method at all." See id.

The court finds that plaintiffs have met this burden here. As noted in conjunction with the foregoing impact analysis, while defendants have made well-aimed challenges to Dr. Beyer's testimony, these challenges are largely addressed to the weight of the ultimate merits of plaintiffs' case. At this juncture, the court's inquiry is limited strictly to whether the methodologies advanced by Dr. Beyer for proving damages are methodologies that depend upon class-wide proof. And given that the methodologies Dr. Beyer proposes are well-

established in the economic literature, and the fact that Dr. Beyer explains how each methodology can be employed using class-wide proof, the methodologies are sufficient at this juncture. Moreover, as this court has noted previously, even if some individual issues may arise in calculating damages, this fact alone does not defeat class certification. See In re Bulk [Extruded] Graphite Prod. Antitrust Litig., 2006 WL 891362 at *15.

For these reasons, the court finds that individual issues do not predominate with respect to plaintiffs' proof of the third and final element of their antitrust conspiracy claim.

2. Superiority

FRCP 23(b)(3) permits class certification where "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Traditionally, there have been four factors that the court considers when evaluating the superiority requirement: the individual interests of members of the class; the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; the desirability of concentrating the litigation of the claims in the particular forum; and the difficulties likely to be encountered in the management of a class action. See FRCP 23(b).

These elements are satisfied here. First, for the reasons detailed herein, all class members are united by common and overlapping issues of fact and law, and thus, by a common interest in having their claims resolved collectively and pursuant to the efficient vehicle provided by the class action procedure. Second, since the present action has already been consolidated for case management before this court as part of a multidistrict litigation proceeding, the maintenance of a class action further promotes the fair and efficient adjudication of the present controversy. Third, for these same reasons, concentrating the litigation of all claims in the instant forum also further promotes manageability and efficiency. Finally, few difficulties are likely to result from a decision to certify the instant class. Indeed, the only difficulties likely to be encountered in this case would result from *not* certifying the class, given the expenditure of time and resources that

would result – from both the court's and the parties' perspectives – in requiring each class member's action to proceed independently.

For all these reasons, the court finds that a class action, under the circumstances present here, is the most efficient and superior means of litigating the instant MDL proceedings.

D. Conclusion

For all the foregoing reasons, plaintiffs' motion for class certification is GRANTED.

**IT IS SO ORDERED.**

Dated: December 23, 2010

PHYLLIS J. HAMILTON
United States District Judge