Robert G. Abrams (*pro hac vice*)
Gregory L. Baker (*pro hac vice*)
**BAKER & HOSTETLER LLP**
Washington Square, Suite 1100
1050 Connecticut Avenue, NW
Washington, DC 20036-5304
Telephone: (202) 861-1699
Facsimile: (202) 861-1783
Email: rabrams@bakerlaw.com
      gbaker@bakerlaw.com

*Lead Plaintiff Class Counsel in MDL No. 2029*

Guido Saveri (22349)
R. Alexander Saveri (173102)
Lisa Saveri (112043)
David Sims (248181)
**SAVERI & SAVERI, INC.**
706 Sansome Street
San Francisco, CA 94111
Telephone: (415) 217-6810
Facsimile: (415) 217-6813
Email: guido@saveri.com
      rick@saveri.com
      lisa@saveri.com
      dsims@saveri.com

*Liaison Plaintiff Counsel in MDL No. 2029*
[Additional Counsel on Signature Page]

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| **IN RE ONLINE DVD RENTAL ANTITRUST LITIGATION** | Master File No. 4:09-md-2029 PJH<br><br>MDL No. 2029<br><br>Hon. Phyllis J. Hamilton |
| **This document relates to:**<br><br>*Pierson v. Walmart.com USA LLC, et al.,*<br>M:09-CV-2163-PJH<br><br>*Levy, et al. v. Walmart.com USA LLC, et al.,*<br>M:09-CV-2296-PJH | **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR THE DISTRICT COURT TO REVIEW THE CLERK'S TAXATION OF COSTS; MEMORANDUM IN SUPPORT THEREOF**<br><br>Date:  August 10, 2011<br>Time:  9:00 a.m.<br>Place:  Courtroom 3 |

# **TABLE OF CONTENTS**

**PAGE**

I. INTRODUCTION ..................................................................................................................1

II. PROCEDURAL BACKGROUND........................................................................................2

III. STANDARD OF REVIEW ...................................................................................................3

IV. ARGUMENT .........................................................................................................................3

    A. The Clerk's Taxation of Costs Should Be Vacated Because The Blockbuster Subscriber Action Was "Close And Difficult"............................................3

    B. No Costs Can Be Taxed Because Netflix Failed To Meet Its Burden To Demonstrate Why Its Costs Were Necessary To The Blockbuster Action and Failed To Demonstrate Its Costs Are Not Only Taxable But Reasonable ...................................................................................................................5

        1. Legal Standard ................................................................................................5

        2. Costs Cannot Be Taxed Because Netflix Does Not Even Attempt To Meet Its Burden Of Demonstrating Which Of Its Costs Were Necessary To The Blockbuster Subscriber Action..........................................................................................................6

        3. Netflix's Claimed Exemplification And Copying Costs Are Not Taxable; To The Extent They Are Deemed To Be Taxable They Must Nevertheless Be Excluded Because They Are Unreasonably High ..................................................................................8

            a. Fees paid to e-discovery consultants are not taxable ...............................8

            b. Even A Theoretically Taxable e-Discovery Cost For "TIFFing" Is Not Taxable Here Because Netflix Chose To Pay An Exorbitant, Above-Market Rate ...............................10

        4. Taxed Costs Outside Those Permitted By 28 U.S.C. § 1920 Must Be Excluded........................................................................................11

        5. The Copy Costs Lacking Any Documentation Or Information As To Their Reasonableness Or Necessity Must Be Excluded ..............................................................................................11

V. CONCLUSION....................................................................................................................12

# TABLE OF AUTHORITIES

**CASES**                                                                                                                    **PAGE**

*Asis Internet Servs. v. Optin Global, Inc.*, No. C-05-5124 JCS, 2008 U.S. Dist.
LEXIS 103932 (N.D. Cal. Dec. 17, 2008) ..............................................................................3

*Ass'n of Mexican-Am. Educators v. Cal.*, 231 F.3d 572 (9th Cir. 2000) ....................................4

*B. Fernandez & Hnos, Inc. v. Kellogg USA, Inc.*,
    516 F.3d 18 (1st Cir. 2008) ..................................................................................................4

*Chemetall GmgH v. ZR Energy, Inc.*, No. 99 C 4334, 2001 U.S. Dist. LEXIS 23716
    (N.D. Ill. Sept. 14, 2001) ...................................................................................................12

*Comm. Concerning Cmty. Improvement v. City of Modesto*, No. CV-F-04-6121
    LJO DLB, 2007 U.S. Dist. LEXIS 94328 (E.D. Cal. Dec. 11, 2007) ..................................9

*Competitive Techs. v. Fujitsu Ltd.*, 2006 U.S. Dist. LEXIS 98312 (N.D. Cal. Aug.
    23, 2006) .......................................................................................................................6, 12

*Computer Cache Coherency Corp. v. Intel Corp.*, No. C-05-01766 RMW, 2009
    U.S. Dist. LEXIS 122596, at *3-6 (N.D. Cal. Dec. 18, 2009) ..........................................11

*Crawford Fitting Company v. J.T. Gibbons, Inc.*, 482 U.S. 437 (1987) ......................................5

*Ferreira v. M/V CCNI Antofagasta*, No. 2: 04-cv-1916-MCE-DAD, 2007 U.S. Dist.
    LEXIS 76767 (E.D. Cal. Oct. 15, 2007 .............................................................................12

*Fruit Belt Canning Co. v. Heinemann's Inc.*,
    No. 05 C 4359, 2006 U.S. Dist. LEXIS 35902 (N.D. Ill. May 17, 2006) .....................7, 10

*Gabriel Techs. Corp. v. Qualcomm, Inc.*, No. 08 CV 1992 MMA (POR), 2010 U.S.
    Dist. LEXIS 98229 (S.D. Cal. Sept. 20, 2010) ....................................................................9

*Gordon v. Adams,* No. 3:08-v-00200-LRH-RAM, 2010 U.S. Dist. LEXIS 69391
    (D. Nev. June 18, 2010) ....................................................................................................10

*In re Media Vision Tech. Sec. Litig.*, 913 F.Supp. 1362, 1368 (N.D. Cal. 1995) .....................10

*In re New Motor Vehicles Canadian Export Antitrust Litig.*, MDL. No. 1532, 2010
    U.S. Dist. LEXIS 37955 (D. Me. April 16, 2010) .........................................................4, 5

*In re Paoli R.R. Yard PCB Litig.*, 221 F.3d 449 (3d Cir. 2000) ..................................................3

*In re Two Appeals Arising Out of the San Juan Dupont Plaza Hotel Fire Litig.*,
    994 F.2d 956 (1st Cir. 1993) ...............................................................................................4

*Irwin Seating Co. v. IBM*, No. 1: 04-CV-568, 2008 U.S. Dist. LEXIS 33760 (W.D.
    Mich. Apr. 24, 2008) .........................................................................................................11

*Ishida Co., Ltd. v. Taylor*, No. C-02-01617-JF (PVT),  2004 U.S. Dist. LEXIS
    24480 (N.D. Cal. Nov. 29, 2004) ......................................................................................11

*Kellogg Brown & Root Int'l, Inc. v. Altanmia Comm. Mktng. Co.,* No. H-07-2684,
    2009 WL 1457632 (S.D. Tex. May 26, 2009) ..........................................................................10

*Klayman v. Freedom's Watch, Inc.*, No. 07-22433-CIV, 2008 WL 5111293 (S.D.
    Fla. Dec. 4, 2008) ......................................................................................................................9

*McDonnell v. Am. Leduc Petroleums,Ltd.*,
    456 F.2d 1170 (2d Cir. 1972) ....................................................................................................4

*Monsanto Co. v. Bayer Cropscience, N.V.*, No. 4: 00CV01915-ERW, 2007 U.S.
    Dist. LEXIS 27156 (E.D. Mo. Apr. 12, 2007) ........................................................................11

*Perma Life Mufflers, Inc. v. Int'l Parts Corp.*, 392 U.S. 134 (1968) ..........................................5

*Pierson v. Ford Motor Co.*, No. 06-6503 PJH, 2010 U.S. Dist. LEXIS 14661 (N.D.
    Cal. Feb. 2, 2010) ....................................................................................................................11

*Race Tires America, Inc. v. Hoosier Racing Tire Corp.*, No. 2: 07-cv-1294, 2011
    WL 1748620 (W.D. Pa. May 6, 2011) ......................................................................................9

*Romero v. City of Pomona*, 883 F.2d 1418 (9th Cir. 1989) ..........................................................5

*Shum v. Intel Corp.*, 682 F. Supp. 2d 992 (N.D. Cal. 2009) ..........................................................6

*Stanley v. Univ. of Southern Cal.*, 178 F.3d 1069 (9th Cir. 1999) ................................................5

*Terry v. Allstate Ins. Co.*, 2007 U.S. Dist. LEXIS 81051 (E.D. Cal. Oct. 31, 2007) ....................6

*U.S. Plywood Corp. v. General Plywood Corp.*,
    370 F.2d 500 (6th Cir. 1966) ....................................................................................................4

*Voice Stream PCS LLC v. Hillsboro*, No. 03-365-MO, 2004 U.S. Dist. LEXIS 7320
    (D. Or. April 13, 2004) .............................................................................................................9

*White & White, Inc. v. Am. Hosp. Supply Corp.*,
    786 F.2d 728 (6th Cir. 1986) ................................................................................................4, 5

*Windy City Innovations, LLC v. AOL*, No. 04 C 4240, 2006 U.S. Dist. LEXIS
    56671 (N.D. Ill. July 31, 2006) .................................................................................................9

*Zuill v. Shanahan*, 80 F.3d 1366 (9th Cir. 1996) ..........................................................................9

**STATUTES**

199 F.R.D. 425 (2001) ....................................................................................................................2

28 U.S.C. § 1407 .............................................................................................................................2

28 U.S.C. § 1920 ........................................................................................................2, 6, 7, 10, 11, 12

28 U.S.C. § 1920(4) ..............................................................................................................6, 7, 8, 9

Federal Rule of Civil Procedure 54(d)(1) ..............................................................................1, 7, 8

Federal Rule of Civil Procedure Rule 54(d) ..................................................................................6

**OTHER AUTHORITIES**

10 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE (3d ed. 2007) ¶ 54.103........................3, 7

# NOTICE OF MOTION

TO: ALL PARTIES AND THEIR ATTORNEYS OF RECORD

**PLEASE TAKE NOTICE** that on August 10, 2011, at 9:00 a.m., or as soon thereafter as counsel may be heard, before the Honorable Phyllis J. Hamilton, United States District Court Judge, in Courtroom 3 of the above-captioned Court located at 1301 Clay Street, Oakland, California 94612, plaintiffs Daniel Kaffer, Jason Lawton, Alan Levy, Justin Meadows, Rosemary Pierson and Rebecca Silverman (the "Blockbuster Subscriber Plaintiffs") will and hereby do move pursuant to Rule 54(d)(1) of the Federal Rules of Civil Procedure for the District Court to review the clerk's taxation of costs (Jun. 27, 2011, ECF No. 436), and to deny and/or reduce the taxing of any costs to the Blockbuster Subscriber Plaintiffs. This Motion is based on this Notice of Motion and Motion, the incorporated Memorandum of Points and Authorities, and the Declaration of William R. Schiefelbein and exhibits thereto, Plaintiffs' Objection to Defendant Netflix's Bill of Costs Regarding the Blockbuster Subscriber Actions and the Declarations of Gregory Baker and Robert G. Abrams in support thereof, all other pleadings and papers on file in this action, and any other submissions or argument of counsel as may be presented to the Court.

# MEMORANDUM IN SUPPORT

## I. INTRODUCTION

The Blockbuster Subscriber Plaintiffs move under Federal Rule of Civil Procedure 54(d)(1) for the Court to review the Clerk's Taxation of Costs (Jun. 27, 2011, EFC No. 436), which taxes $791,171.18 of claimed costs. The Blockbuster Subscriber Plaintiffs request that the Court exercise its considerable discretion to refrain from taxing any costs. First, the actions brought by the Blockbuster Subscriber Plaintiffs came down to a "close and difficult" question, which renders taxation of any costs inappropriate as a matter of law and public policy. Second, it is legally impermissible to tax costs to the Blockbuster Subscriber Plaintiffs where Netflix concedes it cannot demonstrate that any of the claimed costs were necessary for those actions, as opposed to the separate actions brought by Netflix subscribers (actions which remain pending before this Court).

Even if the Court entertains taxation of some costs, a review is required of Netflix's Bill of Costs. Netflix improperly included many thousands of dollars for items that are outside the narrow categories of taxable costs permitted by 28 U.S.C. § 1920. In particular, Netflix improperly demands over $750,000 in fees for exemplification. In fact, the inclusion by Netflix of so many different types of untaxable items is pervasive enough to justify denial of all costs. Assuming *arguendo* that some of the fees for exemplification qualify as taxable costs, those fees are not taxable here because they fail to meet the strict legal requirement that exemplification costs must be reasonable. In this regard, the Blockbuster Subscriber Plaintiffs offer the Declaration of William Schiefelbein, an independent expert in the field of electronic discovery, who explains that the third-party fees Netflix says it paid, and which Netflix is now seeking to shift to the Blockbuster Subscriber Plaintiffs, are exorbitant and far above market rates for the work allegedly performed.

The Clerk's taxation of costs should be vacated.

## II.     PROCEDURAL BACKGROUND

The first action filed in *In re: Online DVD Rental Antitrust Litigation* (MDL No. 2029) was *Andrea Resnick et al. v. Walmart.com USA LLC, et al.*, 4:09-cv-0002-PJH, filed on January 2, 2009. In the ensuing weeks, approximately fifty more actions were filed, all alleging similar facts and claims, and all brought on behalf of Netflix subscribers (the "Netflix Subscriber actions"). The United States Judicial Panel on Multidistrict Litigation centralized twelve of these actions in April 2009 for consolidated pretrial proceedings pursuant to 28 U.S.C. § 1407.[1] (Apr. 13, 2009, ECF No. 1.)) The remaining forty-three actions identified at that time were ordered to be treated as potential tag-along actions pursuant to Rules 7.4 and 7.5, R.P.J.P.M.L., 199 F.R.D. 425, 435-36 (2001). On April 27, 2009, this Court ordered twenty-five related cases pending before it—also all brought on behalf of Netflix

---

[1] These actions were: *Andrea Resnick, et al. v Walmart.com USA LLC, et al.*, C.A. No. 3:09-2; *Michael O'Connor v. Walmart.com USA LLC, et al.*, C.A. No. 3:09-96; *Sarah Endzweig v. Walmart.com USA LLC, et al.*, C.A. No. 3:09-111; *Christopher P. Schmitz v. Walmart.com USA LLC, et al.*, C.A. No. 3:09-116; *Scott Lynch, et al. v. Walmart.com USA LLC, et al.*, C.A. No. 3:09-138; *Jonathan Groce, et al. v. Netflix, Inc., et al.*, C.A. No. 3:09-139; *Liza Sivek v. Walmart.com USA LLC, et al.*, C.A. No. 3:09-156; *Armond Faris v. Netflix, Inc., et al.*, C.A. No. 3:09-180; *Suzanne Slobodin v. Netflix, Inc., et al.*, C.A. No. 3:09-225, *Katherine M. Anthony, et al. v. Walmart.com USA LLC, et al.*, C.A. No. 3:09-236; and *Melanie Polk-Stamps v. Netflix, Inc., et al.*, C.A. No. 3:09-244.

subscribers—to be centralized for consolidated and coordinated pretrial proceedings pursuant to 28 U.S.C. § 1407.  (Apr. 27, 2009, ECF No. 5).

In May 2009, two lawsuits were brought against defendants Netflix and Wal-Mart by six subscribers to Blockbuster's online DVD rental service (the "Blockbuster Subscriber actions").[2]  By that time, Netflix was already actively defending the Netflix Subscriber actions.  The Court ordered that the two Blockbuster Subscriber actions be related to MDL No. 2029 by order entered June 5, 2009.

Neither the JPML nor this Court ever ordered the Blockbuster Subscriber actions centralized, consolidated or coordinated with the Netflix Subscriber actions for purposes of discovery or pretrial proceedings.  With regard to discovery, no case management order in the Blockbuster Subscriber actions (nor the Netflix Subscriber actions) ever served to govern, or establish, any protocol or agreed to procedures on electronically-stored information ("ESI").  If anything, the discovery of ESI was marked by disagreement with Netflix.  (*See* Decl. of Greg Baker Ex. 1 (correspondence with counsel for Netflix reflecting lack of agreement on keyword searching of databases for document production).)[3]

## III.  STANDARD OF REVIEW

The Clerk's taxation of costs is reviewed by the District Court *de novo*.  *In re Paoli R.R. Yard PCB Litigation*, 221 F.3d 449, 461 (3d Cir. 2000) (citing 10 Moore's Federal Practice, § 54.100[3], at 54-145).  *See also Asis Internet Servs. v. Optin Global, Inc.*, No. C-05-5124 JCS, 2008 U.S. Dist. LEXIS 103932, at *8 (N.D. Cal. Dec. 17, 2008).

## IV.  ARGUMENT

### A.  The Clerk's Taxation of Costs Should Be Vacated Because The Blockbuster Subscriber Action Was "Close And Difficult"

The Blockbuster Subscriber actions turned on the close and difficult question of antitrust standing for "umbrella" plaintiffs.  Through consideration and re-consideration on two separate motions to dismiss and followed by early summary judgment, the novel issue of antitrust umbrella standing was one

---

[2] *Pierson v. Walmart.com USA LLC, et al.*, and M:09-CV-2163-PJH and *Levy, et al. v. Walmart.com USA LLC, et al.*, M:09-CV-2296-PJH.

[3] The Declaration of Gregory Baker was submitted in connection with Plaintiffs' Objection to Netflix's Bill of Costs (May 27, 2011, ECF Nos. 409 and 409-1).

which the Court stated it "struggled" to balance. Ultimately, Netflix prevailed at summary judgment on the dispositive legal question. Given the close and difficult question on which Netflix prevailed, the Court should exercise its discretion and vacate the Clerk's taxation of costs to the Blockbuster Subscriber Plaintiffs.

Where issues are close and difficult, courts regularly exercise their discretion to deny the prevailing party taxation of any costs. *See Ass'n of Mexican-Am. Educators v. Cal.*, 231 F.3d 572, 592-93 (9th Cir. 2000).[4] As Judge Hornby recently explained in vacating the taxation of over $261,000 in costs against consumer plaintiffs in a complex antitrust class action, "the closeness of a case is judged not by whether one party clearly prevails over another, but by the refinement of perception required to recognize, sift through and organize relevant evidence, and by the difficulty of discerning the law of the case." *In re New Motor Vehicles Canadian Export Antitrust Litig.*, MDL. No. 1532, 2010 U.S. Dist. LEXIS 37955, *16 (D. Me. April 16, 2010) (quoting *White & White, Inc v. Am. Hosp. Supply Corp.*, 786 F.2d 728, 732-33 (6th Cir. 1986)).

Here, it was difficult to discern and apply the law on the question of umbrella standing. The Court first granted the motion to dismiss the Blockbuster Subscriber action for lack of antitrust standing. The Court then reconsidered,[5] and on a second motion to dismiss, cautiously sustained the complaint and denied the motion to dismiss.[6] The Court acknowledged the difficult and close nature of the question, stating it has "struggled, these past many weeks, to arrive at a ready answer to this question." Order Denying Mtn To Dismiss Second Am. Compl. p. 8. The Court further acknowledged the legal

---

[4] *See also B. Fernandez & Hnos, Inc. v. Kellogg USA, Inc.*, 516 F.3d 18, 28 (1st Cir. 2008) (holding that when a case presents "a close question that require[s] considered balancing," the district court is well within its broad discretion to deny costs to the prevailing party) (citing *In re Two Appeals Arising Out of the San Juan Dupont Plaza Hotel Fire Litig.*, 994 F.2d 956, 963 (1st Cir. 1993) and *White & White, Inc.*, 786 F.2d at 730 (explaining that where a case proves "close and difficult" the district court may properly deny costs))); *U.S. Plywood Corp. v. Gen. Plywood Corp.*, 370 F.2d 500, 508 (6th Cir. 1966) (finding the district court did not abuse its discretion by requiring each party to pay its own costs in a "close and difficult case"); *McDonnell v. Am. Leduc Petroleums, Ltd.*, 456 F.2d 1170, 1188 (2d Cir. 1972) (affirming the district court's decision that "[i]n view of the necessarily complex and protracted nature of the present litigation, it is the opinion of the Court that costs should not be taxed against any party").

[5] Order Granting Mot. for Reconsideration, Jan. 29, 2010, ECF No. 112

[6] Order Denying Mot. to Dismiss, Jul. 6, 2010, ECF No. 168

issue was not only difficult, but novel, recognizing that there was "no case law directly on point." Order Granting Mtn For Summary Judgment, Dkt. No. 376, pp. 5-6.

The Court ultimately decided this legal question in favor of Netflix. The discrete legal issue regarding standing for the Blockbuster Subscriber Plaintiffs' umbrella claim was the sole, dispositive issue in the Court's decision. (*Id*. at pg. 15 ("Ultimately, however, what both parties seek is a judgment as a matter of law that their particular legal interpretation of what are common facts is correct.").)

The complexity of the antitrust standing issue exemplifies "the refinement of perception required" on the part of the Court to "discern[ ] the law of the case." *In re New Motor Vehicles*, 2010 U.S. Dist. LEXIS 37955 at *16. Consequently, the Blockbuster Subscriber Plaintiffs' umbrella antitrust action is precisely the kind of "close and difficult" case where costs should not be taxed. The Court is well within its discretion to vacate the Clerk's taxation of costs.[7]

**B.    No Costs Can Be Taxed Because Netflix Failed To Meet Its Burden To Demonstrate Why Its Costs Were Necessary To The Blockbuster Action and Failed To Demonstrate Its Costs Are Not Only Taxable But Reasonable**

**1.    Legal Standard**

The United States Supreme Court "strictly limit[s] reimbursable costs to those enumerated in section 1920," and, therefore, "a district court may not rely on its 'equity power' to tax costs beyond those expressly authorized by section 1920." *Romero v. City of Pomona*, 883 F.2d 1418, 1428 (9th Cir. 1989) (overruled in part on unrelated grounds) (*citing Crawford Fitting Company v. J.T. Gibbons, Inc.*, 482 U.S. 437 (1987)). The Court may exercise "discretionary authority under Federal Rule of Civil

---

[7] The Court also has discretion to deny any award of costs to Netflix because of the nature of this action—a putative class action by a small number of consumers attempting to stand up against powerful corporations for alleged violations of the antitrust laws. *See Stanley v. Univ. of Southern Cal.*, 178 F.3d 1069, 1079 (9th Cir. 1999) (finding the district court abused its discretion by taxing costs against plaintiffs without first considering the "chilling effect" on future litigants). In the antitrust context, in particular, courts give great weight to the potential chilling effect on effective private enforcement of antitrust laws if costs are awarded to prevailing parties against small businesses or consumers. *See White & White*, 786 F.2d at 731 ("Awarding costs to the prevailing defendant could have a chilling effect on small businesses, for they may be dissuaded from bringing complex and expensive antitrust actions if they risk payment of substantial trial costs for defeat"); *Cf. Perma Life Mufflers, Inc. v. Int'l Parts Corp.*, 392 U.S. 134, 139 (1968) (overruled in part on unrelated grounds) ("The purpose of the antitrust laws are best served by insuring that the private action will be an ever-present threat to deter anyone contemplating business behavior in violation of the antitrust laws."). Awarding hundreds of thousands of dollars in claimed costs may discourage future private litigants from seeking to vindicate their rights and the rights of others even where, as here, counsel agrees to be responsible for costs.

Procedure Rule 54(d) to refuse to tax costs in favor of a prevailing party." *Id.* (citing *Crawford Fitting Co.*, 482 U.S. at 442).[8]

The Court should look first to whether the expenses are allowable cost items, and then to whether the amounts are reasonable and necessary. The Court may not award costs unless the expenses to be taxed were expended for materials or services "necessarily obtained for use in the case" and in an amount that is reasonable. 28 U.S.C. § 1920; *Competitive Techs. v. Fujitsu Ltd.*, No. C-02-1673 JCS, 2006 U.S. Dist. LEXIS 98312, at *22-24 (N.D. Cal. Aug. 23, 2006).

"The prevailing party bears the burden of stating its costs with the requisite specificity, and the prevailing party necessarily assumes the risks inherent in a failure to meet that burden." *Terry v. Allstate Ins. Co.*, No. Civ. S-05-2261 RRB DAD, 2007 U.S. Dist. LEXIS 81051, at *3-4 (E.D. Cal. Oct. 31, 2007); *see Shum v. Intel Corp.*, 682 F. Supp. 2d 992, 1001 (N.D. Cal. 2009) ("the burden is on [the prevailing party] to demonstrate that the taxation of costs is appropriate").

**2.    Costs Cannot Be Taxed Because Netflix Does Not Even Attempt To Meet Its Burden Of Demonstrating Which Of Its Costs Were Necessary To The Blockbuster Subscriber Action**

Netflix claims it incurred over $2 million in total costs for "exemplification" and costs "of making copies" for the Blockbuster Subscriber actions and the Netflix Subscriber actions *combined*. (*See* Suppl. Decl. of Anthony Weibell In Support of Netflix's Bill of Costs, ¶ 5.) It seeks taxation under 28 U.S.C. § 1920(4), which Netflix acknowledges acts to limit taxation for exemplification costs only to copies that "are necessarily obtained for use in the case". (Netflix's Bill of Costs at pg. 2.) But Netflix

---

[8]    Section 1920 reads as follows:

"A judge or clerk of any court of the United States may tax as costs the following:

(1) Fees of the clerk and marshal;

(2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;

(3) Fees and disbursements for printing and witnesses;

(4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;

(5) Docket fees under section 1923 of this title;

(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title."

concedes that it has not determined what costs out of the over $2 million they say they spent for copies were "necessary" for use in the Blockbuster Subscriber action. (*See* Declaration of Anthony Weibell In Support Of Netflix's Bill of Costs, ¶ 4.) Without demonstrating something of substance on what copying was "necessary" to the Blockbuster Subscriber action, Netflix fails to satisfy section 1920(4).

Even where a cost falls within a § 1920 category, it must also be shown to be reasonable, necessary and adequately documented. *See Fruit Belt Canning Co. v. Heinemann's Inc.*, No. 05 C 4359, 2006 U.S. Dist. LEXIS 35902, at *7 (N.D. Ill. May 17, 2006). Furthermore, costs that are "necessary" are only those that fall into the narrowly-defined concept employed by Rule 54(d)(1). That is, "costs" refers only to those particular expenses "incident to the judgment *in that action*." 10 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE (3d ed. 2007) ¶ 54.103 (emphasis added).

Netflix admits it failed to apportion costs to the Blockbuster Subscriber actions as opposed to the Netflix Subscriber actions. So instead, Netflix claims to have "approximated" in order to "fairly" attribute $792,361.35 to the Blockbuster Subscriber action. (Netflix's Bill of Costs at pg. 2.) But the allegedly "fair" method Netflix used is an arbitrary, after the fact, 50-50 split of Netflix's claimed "exemplification" fees: "[C]osts to produce disclosure or formal discovery documents are listed on the bill of costs at 50% of the actual invoice amount." (Weibell Decl. at ¶ 4.) As a matter of law under Rule 54(d)(1) and 28 U.S.C. § 1920(4), it is impermissible to tax costs to the Blockbuster Subscriber actions where Netflix concedes it cannot demonstrate that the costs were *necessary* to the Blockbuster Subscriber actions (as opposed to the Netflix Subscriber actions).

Moreover, even assuming any costs should be taxed, the nature of the Blockbuster Subscriber actions demonstrates that, at most, they could have contributed only a minor, incremental amount to the copying/exemplification costs Netflix seeks. By the time the Blockbuster Subscriber Plaintiffs filed their "umbrella" actions in May 2009, Netflix was already defending approximately 50 actions that had previously been brought by its own subscribers (the Netflix Subscriber Plaintiffs). Unlike the Netflix Subscriber Plaintiffs, the Blockbuster Subscriber Plaintiffs never brought a motion for class certification, and Netflix provided no discovery regarding the certification of a Blockbuster subscriber class. The only meaningful additional discovery (if there was any at all) that was required to litigate the

Blockbuster Subscriber action came from Blockbuster, not Netflix, and so those costs were borne by Blockbuster, not Netflix.[9]

With regard to *In re: Online DVD Rental Antitrust Litigation* (MDL No. 2029), Plaintiffs ultimately served three sets of Requests for Production on Netflix, on July 22, 2009, August 27, 2010, and September 17, 2010. (*See* Weibell Supplemental Decl. ISO Bill of Costs, Ex. 1.) Most of what Netflix claims in its Bill of Costs are connected to these discovery requests. The requests were captioned as relating to "ALL ACTIONS" in MDL 2029. (*Id*.) But while the two Blockbuster Subscriber actions were related by Court order to MDL No. 2029, neither the JPML nor this Court centralized the Blockbuster Subscriber actions for consolidated or coordinated pretrial proceedings with the Netflix Subscriber actions. Furthermore, none of the discovery requests pertained to the novel legal issue unique to resolving the two Blockbuster Subscriber actions. Instead, the focus of those document requests was the existence of a market allocation agreement, the definition of the relevant market, Netflix's market/monopoly power in that market, etc. (*Id.*)

Netflix fails to satisfy its burden under Rule 54(d)(1) and 28 U.S.C. § 1920(4) because it makes no showing that any of its costs were "necessarily obtained" in the Blockbuster Subscriber action. The taxation of costs should be vacated.

### 3. Netflix's Claimed Exemplification And Copying Costs Are Not Taxable; To The Extent They Are Deemed To Be Taxable They Must Nevertheless Be Excluded Because They Are Unreasonably High

#### a. Fees paid to e-discovery consultants are not taxable

Netflix seeks an award of $745,536.84 for exemplification fees and copy costs. But Netflix offers no support for its claimed exemplification costs other than invoices from a third-party vendor named "Esquire" attached to the Bill of Costs. The Esquire invoices provide little additional help and include charges for "PRODUCTION SERVICES," "PROJECT MANAGEMENT TIME," "DATA SERVICES," "FILTERING," and "EDD PROCESSING." Netflix failed to offer testimony from any affiant from Esquire with personal knowledge who can explain and justify these hundreds of thousands

---

[9] The Blockbuster Subscribers sought to establish how Blockbuster's prices were influenced by supracompetitive prices charged by Netflix.

of dollars in claimed costs to "reproduce" documents.[10] But from the invoices it is nevertheless apparent that hundreds of thousands of dollars of claimed exemplification costs are not taxable.

"The definition of exemplification is not broad." *Comm. Concerning Cmty. Improvement v. City of Modesto*, No. CV-F-04-6121 LJO DLB, 2007 U.S. Dist. LEXIS 94328, at *11 (E.D. Cal. Dec. 11, 2007). "The Ninth Circuit has construed Section 1920(4) in a relatively narrow fashion." *Voice Stream PCS LLC v. Hillsboro*, No. 03-365-MO, 2004 U.S. Dist. LEXIS 7320, at *4 (D. Or. April 13, 2004). It limits recoverable exemplification fees to those "for the physical preparation and duplication of documents." *Zuill v. Shanahan*, 80 F.3d 1366, 1371 (9th Cir. 1996).

Electronic data systems that assist counsel by providing functionalities beyond simple reproduction of documents are not taxable costs. *See Gabriel Techs. Corp. v. Qualcomm, Inc.*, No. 08 CV 1992 MMA (POR), 2010 U.S. Dist. LEXIS 98229, at *35 (S.D. Cal. Sept. 20, 2010) (holding a party cannot expect to recover cost of e-discovery consultants); *Windy City Innovations, LLC v. AOL*, No. 04 C 4240, 2006 U.S. Dist. LEXIS 56671, at *9-10 (N.D. Ill. July 31, 2006) (finding commercial litigation database providing document coding and keyword searching not taxable).

Critically, where courts have taxed electronic discovery costs, they have done so where the parties had themselves agreed to detailed e-discovery protocols in advance, and where the court had ordered such protocols to be followed. *See, e.g., Race Tires America, Inc. v. Hoosier Racing Tire Corp.*, No. 2: 07-cv-1294, 2011 WL 1748620 (W.D. Pa. May 6, 2011). No such prior agreement occurred here. Quite the opposite, Plaintiffs and Netflix disagreed over e-discovery protocols. (Baker Decl. Ex. 1.)

What occurred here more closely resembles *Klayman v. Freedom's Watch, Inc.*, No. 07-22433-CIV, 2008 WL 5111293 (S.D. Fla. Dec. 4, 2008), where the defendants attempted to bill costs for work performed by an outside consultant to collect electronic documents for production in discovery to plaintiffs. According to the court, "[D]efendants hired experts at a huge hourly cost to search for and retrieve discoverable electronic documents," which "[i]n a non-electronic document case … would be

---

[10] Netflix mass-labeled its cost entries with one of two ambiguous descriptions that leave Plaintiffs and this Court in the dark. Netflix provides one of two descriptions for each of its claimed reproduction costs: either (1) "Reproducing disclosure or formal discovery documents" or (2) "Reproducing exhibits to depositions and/or discovery." No other explanation or justification is provided.

performed by paralegals and associate attorneys and would not be compensable as costs under 28 U.S.C. § 1920." *Id* at *2. *See also Kellogg Brown & Root Int'l, Inc. v. Altanmia Comm. Mktng. Co.,* No. H-07-2684, 2009 WL 1457632, at *5 (S.D. Tex. May 26, 2009) (denying claim for electronic discovery costs because where the vendor extracts electronic data for possible use in discovery is more akin to work of an attorney or legal assistant in locating and segregating documents that may be responsive to discovery than to copying those documents for use in the case).

The intellectual effort that Netflix and its attorneys apparently outsourced to a third-party vendor to locate and segregate documents for responding to discovery does not qualify as a recoverable "cost."

      **b.**      **Even A Theoretically Taxable e-Discovery Cost For "TIFFing" Is Not Taxable Here Because Netflix Chose To Pay An Exorbitant, Above-Market Rate**

Even if a cost falls within the narrow categories in section 1920, the amount to be taxed must be reasonable. Traditionally, for example, photocopying charges have been judged unreasonable if they exceed ten or fifteen cents per page. Courts must take care not to "award for excessive copies, excessive costs per page, or copying of documents not reasonably related to the litigation." *In re Media Vision Tech. Sec. Litig.*, 913 F.Supp. 1362, 1368 (N.D. Cal. 1995).[11]

Here, Netflix's vendor, Esquire, put electronic documents into "TIFF" format, the standard format used in electronic discovery for producing documents. Even assuming the costs for this work are taxable, the amount Esquire charged was exorbitant, not reasonable. Based on his review of Esquire invoices, plaintiffs' expert concludes that the TIFF costs Netflix seeks are hundreds of thousands of dollars above any reasonable amount. As supported by the Declaration of William Schiefelbein filed herewith, the TIFFing costs claimed by Netflix are far above prevailing industry norms, approximately *triple* the market price. To the extent any of the TIFF-related costs are taxed, they must be reduced to reasonable cost levels.

---

[11] Costs must not only be necessary and adequately documented, but they must also be reasonable. *See Gordon v. Adams,* No. 3:08-v-00200-LRH-RAM, 2010 U.S. Dist. LEXIS 69391, at *1 (D. Nev. June 18, 2010); *Fruit Belt Canning Co.*, 2006 U.S. Dist. LEXIS 35902, at *7.

### 4. Taxed Costs Outside Those Permitted By 28 U.S.C. § 1920 Must Be Excluded

Expedited deposition transcripts (*see, e.g., Irwin Seating Co. v. IBM*, No. 1: 04-CV-568, 2008 U.S. Dist. LEXIS 33760, at *11-13 (W.D. Mich. Apr. 24, 2008), LiveNote fees (*see, e.g., See Ishida Co., Ltd. v. Taylor*, No. C-02-01617-JF (PVT), 2004 U.S. Dist. LEXIS 24480, at *5 (N.D. Cal. Nov. 29, 2004), RealTime fees (*id.*), rough deposition transcripts (*Monsanto Co. v. Bayer Cropscience, N.V.*, No. 4: 00CV01915-ERW, 2007 U.S. Dist. LEXIS 27156, at *9-10 (E.D. Mo. Apr. 12, 2007), and OCR charges (*see, e.g., Computer Cache Coherency Corp. v. Intel Corp.*, No. C-05-01766 RMW, 2009 U.S. Dist. LEXIS 122596, at *3-6 (N.D. Cal. Dec. 18, 2009) are never taxable. Yet each of these categories of costs was erroneously included in the Clerk's taxation. Likewise, videotaped depositions taxed by the Clerk are not taxable where the transcript cost has already been taxed. *See, e.g., Pierson v. Ford Motor Co.*, No. 06-6503 PJH, 2010 U.S. Dist. LEXIS 14661, at *9-10 (N.D. Cal. Feb. 2, 2010) (holding both transcript and videotaping of deposition not taxable as only one method is allowed).[12]

### 5. The Copy Costs Lacking Any Documentation Or Information As To Their Reasonableness Or Necessity Must Be Excluded

In its bill of costs, Netflix requests reimbursement made for copies made by its counsel, Wilson Sonsini Goodrich & Rosati ("Wilson Sonsini") in its offices. (Weibell Decl. ISO Netflix's Bill of Costs, at ¶ 5.) All that is provided is a date, a dollar amount, and an unsupported recitation that Mr. Weibell "understand[s] [them] to be the reproduction of exhibits to depositions or the reproduction of disclosure or formal discovery documents." (*Id.*) Without an invoice, a representation regarding the number of pages copied or the amount charged per page, there is no way for this Court to determine if the copies for which Netflix seeks reimbursement were made for a permissible purpose or at a reasonable rate.

Otherwise-taxable costs are to be denied where the prevailing party fails to provide sufficient documentation to establish that the costs incurred were reasonable and in fact necessary to the case at

---

[12] The following costs are all outside the scope of section 1920 and therefore may not be taxed: Expedited deposition transcripts ($4,024.70); LiveNote (LEF File) fees ($600.00); Videotaped depositions where transcripts are already taxed ($10,652.50); RealTime fees ($1,574.60); Rough deposition transcripts ($1,449.88); Appearance fees ($800.00); Hearing transcripts ($361.17); Optical character recognition ("OCR") charges ($26,175.65).

hand. *Competitive Techs. v. Fujitsu Ltd.*, 2006 U.S. Dist. LEXIS 98312, at *23-24 (burden on party seeking reimbursement for costs to prove that the reproductions "were necessarily obtained for use in the case rather than for convenience of cousel"); *Chemetall GmgH v. ZR Energy, Inc.*, No. 99 C 4334, 2001 U.S. Dist. LEXIS 23716, at *102-03 (N.D. Ill. Sept. 14, 2001) (same). Merely reciting, as Netflix does, that the costs were "necessarily incurred" is insufficient to meet the stringent requirements of Section 1920. *Ferreira v. M/V CCNI Antofagasta*, No. 2: 04-cv-1916-MCE-DAD, 2007 U.S. Dist. LEXIS 76767, at *6 (E.D. Cal. Oct. 15, 2007). Netflix's supporting documentation on the photocopying charges does not permit the Court to properly determine if the costs submitted were necessary to the case or rather incurred for the convenience of counsel. Nor does it permit the Court to evaluate the reasonableness of the price charged per copy. The costs cannot be taxed as a result.

**V. CONCLUSION**

For the foregoing reasons, Plaintiffs' motion for review by the District Court of the Clerk's bill of costs should be GRANTED and the bill of costs submitted by Netflix should be denied in its entirety.

DATED: July 5, 2011

Respectfully submitted,

BY: /s/ Robert G. Abrams
Robert G. Abrams (*pro hac vice*)

Gregory L. Baker (*pro hac vice*)
**BAKER & HOSTETLER LLP**
Washington Square, Suite 1100
1050 Connecticut Avenue, NW
Washington, DC 20036-5304
Telephone: (202) 861-1699
Facsimile: (202) 861-1783
Email: rabrams@bakerlaw.com
gbaker@bakerlaw.com

*Lead Counsel and Member of the Steering Committee for Plaintiffs in MDL No. 2029*

Guido Saveri (22349)
R. Alexander Saveri (173102)
Lisa Saveri (112043)
David Sims (248181)
**SAVERI & SAVERI, INC.**
706 Sansome Street
San Francisco, CA 94111
Telephone: (415) 217-6810
Facsimile: (415) 217-6813
Email: guido@saveri.com
　　　　rick@saveri.com
　　　　lisa@saveri.com
　　　　dsims@saveri.com

*Liaison Counsel and Member of the Steering Committee for Plaintiffs in MDL No. 2029*

Joseph J. Tabacco, Jr. (75484)
Christopher T. Heffelfinger (118058)
Todd A. Seaver (271067)
Matthew W. Ruan (264409)
**BERMAN DEVALERIO**
One California Street, Suite 900
San Francisco, CA 94111
Telephone: (415) 433-3200
Facsimile: (415) 433-6382
Email: jtabacco@bermandevalerio.com
　　　　cheffelfinger@bermandevalerio.com
　　　　tseaver@bermandevalerio.com


Eugene A. Spector
Jeffrey J. Corrigan
William G. Caldes
Theodore M. Lieverman
Jay S. Cohen
Jonathan M. Jagher
**SPECTOR ROSEMAN KODROFF & WILLIS, P.C.**
1818 Market Street, Suite 2500
Philadelphia, PA 19103
Telephone: (215) 496-0300
Facsimile: (215) 496-6611
Email: espector@srkw-law.com
　　　　jcorrigan@srkw-law.com
　　　　bcaldes@srkw-law.com
　　　　tlieverman@srkw-law.com
　　　　jcohen@srkw-law.com
　　　　jjagher@srkw-law.com

|   |   |
|---|---|
| 1 | H. Laddie Montague, Jr.<br>Merrill G. Davidoff<br>David F. Sorensen<br>Sarah R. Schalman-Bergen<br>**BERGER & MONTAGUE, P.C.**<br>1622 Locust Street<br>Philadelphia, PA 19103<br>Telephone: (215) 875-3010<br>Facsimile: (215) 875-4604<br>Email: hlmontague@bm.net<br>　　　　mdavidoff@bm.net<br>　　　　dsorensen@bm.net<br>　　　　sschalman-bergen@bm.net |

*Members of the Steering Committee for Plaintiffs in MDL No. 2029*