1 | Robert G. Abrams (*pro hac vice*)
Gregory L. Baker (*pro hac vice*)
2 | Baker & Hostetler LLP
Washington Square, Suite 1100
3 | 1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5304
4 | Telephone: (202) 861-1699
Facsimile: (202) 861-1783
5 | Email: rabrams@bakerlaw.com
       gbaker@bakerlaw.com
6 |
*Lead Plaintiff Class Counsel in MDL*
7 | *No.2029*

8 | Guido Saveri  (22349)
R. Alexander Saveri  (173102)
9 | Lisa Saveri  (112043)
Melissa Shapiro (242724)
10 | David Sims (248181)
SAVERI & SAVERI, INC.
11 | 706 Sansome Street
San Francisco, CA 94111
12 | Telephone: (415) 217-6810
Facsimile: (415) 217-6813
13 | Email: guido@saveri.com
       rick@saveri.com
14 |       lisa@saveri.com
       melissa@saveri.com
15 |
*Liaison Plaintiff Counsel in MDL*
16 | *No.2029*

17 | **UNITED STATES DISTRICT COURT**

18 | **NORTHERN DISTRICT OF CALIFORNIA**

19 | **OAKLAND DIVISION**

| **IN RE ONLINE DVD RENTAL ANTITRUST LITIGATION** | **Master File No. 4:09-md-2029 PJH** <br><br> **MDL No. 2029** <br><br> **Hon. Phyllis J. Hamilton** |
|---|---|
| This document relates to: <br><br> **ALL ACTIONS** | **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT WITH WAL-MART DEFENDANTS AND CERTIFICATION OF A CLASS FOR PURPOSES OF SETTLEMENT; AND MEMORANDUM IN SUPPORT THEREOF** <br><br> Date: August 24, 2011 <br> Time: 9:00 a.m. <br> Courtroom: 3 |

# **TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................ 2

II. FACTUAL AND PROCEDURAL BACKGROUND ......................................... 3

  A. PLAINTIFFS' CLAIMS ................................................................................ 3

  B. PROCEDURAL HISTORY ........................................................................... 4

    1. Settlement Negotiations ............................................................................ 5

      a) The Initial Wal-Mart Settlement ........................................................ 5

      b) The New Wal-Mart Settlement .......................................................... 6

    2. Terms of the New Settlement .................................................................... 7

      a) Settlement Class .................................................................................. 7

  C. PROPOSED NOTICE AND CLAIMS PLAN ................................................ 8

  D. RELATIONSHIP TO CALIFORNIA STATE ACTIONS ............................... 10

III. LEGAL ARGUMENT ...................................................................................... 10

  A. THE SETTLEMENT SHOULD BE PRELIMINARILY APPROVED ............... 10

    1. The Proposed Settlement Was the Product of Informed, Non-Collusive Negotiations11

    2. The Proposed Settlement Falls Well Within The Range of Possible Approval ......... 13

    3. The Proposed Settlement Has No Obvious Deficiencies And Does Not Present Any Grounds To Doubts Its Fairness ................................................................. 15

      a) The Settlement Does Not Improperly Grant Preferential Treatment to Segments of the Class ............................................................................ 15

      a) The Proposed Incentive Awards to Class Representatives Are Reasonable.. 15

  B. THE COURT SHOULD CERTIFY THE NETFLIX CLASS FOR PURPOSES OF SETTLEMENT ............................................................................................. 15

  C. THE COURT SHOULD APPROVE THE PROPOSED FORM AND METHOD OF CLASS NOTICE ........................................................................................... 16

    1. The Proposed Class Notice Provides for the Best Notice Practicable Under the Circumstances ............................................................................................. 16

    2. The Proposed Form Of Class Notice Adequately Informs Class Members Of Their Rights In This Litigation ............................................................................. 18

IV. CONCLUSION ................................................................................................. 19

# **TABLE OF AUTHORITIES**

## **FEDERAL CASES**

*Browning v. Yahoo! Inc.*,
    No. C04-01463 HRL, 2006 WL 3826714 (N.D. Cal. Dec. 27, 2006) ............................ 8

*Browning v. Yahoo! Inc.*,
    No. C04-01463-HRL, 2007 WL 4105971 (N.D. Cal. Nov. 16, 2007) ........................... 8

*Carson v. Am. Brands, Inc.*,
    450 U.S. 79 (1981) .......................................................................................... 13

*Churchill Village, L.L.C. v. General Elec.*,
    361 F.3d 566 (9th Cir. 2004) ........................................................................... 11

*DeBoer v. Mellon Mortgage Co.*,
    64 F.3d 1171 (8th Cir. 1995) ........................................................................... 16

*Farinella v. PayPal ,Inc.*,
    611 F. Supp. 2d 250 (E.D.N.Y. 2009) .............................................................. 8

*Glass v. UBS Financial Servs., Inc.*,
    2007 WL 221862 (N.D. Cal. 2007) ................................................................... 15

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1988) ......................................................................... 10

*In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*,
    MDL No. 901, 1992 WL 226321 (C.D. Cal. June 10, 1992) ................................. 12

*In re Medical X-Ray Film Antitrust Litig.*,
    1997 U.S. Dist. LEXIS 21936 (E.D.N.Y. Dec. 10, 1997) ..................................... 11

*In re Mego Financial Corp. Sec. Litig.*,
    213 F.3d 454 (9th Cir. 2000) ........................................................................... 15

*In re Tableware Antitrust Litig.*,
    484 F. Supp. 2d 1078 (N.D. Cal. 2007) ...................................................... 2, 10, 11

*In re The Prudential Insurance Company of America Sales Practices Litig.*,
    177 F.R.D. 216 (D.N.J. 1997) ..................................................................... 17, 18

*In re Toys "R" Us Antitrust Litig.*,
    191 F.R.D. 347 (E.D.N.Y. 2000) .................................................................. 11, 12

*In re Vitamins Antitrust Litig.*,
    2001 WL 856292 (D.D.C. Jul. 25, 2001) ....................................................... 11, 15

*In re Wireless Telephone Federal Cost Recovery Fees Litig.*,
    No. 4:03-MD-015, 2004 WL 3671053 (W.D. Mo. April 20, 2004) ........................ 16

*Lucas v. Kmart Corp.*,
    234 F.R.D. 688 (D. Colo. 2006) ....................................................................... 14

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT WITH WAL-MART
DEFENDANTS AND CERTIFICATION OF A CLASS FOR PURPOSES OF SETTLEMENT; Case No. 4:09-md-2029 PJH

ii

*Lundell v. Dell, Inc.*,
    No. C05-3970, 2006 WL 3507938 (N.D. Cal. Dec. 5, 2006) ........................................ 8

*Mullane v. Central Hanover Bank & Trust Co.*,
    339 U.S. 306 (1950) ..................................................................................................... 16

*Officers for Justice v. Civil Service Comm'n of the City and County of San Francisco*,
    688 F.2d 615 (9th Cir. 1982) ...................................................................................... 13

*Palamara v. Kings Family Restaurants*,
    No. 07-cv-317, 2008 WL 1818453 (W.D. Pa. Apr. 22, 2008) ................................... 14

*Rankin v. Rots*,
    No. 02-71045, 2006 WL 1876538 (E.D. Mich. June 27, 2006)................................. 13

*Reed v. General Motors Corp.*,
    703 F.2d 170 (5th Cir. 1983) ...................................................................................... 12

*Silber v. Mabon*,
    18 F.3d 1449 (9th Cir. 1994) ...................................................................................... 16

*Texas Indus. v. Radcliff Materials, Inc.*,
    451 U.S. 630 (1981) ..................................................................................................... 13

*Todd v. Retail Concepts, Inc.*,
    2008 WL 3981593 (M.D. Tenn. Aug. 22, 2008) ...................................................... 18

*Van Bronkhorst v. Safeco Corp.*,
    529 F.2d 943 (9th Cir. 1976) ...................................................................................... 11

*Vasquez v. Coast Valley Roofing, Inc.*,
    670 F. Supp. 2d 1114 (E.D. Cal. 2009)................................................................. 2, 10

*Wellman v. Dickinson*,
    497 F. Supp. 824 (S.D.N.Y. 1980) ............................................................................ 11

*Young v. Polo Retail, LLC*,
    No. C-02-4546-VRW, 2007 WL 951821 (N.D. Cal. Mar. 28, 2007) ........................ 14

**STATE CASES**

*Chavez v. Netflix, Inc.*,
    162 Cal. App.4th 43; 75 Cal. Rptr.3d 413 (2008) ....................................................... 8

**FEDERAL STATUTES**

28 U.S.C. § 1407 ..................................................................................................................... 4

**FEDERAL RULES**

Fed. R. Civ. P. 23 .............................................................................................................. passim

R.P.J.P.M.L. 7.4, 199 F.R.D. 425 (2001)................................................................................ 4

R.P.J.P.M.L. 7.5, 199 F.R.D. 425 (2001)................................................................................ 4

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT WITH WAL-MART DEFENDANTS AND CERTIFICATION OF A CLASS FOR PURPOSES OF SETTLEMENT; Case No. 4:09-md-2029 PJH

iii

1 | **OTHER AUTHORITIES**

2 | *Manual for Complex Litig.* (Fourth) §13.14 ..................................................................... 4, 10

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## NOTICE OF MOTION AND MOTION

2  TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

3      PLEASE TAKE NOTICE that on August 24, 2011, at 9:00 a.m., or as soon thereafter as

4  counsel can be heard, before the Honorable Phyllis J. Hamilton, United States District Judge, at the

5  United States District Courthouse, 1301 Clay Street, Courtroom 3, 3rd Floor, Oakland, California

6  94612, Plaintiffs ("Plaintiffs" or "Class Representatives"), will move this Court for an Order: (i)

7  granting preliminary approval of the settlement agreement Plaintiffs have executed with Defendants

8  Wal-Mart Stores, Inc. and Walmart.com USA LLC (collectively, "Wal-Mart") for $27,250,000 (cash

9  and gift cards); (ii) certifying the Settlement Class for purposes of settlement; (iii) approving a joint

10  notice of the Court's prior order approving a litigation class and the proposed order approving the

11  partial settlement with Wal-Mart; and (iv) establishing a time table for relevant dates.

12      This motion is based upon this Notice of Motion and Motion, the following Memorandum of

13  points and Authorities, the Declaration of Guido Saveri ("Saveri Decl."), all exhibits attached thereto,

14  the Declaration of Shannon R. Wheatman, Ph.D. on Adequacy of Notice Plan ("Wheatman Decl.") and

15  such other written or oral arguments that may be presented to the Court.  The Proposed Order is

16  attached as Exhibit A to the Saveri Decl.  The Settlement Agreement is attached as Exhibit B to the

17  Saveri Decl.

18
19
20
21
22
23
24
25
26
27
28

1 | **MEMORANDUM OF POINTS AND AUTHORITIES**

2 | **I.    INTRODUCTION**

3 |     Plaintiffs have achieved a settlement of these actions with the Wal-Mart Defendants.  Wal-Mart

4 | has agreed to pay $27,250,000 in cash and cash equivalents.  *See* Settlement Agreement, dated July 1,

5 | 2011 (the "Agreement," Ex. B, Saveri Decl.).  Class members will receive gift cards for the purchase

6 | of any products sold by Wal-Mart.com or cash, at the class member's election.  As further detailed in

7 | the Agreement, Wal-Mart has agreed to pay the costs of providing class notice and administering

8 | claims, reasonable attorneys' fees, reasonable costs incurred by Plaintiffs' counsel to date (that Class

9 | Counsel estimate at up to $1.7 million), and incentive awards for the representative plaintiffs.  These

10 | attorneys' fees, notice and administration costs, attorneys' costs and incentive awards are to be

11 | deducted from the $27,250,000, with the remainder to be divided by the Class members who make

12 | claims on a per capita basis.  The Agreement is the product of many hours of arm's length negotiations

13 | between counsel for Wal-Mart and Plaintiffs, including Independent Settlement Counsel Craig Corbitt,

14 | who was not involved in negotiation of the prior settlement agreement negotiated in 2010.

15 |     The Court should grant preliminary approval of the Settlement because it satisfies the standards

16 | for preliminary approval – it is within the range of possible approval to justify sending and publishing

17 | notice of the settlement to class members and scheduling final approval proceedings.  *See In re*

18 | *Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007); *Vasquez v. Coast Valley*

19 | *Roofing, Inc.*, 670 F. Supp. 2d 1114, 1124-25 (E.D. Cal. 2009); *Manual for Complex Litig.* (Fourth)

20 | §13.14 at 173 ("First, the judge reviews the proposal preliminarily to determine whether it is sufficient

21 | to warrant public notice and a hearing.  If so, the final decision on approval is made after the

22 | hearing.").

23 |     Plaintiffs ask the Court to certify a settlement class pursuant to Fed. R. Civ. P. 23, for

24 | settlement purposes only, defined as follows:

25 |

26 |

27 |

28 |

1  Any person or entity residing in the United States or Puerto Rico that paid a subscription
   fee to rent DVDs online from Netflix on or after May 19, 2005, up to and including the
2  date the Court grants preliminary approval of the settlement.

3  Agreement ¶ 5.1 (the "Settlement Class").[1]  The Agreement, if finally approved, would resolve all

4  claims against Wal-Mart in this MDL proceeding and in the actions in California State Court.[2]

5       In the event the Court grants preliminary approval of the settlement with Wal-Mart, Plaintiffs

6  would seek Court approval of a single, combined notice for both the Settlement with Wal-Mart, and

7  certification of the litigation class against Netflix.  Such combined notice would be far more efficient,

8  cost-effective and less confusing than two rounds of notice (*i.e.*, one now for the Wal-Mart Settlement,

9  and another later for a litigation class against Netflix), particularly given the large size of the class at

10 issue.  This procedure was followed in *In re Dynamic Random Memory (DRAM) Antitrust Litigation.*

11 *See* "Order Approving Joint Notice to Class Regarding Class Certification and Preliminary Approval

12 of Class Action Settlements with Samsung, Infineon and Hynix Defendants", *In Re Dynamic Random*

13 *Access Memory (DRAM) Antitrust Litigation*, Master File No. M-0201486-PJH (July 27, 2006 N.D.

14 Cal.) (Ex. F, Saveri Decl.).  All of Plaintiffs' requests are unopposed by Wal-Mart.

15 **II.    FACTUAL AND PROCEDURAL BACKGROUND**

16      **A.   PLAINTIFFS' CLAIMS**

17      Plaintiffs allege that, on or before May 19, 2005, Defendants Wal-Mart and Netflix conspired

18 and entered into an illegal anticompetitive agreement (the "Market Allocation Agreement") to divide

19 the markets for sales and online rentals of DVDs in the United States, with the purpose and effect of

20 monopolizing and unreasonably restraining trade in the market for online DVD rentals (the "Online

21 DVD Rental Market").  Plaintiffs allege that Defendants' agreement and conduct resulted in

22 overcharges to Netflix subscribers.  Plaintiffs assert four causes of action: 1) a claim for unlawful

23 market allocation of the online DVD rental market, pursuant to section 1 of the Sherman Act (against

24 both Netflix and Wal-Mart); 2) a claim for monopolization of the online DVD rental market pursuant

25

26

_____

27 [1] Members of the settlement class will be referred to, collectively, as "Settlement Class Members."

28 [2] *See* Agreement ¶ 15.1 (setting forth terms of release).

1   to section 2 of the Sherman Act (against Netflix only); 3) a claim for attempted monopolization of the

2   online DVD rental market pursuant to section 2 of the Sherman Act (against Netflix only); and 4) a

3   claim for conspiracy to monopolize the online DVD rental market pursuant to section 2 of the Sherman

4   Act (against both Netflix and Wal-Mart).  Defendants deny these allegations.

5          The representative plaintiffs for the Netflix Class are Bryan Eastman, Amy Latham, Melanie

6   Misciosia Salvi, Stan Magee, Michael Orozco, Andrea Resnick, Liza Sivek, Michael Weiner, and Scott

7   Caldwell (the "Netflix Plaintiffs").

8          **B.    PROCEDURAL HISTORY**

9          The first action filed in *In re: Online DVD Rental Antitrust Litigation* (MDL No. 2029) was

10  *Andrea Resnick et al. v. Walmart.com USA LLC, et al.*, 4:09-cv-0002-PJH, filed on January 2, 2009.

11  In the ensuing weeks, approximately fifty more actions were filed, all alleging similar facts and claims,

12  and all brought on behalf of Netflix subscribers (the "Netflix Subscriber actions"). The United States

13  Judicial Panel on Multidistrict Litigation centralized twelve of these actions in April 2009 for

14  consolidated pretrial proceedings pursuant to 28 U.S.C. § 1407.  The remaining forty-three actions

15  identified at that time were ordered to be treated as potential tag-along actions pursuant to Rules 7.4

16  and 7.5, R.P.J.P.M.L., 199 F.R.D. 425, 435-36 (2001).[3]  In late April of 2009, this Court ordered

17  twenty-five (25) related cases pending before it—also all brought on behalf of Netflix subscribers—to

18  be centralized for consolidated and coordinated pretrial proceedings pursuant to 28 U.S.C. § 1407.

19         Subsequently, Plaintiffs successfully rebuffed defendants' motion to dismiss (in the

20  Blockbuster action) and discovery commenced shortly thereafter. The discovery conducted was

21  extensive and thorough.  Over 1.5 million documents were produced and reviewed by Plaintiffs'

22  counsel.  More than 50 fact and expert depositions were taken or defended, including defendants'

23

---

24  [3] These actions were: *Andrea Resnick, et al. v Walmart.com USA LLC, et al.*, C.A. No. 3:09-2; *Michael

25  O'Connor v. Walmart.com USA LLC, et al.*, C.A. No. 3:09-96; *Sarah Endzweig v. Walmart.com USA LLC, et al.*, C.A. No. 3:09-111; *Christopher P. Schmitz v. Walmart.com USA LLC, et al.*, C.A. No.

26  3:09-116; *Scott Lynch, et al. v. Walmart.com USA LLC, et al.*, C.A. No. 3:09-138; *Jonathan Groce, et al. v. Netflix, Inc., et al.*, C.A. No. 3:09-139; *Liza Sivek v. Walmart.com USA LLC, et al.*, C.A. No.

27  3:09-156; *Armond Faris v. Netflix, Inc., et al.*, C.A. No. 3:09-180; *Suzanne Slobodin v. Netflix, Inc., et al.*, C.A. No. 3:09-225, *Katherine M. Anthony, et al. v. Walmart.com USA LLC, et al.*, C.A. No. 3:09-

28  236; and *Melanie Polk-Stamps v. Netflix, Inc., et al.*, C.A. No. 3:09-244.

1  depositions of 14 named Plaintiffs (including the Blockbuster Plaintiffs).  In March 2010, Plaintiffs

2  filed their motion for Class Certification in this action.

3      **1.**      **Settlement Negotiations**

4            **a)**     **The Initial Wal-Mart Settlement**

5      In the spring of 2010, Wal-Mart's counsel and Plaintiffs' lead counsel initiated settlement

6  discussions.  In May of 2010, they participated in a mediation led by Hon.(ret.) Layne Phillips, a

7  former U.S. District Court Judge.  In that mediation the parties reached the outlines of a possible

8  agreement, but months of continued negotiations were necessary to reach a term sheet of an agreement

9  in August 2010.  A settlement agreement was finalized in December 2010 and filed with the Court for

10  preliminary approval.  The action as to Wal-Mart was stayed.  This initial Wal-Mart settlement

11  provided for cash and Wal-Mart gift card compensation in a minimum amount of $29 million.[4]

12  Significantly, that settlement was reached on behalf of two subclasses, Netflix subscribers and

13  Blockbuster subscribers.  The apportionment as proposed was weighted in favor of the Netflix

14  Subclass.  *See* Ex. D, Saveri Decl. (Affidavit of the Honorable Layn R. Phillips ("Phillips Aff.")).

15      Shortly following the filing of Plaintiffs' motion for preliminary approval of the initial Wal-

16  Mart settlement, the Court granted Plaintiffs pending motion against sole remaining defendant Netflix

17  and certified a litigation class of Netflix subscribers ("Netflix Litigation Class") for the period May 19,

18  2005 through December 23, 2010.  Subsequently on January 26, 2011, Plaintiffs moved for an order

19  narrowing the Netflix Litigation Class period to a September 30, 2010 end date. (*See* Dkt. 320;

20  Proposed Order Dkt. 323).  Netflix did not oppose this administrative motion (Dkt. 326) which awaits

21  the Court's approval.

22      Netflix contested aspects of the initial settlement, arguing *inter alia*, that both Wal-Mart

23  Settlement counsel and Plaintiffs' counsel had conflicts.  Indeed, Netflix used the very execution of the

---

26  [4] Among other provisions, this agreement provided that if there was an overwhelming number of
claims filed by the sub-class members the amount of the settlement, to be available in Wal-Mart gift

27  cards, could increase to as much as $40 million.  Given historic participation by class members in large
consumer class actions, it was the view of Plaintiffs' counsel that such circumstances were unlikely to

28  occur.

1  Wal-Mart Settlement as a basis to unsuccessfully argue that the previously certified Netflix Litigation

2  Class should be decertified.  The Court heard argument on this motion on March 9, 2011 and denied

3  Netflix's motion to decertify.  The Court also ruled from the bench that it would deny without

4  prejudice, Plaintiffs' preliminary motion for approval of the initial settlement.  The Court specifically

5  expressed concerns with regard to the inclusion in the settlement of the Blockbuster subscribers and

6  the plan of allocation, among other aspects of the settlement. The Court indicated that it would

7  entertain a revised agreement if one were reached but encouraged Plaintiffs' counsel to take steps to

8  ensure that whatever new agreement was reached was the product of unquestioned arm's-length

9  negotiations free of any potential conflict.

10           **b)     The New Wal-Mart Settlement**

11         Wal-Mart and Plaintiffs took to heart the words of the Court as they set about to see if a new

12  settlement could be reached on terms that would be acceptable to the parties and which ameliorated the

13  concerns expressed by the Court in rejecting the initial settlement.  Among the steps Plaintiffs' counsel

14  undertook was to associate new counsel who had not previously been involved in the litigation.

15  Specifically, Craig Corbitt of the San Francisco office of Zelle Hofmann Voelbel & Mason LLP agreed

16  to lead the negotiations as Independent Settlement Counsel.  Mr. Corbitt had a client, Mr. Scott

17  Caldwell, who was a Netflix subscriber during the proposed settlement Class period.  In addition,

18  Joseph Tabacco of the Berman DeValerio firm, who was not personally involved in the preliminary

19  negotiations in the initial settlement, agreed at the request of Lead Plaintiffs' Counsel Robert Abrams

20  to become more involved in any subsequent negotiations with Wal-Mart.

21         Following preliminary discussions, counsel arranged an all day, face-to-face meeting with

22  Plaintiffs' negotiating team led by Mr. Corbitt, assisted by Mr. Tabacco, and with Wal-Mart's new

23  outside counsel, Lawrence C. Dinardo of the Jones Day firm, Wal-Mart's litigation counsel Neal

24  Manne and Richard Hess of the Susman Godfrey firm, and in-house counsel for Wal-Mart, Mr. Ross

25  Higman.  Accordingly, in late March of this year, Messrs. Corbitt and Tabacco, accompanied by Lead

26  Counsel Robert Abrams, traveled to Houston and met with the above Wal-Mart team.  In a negotiating

27  session that lasted for several hours, the parties were able to reach an agreement in principal to settle

28

1  the case as to Wal-Mart on new terms.  Utilizing the agreement reached at that meeting, the Settlement

2  Agreement now before the Court was finalized in early July.

3      **2.      Terms of the New Settlement**

4          **a)      Settlement Class**

5      The new settlement reached has substantial changes from the previously presented Wal-Mart

6  settlement.  Specifically, and perhaps most significantly, the proposed settlement class is only on

7  behalf of Netflix subscribers.  Blockbuster subscribers are not included in this settlement.  The

8  Agreement proposes a Settlement Class for settlement purposes only, defined as:

9          Any person or entity residing in the United States or Puerto Rico that paid a
           subscription fee to rent DVDs online from Netflix on or after May 19, 2005, up to and
10         including the date the Court grants preliminary approval to the settlement.

11     Other important terms that differ from the earlier settlement are that the settlement amount is

12  fixed at $27,250,000.  Unlike the earlier settlement, the total to be paid in cash and gift card

13  compensation by Wal-Mart will be fixed and is not dependent on the number of claims filed by

14  settlement class members.  Thus the settlement will have complete transparency to settlement class

15  members.  Because there is no participation by Blockbuster subscribers, there is no plan of allocation

16  or division of the settlement proceeds, nor is there any need for the Court to certify settlement

17  subclasses.

18     The Settlement provides that Wal-Mart will fund a "Class Settlement Amount" of $27,250,000.

19  Of this amount, cash will be used to reasonable litigation expenses, which class counsel estimate will

20  not exceed $1.7 million.  In addition, cash from the Class Settlement Amount will be used to pay any

21  incentive awards to named class representatives as the Court determines, up to $80,000.  The Class

22  Settlement Amount will also fund the costs of notice and claims administration.  Plaintiffs' counsel

23  intend to apply for attorneys' fees of 25% of the settlement fund or approximately $6,812,500.  The

24  total cash for the above items will be subtracted from the $27,250,000 settlement.  The net amount

25  remaining will then be available for distribution to eligible class claimants.

26     The distribution to the Settlement class claimants will be on a per capita basis.  That is, each

27  subscriber is entitled to submit one claim for each separate subscription regardless of the length of the

28  subscription and without regard to the particular Netflix monthly subscription program, (*i.e.*, 2 out or 4

1  out).  Class members will be encouraged to submit their claims on line.  It is hoped that the vast

2  majority of eligible class claimants will submit claims electronically, to minimize expense and

3  maximize the amount of the Class Settlement Amount available to be awarded.  Unless a class

4  claimant opts to receive cash in the form of a check, eligible claimants will receive an electronic

5  Walmart.com gift card which is valid at Walmart.com.  If a class claimant elects to receive cash, he/she

6  may submit a claim form by regular mail requesting payment by check.

7      The above are the essential terms of the settlement.  Mr. Corbitt, who without prior affiliation

8  in the case led the negotiations for Plaintiffs, brought a fresh perspective and further insured that the

9  settlement reached was the end product of vigorous, arm's-length negotiation.  Since the issues of

10  allocation are no longer present, Plaintiffs' counsel believe this settlement more than meets the test of

11  fairness, reasonableness, and adequacy, and is worthy of preliminary approval.

12      **C.   PROPOSED NOTICE AND CLAIMS PLAN**

13      Because the Court certified a litigation class to proceed against Netflix, Plaintiffs are seeking

14  approval of a combined form of notice, providing class members with notice both of the Settlement

15  with Wal-Mart, and the certification of a litigation class against Netflix.  Wal-Mart has agreed to this

16  plan.  *See* Agreement ¶ 7.7.

17      Because a form of notice for the Settlement and certification of the Settlement Class is needed,

18  Plaintiffs and Wal-Mart have agreed on the proposed form of such notice.  The proposed joint form of

19  direct, e-mailed notice is attached to the Agreement as Exhibit 1 thereto (Ex. B, Saveri Decl.)[5]; and the

20  _____

21  [5] This Court has found that e-mail notice is particularly suitable where, as here, the Settlement Class
    Members' claims arise from their visits to Defendants' websites.  *See Browning v. Yahoo! Inc.*, No.

22  C04-01463-HRL, 2007 WL 4105971, at *4 (N.D. Cal. Nov. 16, 2007) (citing *Lundell v. Dell, Inc.*, No.
    C05-3970, 2006 WL 3507938, at *1 (N.D. Cal. Dec. 5, 2006) (approving notice by e-mail)); *Browning*

23  *v. Yahoo! Inc.*, No. C04-01463 HRL, 2006 WL 3826714, at *8-*9 (N.D. Cal. Dec. 27, 2006)
    (approving an "extensive, multifaceted, and innovative" plan of email notification of a class action

24  settlement as "particularly suitable in this case, where Settlement Class Members' allegations arise
    from their visits to Defendants' Internet websites, demonstrating that the Settlement Class Members

25  are familiar and comfortable with email and the Internet.").  *See also Chavez v. Netflix, Inc.*, 162 Cal.
    App.4th 43, 58; 75 Cal. Rptr.3d 413, 427 (2008) (approving email notice to Netflix subscriber class

26  with long form notice posted on a website as a "sensible and efficient way of providing notice," and
    noting that "[t]he class members conducted business with defendant over the Internet, and can be

27  assumed to know how to navigate between the summary notice and the Web site."); *Farinella v.
    PayPal ,Inc.*, 611 F. Supp. 2d 250, 256 (E.D.N.Y. 2009) (e-mail notice sent to more than 2.2 million

28  PayPal users).

1  proposed joint form of published notice is attached to the Agreement as Exhibit 2 thereto.  The notice

2  explains, *inter alia,* how Settlement Class Members may submit a "Claim Form" to obtain a share of

3  the Settlement.[6]

4       The parties have selected a qualified settlement administrator, Rust Consulting ("Rust"), to

5  administer the Settlement and notice program.  Rust's assignment includes, but is not limited to: (i)

6  disseminating the notice of the Settlement to class members; (ii) receiving exclusion requests and

7  processing class members' claims; (iii) responding to class member inquiries; (iv) issuing settlement

8  checks to claimants; and (v) conducting other activities relating to class notice and settlement

9  administration under the parties' supervision.

10      Plaintiffs have also retained Shannon Wheatman, Ph.D., of Kinsella Media, an expert on class

11  notice, to develop a notice plan that meets the requirements of due process and to assist in the

12  formulation of the notice content.  As set forth in her Declaration, Dr. Wheatman crafted a notice

13  program designed to reach at least 83.11% percent of Settlement Class Members.   Wheatman Decl., ¶¶

14  12, 33, 54.  The notice program consists of:

15      1.  Direct E-mail Notice ("Summary Notice") to be sent to all Settlement Class Members,

16          estimated to be approximately 40 million people;

17      2.  Publication of the Summary Notice in nationally circulated magazines such as *Newsweek*,

18          *People* and *TV Guide* and placement in Spanish in five newspapers in Puerto Rico (*El*

19          *Nuevo Dia, El Vocero, La Semana, Primera Hora,* and *Puerto Rico Daily Sun*);

20      3.  Internet based notice through banner ads posted on Facebook.com;

21      4.  A press release that will be distributed on PR Newswire's US1 Newsline, reaching almost

22          5,000 print and broadcast outlets, as well as more than 5,000 online media outlets;

23      5.  An informational website (www.onlineDVDclass.com), which will provide Class Members

24          with information on the Settlement, including access to the Settlement Agreement, the Long

25          Form Notice, and Claim Form;

26

27  _____

28  [6] The proposed Claim Form for the Settlement Class is attached to the Agreement as Exhibit 4.

NOTICE OF MOTION AND  MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT WITH WAL-MART
DEFENDANTS AND CERTIFICATION OF A CLASS FOR PURPOSES OF SETTLEMENT; Case No. 4:09-md-2029 PJH

6. Sponsored links on the results page of keyword/phrase searches on the Google, Yahoo!, and Bing search engine pages;

7. A post office box through which Class Members can contact Class Counsel by mail with any specific requests or questions; and

8. A toll-free information line that Class Members can call for more information and request copies of the Notice.

Wheatman Decl., ¶¶ 19, 27, 28, 31, 38, 40-43.

The Notice describes the material terms of the proposed Settlement and sets forth the procedures for each class member to receive benefits from the Settlement. Exs. 1, 2, Agreement (Email and Publication Notice); *see also* Exs. 2-4, Wheatman Decl. (Email Notice; Publication Notice and Long-Form Notice). The Notice also describes the procedures for class members to exclude themselves from the Settlement and to provide comments in support of or in objection to the Settlement. *See id.* Any class member who wishes to be excluded from the Settlement can opt-out by making a timely request. The procedures for opting-out are those commonly used in class action settlements and are straightforward and clearly described in the class notice. *See id.*

**D. RELATIONSHIP TO CALIFORNIA STATE ACTIONS**

This Settlement releases all claims which were or could have been asserted against Wal-Mart in the California State Actions. Agreement at ¶ 13.1. Lead Counsel for plaintiffs in the California State Actions have signed the Agreement.

**III. LEGAL ARGUMENT**

**A. THE SETTLEMENT SHOULD BE PRELIMINARILY APPROVED.**

Approval of a proposed class action settlement is a two-step process. The first step is preliminary approval, which requires the court to find that the terms of the proposed settlement fall within the "range of possible approval." *See In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1079; *Vasquez*, 670 F. Supp. 2d at 1125. In deciding on preliminary approval, the court determines whether the proposed settlement warrants consideration by members of the class and a later, full examination by the court at a final approval hearing. *Manual for Complex Litigation (Fourth)* § 13.14 at 173. After notice to the class, preliminary approval is followed, in the second step, by a review of the fairness of

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT WITH WAL-MART DEFENDANTS AND CERTIFICATION OF A CLASS FOR PURPOSES OF SETTLEMENT; Case No. 4:09-md-2029 PJH

10

1 the settlement at final approval, and, if appropriate, a finding that it is "'fair, reasonable and

2 adequate.'" *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1988) (citation omitted).

3 Because preliminary approval is provisional, courts grant preliminary approval where a proposed

4 settlement has no "'obvious deficiencies.'" *See, e.g., In re Vitamins Antitrust Litig.*, 2001 WL 856292,

5 at *4 (D.D.C. Jul. 25, 2001) (citation omitted).

6      It is well-recognized that "[v]oluntary out of court settlement of disputes is 'highly favored in

7 the law' … and approval of class action settlements will be generally left to the sound discretion of the

8 trial judge." *Wellman v. Dickinson*, 497 F. Supp. 824, 830 (S.D.N.Y. 1980) (citations omitted).

9 Indeed, "[i]t hardly seems necessary to point out that there is an overriding public interest in settling

10 and quieting litigation." *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976); *see also*

11 *Churchill Village, L.L.C. v. General Elec.*, 361 F.3d 566, 576 (9th Cir. 2004).

12      The settlement before the Court amply meets the requirements for preliminary approval.  The

13 agreement, negotiated by Plaintiffs and Wal-Mart after extensive negotiations, including the services

14 of an experienced mediator, falls well within the range of possible approval since it meets each of the

15 requirements of substantive and procedural fairness and there are no grounds to doubt its

16 reasonableness.

### 1.      The Proposed Settlement Was the Product of Informed, Non-Collusive Negotiations.

17
18

19      The Court should look to whether the proposed settlement appears to be the product of

20 "serious, informed and non-collusive negotiations." *In re Medical X-Ray Film Antitrust Litig.*, 1997

21 U.S. Dist. LEXIS 21936, at *19 (E.D.N.Y. Dec. 10, 1997).  In applying this factor, courts give

22 substantial weight to the experience of the attorneys who prosecuted the case and negotiated the

23 settlement. *See In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1080.

24      The proposed Settlement was the product of intense and thorough arm's-length negotiations by

25 experienced and informed counsel.  The negotiations occurred over many months and involved

26 telephonic and face-to-face meetings.  In light of the prior settlement, an Independent Settlement

27 Counsel, Craig Corbitt, led the negotiations for this Settlement on behalf of the Class.  Mr. Corbitt had

28 not been involved in the negotiation or approval of the prior settlement and represents only a Netflix

NOTICE OF MOTION AND  MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT WITH WAL-MART
DEFENDANTS AND CERTIFICATION OF A CLASS FOR PURPOSES OF SETTLEMENT; Case No. 4:09-md-2029 PJH

11

1  class member.  Thus, the settlement is the product of non-collusive negotiations.  *See In re Toys "R"*

2  *Us Antitrust Litig.*, 191 F.R.D. 347, 352 (E.D.N.Y. 2000) ("[m]ost significantly, the settlements were

3  reached only after arduous settlement discussions conducted in a good faith, non-collusive manner,

4  over a lengthy period of time, and with the assistance of a highly experienced neutral mediator").

5      Plaintiffs conducted extensive investigations that allowed them to assess the strengths and

6  weaknesses of the case against Wal-Mart.  As detailed above, discovery has spanned several years, and

7  has been very extensive.  In addition, Class Counsel have devoted considerable effort in pursuing

8  many discovery issues into meet and confer procedures, and any issues relating to discovery from

9  Netflix which could not be resolved were litigated before Magistrate Judge Spero.

10      During class certification proceedings, Plaintiffs and Defendants submitted lengthy reports by

11  expert economists.  (Dkt. Nos. 130 & 158).  Both side's experts were deposed.

12      Armed with this knowledge, Class Counsel participated in a mediation session with counsel for

13  Wal-Mart on May 16, 2010 which covered both the Netflix and Blockbuster Classes.  Phillips Aff., ¶ 5,

14  (Ex. D, Saveri Decl.).  As a result of that mediation session and other discussions, Plaintiffs and Wal-

15  Mart reached an agreement in principle to settle the Plaintiffs' and the Class' claims against Wal-Mart.

16  *Id.*  According to Judge Philips, "the settlement between Plaintiffs and Wal-Mart is the product of

17  vigorous and independent advocacy and arm's-length negotiation conducted in good faith." *Id.* at Ex.

18  D, Saveri Decl., ¶ 8.  Judge Philips believed that the terms of the settlement were "fair, adequate,

19  reasonable and in the best interests of the Settlement Classes." *Id.* at Ex. D, Saveri Decl., ¶ 9.

20  However, this Court rejected that settlement, noting its concern about the inclusion of the Blockbuster

21  claims.

22      As described in paragraph II.C, *supra*, Plaintiffs thereafter, utilizing an Independent Settlement

23  Counsel to lead the negotiations, re-negotiated the Wal-Mart settlement agreement to cover only the

24  Netflix Class.

25      Class Counsel and Independent Settlement Counsel's judgment that the Settlement is fair and

26  reasonable is entitled to great weight. *Reed v. General Motors Corp.*, 703 F.2d 170, 175 (5th Cir.

27  1983) ("[T]he value of the assessment of able counsel negotiating at arm's length cannot be

28  gainsaid."); *In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*, MDL No. 901, 1992 WL

NOTICE OF MOTION AND  MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT WITH WAL-MART
DEFENDANTS AND CERTIFICATION OF A CLASS FOR PURPOSES OF SETTLEMENT; Case No. 4:09-md-2029 PJH

12

1  226321, at *2 (C.D. Cal. June 10, 1992) (finding that belief of counsel that the proposed settlement

2  represented the most beneficial result for the class to be a compelling factor in approval of settlement).

3  Indeed, "there is typically an initial presumption of fairness where the class settlement was negotiated

4  at arms' length." *Id.*

5        In light of the risks inherent in this litigation, and the considerable amount Wal-Mart has agreed

6  to pay, the settlement merits preliminary approval. It provides substantial and certain benefits to the

7  Settlement Class Members. Wal-Mart, one of the largest corporations in the world, would vigorously

8  defend itself at trial. The uncertainties of any trial, and the unpredictable delays that would attend

9  waiting for recovery after trial, verdict, and any appeal, all strongly weigh in favor of preliminary

10  approval of the proposed Settlement.

11          **2.**     **The Proposed Settlement Falls Well Within The Range of Possible Approval.**

12

13        The proposed Settlement falls within the range of possible approval. When evaluating the

14  adequacy of a settlement, the court does "not decide the merits of the case or resolve unsettled legal

15  questions." *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981). *See also Officers for Justice v.*

16  *Civil Service Comm'n of the City and County of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982)

17  (same). Nor should a court "substitute its business judgment for that of the parties." *Rankin v. Rots*,

18  No. 02-71045, 2006 WL 1876538, at *3 (E.D. Mich. June 27, 2006).

19        This complex case involves a range of disputed issues, including Plaintiffs' ability to prove an

20  antitrust violation under *per se* or rule of reason analysis and the amount of damages. While Plaintiffs

21  believe that they have very meritorious claims, Wal-Mart has denied, and continues to deny, each and

22  all of the arguments and contentions asserted by Plaintiffs.

23        Significantly, because this is a partial settlement only and because of joint and several liability,

24  all Settlement Class Members will retain their ability to recover their full damages from Netflix,

25  subject perhaps only to a credit for the amount paid by Wal-Mart. *See Texas Indus. v. Radcliff*

26  *Materials, Inc.*, 451 U.S. 630, 646 (1981). Two other features of this case make the ability to continue

27  the litigation against Netflix especially significant. First, while certainly not the size of Wal-Mart,

28  Netflix has become a substantial corporation (due in part to the conduct at issue in this case) with a

1    current stock market valuation of approximately $10 billion.  Thus, even without Wal-Mart, there

2    remains a very deep pocket to pay any judgment.  Second, some of Plaintiffs' claims are brought

3    against only Netflix.

4        Wal-Mart has agreed to pay $ 27,250,000 in cash and gift cards, and to provide certain limited

5    cooperation in the continued litigation against Netflix.  At the Settlement Class Member's election,

6    Settlement Class Members will receive either a cash payment, or a Gift Card (of equal value) to

7    Walmart.com.  The Gift Card provides actual value to class members.  Walmart.com sells a wide

8    variety of products, including clothing, jewelry, electronics, furniture, groceries, health and beauty

9    products, movies, music, books, pharmacy items, sports and fitness equipment, toys, and video games.

10   *See, e.g.,* Walmart.com: All Departments, http://www.walmart.com/cp/All-

11   Departments/121828?fromPageCatId=14503 (last visited on July 13, 2011).  All Settlement Class

12   Members will be able to purchase something of actual value with these Gift Cards.  *See* Fed. R. Civ. P.

13   23(h) advisory committee notes 2003 amendment (providing that a court should ensure that

14   "nonmonetary provisions" in a class settlement result in "actual value to the class.").  Because

15   Settlement Class Members are or were subscribers to online services (Netflix), they are already

16   familiar with online purchases and will be able to utilize the Gift Cards easily and successfully.

17        Significantly, the Gift Card is fully transferable.  Courts have found that the transferability of

18   gift cards is important in determining that a settlement has actual value to the class.  *See, e.g., Young v.*

19   *Polo Retail, LLC*, No. C-02-4546-VRW, 2007 WL 951821, at *4 (N.D. Cal. Mar. 28, 2007) ("More

20   compelling than the availability of alternative items like Polo brand paint or perfume is the

21   transferability of the gift cards; this enables class members to obtain cash - something all class

22   members will find useful."); *Lucas v. Kmart Corp.*, 234 F.R.D. 688, 692-93 (D. Colo. 2006) (granting

23   preliminary approval to class action settlement with portion of settlement in gift cards redeemable at

24   face value); *Palamara v. Kings Family Restaurants*, No. 07-cv-317, 2008 WL 1818453, at *1, *6

25   (W.D. Pa. Apr. 22, 2008) (granting final approval to a settlement that involved vouchers with a retail

26   value of $4.68).

27        In short, the proposed settlement here is well within the range of possible approval, and should

28   be preliminarily approved.

3. **The Proposed Settlement Has No Obvious Deficiencies And Does Not Present Any Grounds To Doubt Its Fairness.**

Additionally, the proposed Settlement should be preliminarily approved because it has no "'obvious deficiencies.'" *See In re Vitamins Antitrust Litig.*, 2001 WL 856292, at *4. As described below, the proposed Settlement does not improperly grant preferential treatment to segments of the class.

a) **The Settlement Does Not Improperly Grant Preferential Treatment to Segments of the Class.**

The relief provided in the Settlement will benefit all Settlement Class Members. They will, as explained in the proposed class notice, share equally in the settlement funds.

b) **The Proposed Incentive Awards to Class Representatives Are Reasonable.**

Additionally, the Agreement does not improperly grant preferential treatment to the Class Representatives. The Agreement provides for reasonable and relatively small service awards to the Class Representatives of $5,000 each, as compensation for their extensive services on behalf of other Settlement Class Members. Here, the Representative Plaintiffs have produced documents, answered interrogatories, and been deposed. The Ninth Circuit and other federal courts have repeatedly approved the award of service payments to class representatives to recognize the time, efforts, and the risks they undertake on behalf of a class. *See, e.g., In re Mego Financial Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000); *Glass v. UBS Financial Servs., Inc.*, 2007 WL 221862, *16-*17 (N.D. Cal. 2007).

B. **THE COURT SHOULD CERTIFY THE NETFLIX CLASS FOR PURPOSES OF SETTLEMENT.**

On December 23, 2010, the Court certified the litigation class. Consequently, all the requirements of Rule 23(a) and of Rule 23(b)(3) for the settlement class have been satisfied.

1   **C.   THE COURT SHOULD APPROVE THE PROPOSED FORM AND METHOD OF CLASS NOTICE.**

2

3   **1.   The Proposed Class Notice Provides for the Best Notice Practicable Under the Circumstances.**

4   Class Notice should be "reasonably calculated, under all the circumstances, to apprise

5   interested parties of the pendency of the action and afford them an opportunity to present their

6   objections." *Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994) (quoting *Mullane v. Central*

7   *Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). "There is no one 'right way' to provide notice

8   as contemplated under Rule 23(e)." *In re Wireless Telephone Federal Cost Recovery Fees Litig.*, No.

9   4:03-MD-015, 2004 WL 3671053, *8-*9 (W.D. Mo. April 20, 2004). "Notice of a settlement proposal

10   need only be as directed by the district court . . . and reasonable enough to satisfy due process."

11   *DeBoer v. Mellon Mortgage Co.*, 64 F.3d 1171, 1176 (8th Cir. 1995). Rule 23(c)(2)(B) requires the

12   "best notice that is practicable under the circumstances."

13   The proposed plan of notice is the best practicable notice in this case under all of the

14   circumstances. Wheatman Decl., ¶¶ 15, 34, 57. Plaintiffs propose that notice of the Settlement be

15   emailed and publicized as set forth by Dr. Wheatman. *See generally* Wheatman Decl. Dr. Wheatman

16   opines, "[t]he *Netflix* case is different then most cases. First, a complete list of Class Members email

17   addresses is available. Second, Netflix is an e-commerce company that communicates with its

18   customers primarily through email. These circumstances make email notification in this case

19   preferable to hard copy mailing." Wheatman Decl., ¶ 52 (sic). The notice program is extensive and is

20   designed to reach at least 83.11 percent of the class members. Wheatman Decl., ¶ 12, 33, 54. The

21   class consists of a group of consumers who regularly and primarily communicate with Netflix via the

22   internet. While Plaintiffs understand the Court's initial inclination (voiced at the settlement hearing

23   held on February 9, 2011) to order email notice to all Class Members followed by U.S. Postal notice

24   ("hard mail notice") to back up all hard email bounce backs, Plaintiffs respectfully request that the

25   Court balance the high cost of hard mail follow-up notice in relation to its modest incremental reach.

26   Based upon the large size of the class (estimated at 40 million individuals), the additional cost

27   to the class of issuing the predicted 10 million hard mail follow-up notices would be approximately

28   $3.16 million. The additional 10 million mailings costing $3.16 million, however, is predicted only to

1    reach another 5.29% of the Class.  *See* Wheatman Decl. ¶ 35; Declaration of Tiffaney A. Janowicz, ¶ 8

2    ("Janowicz Decl.", Ex. E to Saveri. Decl. ).  That extra $3.16 million in expense to the class is

3    attributable primarily to postage expenses.  The cost of the entire notice program would more than

4    triple to reach only an additional 5.29% of the class.  It is important to note that Plaintiffs' proposed

5    notice program comprised of email notice and publication notice is estimated to reach at least 83.11%

6    of the class, much higher than the 75 to 80% reach held to be adequate in numerous similar cases.  *See*

7    Wheatman Decl., ¶ 55.  In short, the issue is whether reaching an extra 5.29% of the Class is worth

8    tripling notice costs to the entire class.  Plaintiffs respectfully argue that the cost significantly

9    outweighs the benefit here.[7]

10        Notice plans are not expected to reach every class member; Rule 23(c)(2) requires the best

11   notice 'practicable,' not perfect notice.  "Due process does not require actual notice, but rather a good

12   faith effort to provide actual notice." *In re The Prudential Insurance Company of America Sales*

13   *Practices Litig.*, 177 F.R.D. 216, 231 (D.N.J. 1997).  Plaintiffs' proposed notice plan comprised of

14   direct email notice supplemented by publication notice with a class member reach of 83.11% is the

15   best practicable method of notice. Wheatman Decl. ¶¶ 15, 34, 57.

16        Providing actual notice to the email addresses of every Class Member, supplemented by a

17   publication plan would significantly benefit the class by reducing the cost of notice, thereby increasing

18   the recovery per claimant.  A notice plan comprised of direct email notice supplemented by publication

19   notice allows the class to enjoy a greater share of the recovery since excessive, unnecessary postage

20   costs will not tax the Settlement.  Moreover, the proposed notice plan is particularly suitable for this

21   case: Netflix is an online service, and each Class Member must have or have had a valid email address

22   to subscribe to Netflix.  Courts have accepted email notice as a proper form of direct individual notice,

23   particularly in internet businesses due to fit and efficiencies.  *See Barker v. Skype*, No. 2:09-cv-01364-

24   RSM, "Order Preliminarily Approving Class Action Settlement", at ¶ 9 (W.D. Wash. Nov. 17, 2009)

25

26   [7] There is an alternative that would allow additional publication notice that would increase the reach of
     the proposed Notice plan to a level comparable to the reach of a plan requiring the Summary Notice to
27   be mailed to any email bounce back.  This would cost approximately an extra $316,000 instead of an
     additional $3.16 million under the email/hard mail notice campaign. *See* Wheatman Decl., ¶ 35 n.6.
28

1  (Ex. G, Saveri Decl.).  In *Barker*, the court ordered that direct notice be disseminated exclusively via

2  email, noting that "due to the unique nature of the User Accounts, which are internet based accounts

3  that are typically not tied to a postal address, mailed notice would not be effective and would

4  unnecessarily deplete potentially available funds, to the detriment of the Settlement Class."  *Id.*  In

5  granting final approval of the settlement in *Barker*, the court stated, "the E-mail Notice provided to

6  Settlement Class Members was the best practicable notice under the circumstances and . . . fully

7  satisfied the requirements of due process, [and] the Federal Rules of Civil Procedure . . ."  *Barker v.*

8  *Skype*, No. 2:09-cv-01364-RSM, "Order on Final Approval of Class Action Settlement, Judgment and

9  Order of Dismissal with Prejudice", at ¶ 9 (W.D. Wash. March 12, 2010).  *See also Todd v. Retail*

10  *Concepts, Inc.*, 2008 WL 3981593 (M.D. Tenn. Aug. 22, 2008) (Ex H, Saveri Decl.).[8]

11        Plaintiffs' proposed notice plan of direct email notice with supplemental publication notice is

12  the "best notice that is practicable" here.  Wheatman Decl., ¶¶ 15, 34, 57.  Plaintiffs respectfully

13  request that the Court accept the proposed notice plan as meeting the requirements of Rule 23(c)(2)(B).

14                  **2.  The Proposed Form Of Class Notice Adequately Informs Class Members Of Their Rights In This Litigation.**

15        Class notice must "clearly and concisely state in plain, easily understood language" the nature

16  of the action; the class definition; the class claims, issues, or defenses; that the class member may

17  appear through counsel; that the court will exclude from the class any member who requests exclusion;

18  the time and manner for requesting exclusion or for raising objections; and the binding effect of a class

19  judgment on class members.  *See* Fed. R. Civ. P. 23(c)(2).  The form of class notice proposed here

20  complies with each of these requirements.  *See* Wheatman Decl., ¶¶ 44-51, Exs. B-2, B-3, B-4;

21  Agreement, Exs. 1, 2).  Thus, the notice informs class members of the material terms of the proposed

22

23

24  [8] Although cost considerations alone may not be a reason to avoid individualized notice, cost

25  considerations play an inherent role in determining what sort of follow up notice is "practicable."  It is common for courts to allow publication notice as back-up to individualized notice.  Cost

26  considerations necessarily affect the design of a publication notice program, which is why 100% coverage is not required.  One could always argue that using one more magazine or newspaper would

27  help reach another class member, but that process has no end, and the law does not require it.  The optimal mix of media and direct notice needs to strike an adequate balance between cost efficiency and

28  reach effectiveness. *See* Wheatman Decl., ¶ 36.

1   Settlement[9]; the relief the proposed Settlement will provide; the date, time and place of the final-

2   approval hearing; the procedures and deadlines for opting out of the Settlement and for submitting

3   comments or objections.  The notice explains that those who do not opt out will be bound by any final

4   judgment in this case, including a release of their claims.  The proposed notice further advises class

5   members that Plaintiffs' counsel will apply to the Court for an award of fees and expenses.  *See id.*

6   The notice is accurate and informs class members of the material terms of the Settlement and their

7   rights pertaining to it.  Plaintiffs respectfully request that the Court approve the proposed forms of

8   notice, and direct that notice be disseminated as proposed by Plaintiffs.

9   **IV.**      **CONCLUSION**

10         For the foregoing reasons, Plaintiffs respectfully submit that the Court should grant preliminary

11   approval to the Settlement, conditionally certify the Settlement Class, and order that notice be sent to

12   the class in the manner described above.

13   Dated: July 15, 2011.                      Respectfully submitted,

14                                               */s/ Robert G. Abrams*

15                                               Robert G. Abrams
                                                 Gregory L. Baker (pro hac vice)

16                                               Baker & Hostetler LLP
                                                 Washington Square, Suite 1100

17                                               1050 Connecticut Avenue, N.W.
                                                 Washington, D.C. 20036-5304

18                                               Tel.: (202) 861-1699
                                                 Fax: (202) 861-1783

19                                               rabrams@bakerlaw.com
                                                 gbaker@bakerlaw.com

20

21                                               ***Lead Class Counsel and Member of the Steering Committee
                                                 for Plaintiffs in MDL No. 2029***

22                                               Guido Saveri

23                                               R. Alexander Saveri
                                                 Lisa Saveri

24                                               Melissa Shapiro
                                                 David Sims

25                                               SAVERI & SAVERI, INC.
                                                 706 Sansome Street

26                                               San Francisco, CA 94111

27   ─────────────────────────
      [9] The notice importantly informs the Class that Settlement is with Wal-Mart and "[a]dditional money

28   may become available in the future as a result of a trial or future settlement with Netflix."

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT WITH WAL-MART
DEFENDANTS AND CERTIFICATION OF A CLASS FOR PURPOSES OF SETTLEMENT; Case No. 4:09-md-2029-PJH

19

Tel.: (415) 217-6810
Fax: (415) 217-6813

***Liaison Class Counsel and Member of the Steering Committee
for Plaintiffs in MDL No. 2029***

Joseph J. Tabacco, Jr.
Christopher T. Heffelfinger
Todd A. Seaver
BERMAN DEVALERIO
425 California Street, Suite 2100
San Francisco, CA 94104
Tel.: (415) 433-3200
Fax: (415) 433-6382

Eugene A. Spector
Jeffrey J. Corrigan
William G. Caldes
Theodore M. Lieverman
Jay S. Cohen
Jonathan M. Jagher
SPECTOR ROSEMAN KODROFF& WILLIS, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA 19103
Tel.: (215) 496-0300
Fax: (215) 496-6611

H. Laddie Montague, Jr.
David F. Sorensen
Sarah R. Schalman-Bergen
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
Tel.: (215) 875-3010
Fax: (215) 875-4604

***Members of the Steering Committee for Plaintiffs
in MDL No. 2029***

Netflix.045

NOTICE OF MOTION AND  MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT WITH WAL-MART
DEFENDANTS AND CERTIFICATION OF A CLASS FOR PURPOSES OF SETTLEMENT; Case No. 4:09-md-2029 PJH

20