JONATHAN M. JACOBSON, State Bar No. 1350495 (N.Y.)
DAVID H. REICHENBERG, State Bar No. 4477477 (N.Y.)
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
1301 Avenue of the Americas, 40th Floor
New York, New York 10019
Tel: (212) 999-5800
Fax: (212) 999-5899
Email: jjacobson@wsgr.com

KEITH E. EGGLETON, State Bar No. 159842
MAURA L. REES, State Bar No. 191698
DYLAN J. LIDDIARD, State Bar No. 203055
ANTHONY J WEIBELL, State Bar No. 238850
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304
Telephone: (650) 493-9300
Fax: (650) 565-5100
Email: dliddiard@wsgr.com

*Attorneys for Defendant Netflix, Inc*.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| IN RE ONLINE DVD RENTAL ANTITRUST LITIGATION<br><br>This document relates to:<br><br>All Actions | Master File No.: 4:09-md-2029 PJH (JCS)<br>MDL No. 2029<br><br>Hon. Phyllis J. Hamilton<br><br>**NETFLIX'S OPPOSITION TO PLAINTIFFS' SECOND MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT WITH WALMART**<br><br>Date: August 24, 2011<br>Time: 9:00 a.m. |

## I. INTRODUCTION

Netflix does not object to the settlement itself. It does, however, object strongly to the manner of effectuating the proposed settlement and notice plan, which in effect, would authorize a massive court sponsored marketing campaign by a Netflix competitor to Netflix's current and former subscribers in a manner that unnecessarily is designed to tarnish Netflix's reputation. Furthermore, Netflix would like to remind the Court that it is hardly surprising that Walmart is motivated to settle with Plaintiffs in exchange for access to Netflix's trade secret customer list and a massive publication plan that targets millions of potential online consumers with an incentivized offer to utilize Walmart's online service. This motivation, and the potential competitive disadvantage it poses for Netflix, is highlighted by the fact that Walmart has renewed aggressively marketing its competing Vudu movie streaming service.

This is Plaintiffs' (and Walmart's) second defective attempt to obtain preliminary approval of their settlement. The prior attempt was rejected by the Court for a number of reasons, including the proposed notice plan. This time around, Plaintiffs again inexplicably attempt to advance the same proposed notice plan as before (no mail notice and massive publication) in utter disregard of the concerns that the Court observed and recognized in denying Plaintiffs' prior request for preliminary settlement approval. The second motion for preliminary approval of the settlement should likewise be denied because the proposed notice plan is fatally deficient.

As the Court has already determined, the properly designed notice plan under the circumstances is to (1) provide e-mail notice to current and former Netflix subscribers, (2) send a hard-copy notice by mail to the members whose e-mails "bounce back" as undeliverable; and (3) limited publication notice to follow, if necessary. This practice is typical in these types of cases, is one that Netflix has done before when it settled a class action, and it limits the reputational harm to Netflix. While this does not prevent the perverse result of Walmart being able, through a court order, to promote its online services directly to Netflix current and former subscribers, it does limit the ability of the only two parties to the settlement (Plaintiffs and Walmart) to damage

1 unfairly Netflix's reputation when Netflix has done nothing wrong. Because the proposed plan
2 fails to address the Court's and Netflix's serious concerns, it should be rejected.

## II. PLAINTIFFS' MOTION SHOULD BE DENIED BECAUSE THE SETTLEMENT FAILS TO COMPLY WITH THE COURT'S PRIOR INSTRUCTIONS CONCERNING NOTICE TO THE CLASS

Plaintiffs' motion for preliminary approval should be denied because Plaintiffs have again failed to address the Court's concerns about providing adequate and proper notice to class members. At the hearing on Plaintiffs' last attempt to obtain preliminary approval of the settlement, the Court agreed with Netflix that to effect class notice, Plaintiffs should first send out email notice to class members, followed by U.S. Mail notice to any class members whose email addresses are found to be inoperative or invalid. *See* ECF No. 438 at 70:8-25. The Court also agreed with Netflix that publication of the notice should be limited and should not become a marketing campaign for Walmart aimed at diverting potential Netflix customers away from Netflix's service. *Id.*

Plaintiffs' "revised" notice plan ignores the Court's previously-expressed concerns, and indeed exacerbates them. The revised notice plan fails to provide for U.S. Mail notice to class members whose email addresses are found to be inoperative or invalid. Instead, Plaintiffs' notice plan takes the unrestrained approach of broad and scattered publication notice in consumer magazines and social websites. As Netflix explained in its objections to the prior notice plan, this plan is defective because Rule 23 requires that all class members be <u>individually</u> notified where practicable. *See* ECF No. 328. Under Rule 23, the "the court must direct to class members the best notice that is practicable under the circumstances, including <u>individual</u> notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B) (emphasis added). "[T]he import of this language is unmistakable. <u>Individual</u> notice must be sent to all class members whose names and addresses may be ascertained through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974) (emphasis added).

Here, Plaintiffs' own expert concedes that because Plaintiffs' proposed notice plan does not include direct mail notice to class members with inoperable email addresses, <u>over 2.1 million</u> class members (about 5.3% of the estimated 40 million class members) will never receive any

notice of the settlement. ECF No. 454-2 ¶ 35. Such a result is unwarranted here, because Plaintiffs will have access to the mailing addresses for any class member whose email address is no longer valid or operable. 1 McLaughlin on Class Actions § 5:80 ("[i]f a list of class members already exists, the fact that mailing the notice is expensive is rarely, if ever, a basis to circumvent Rule 23(c)(2)(B)'s requirement of individual notice.").

Indeed, Plaintiffs' expert has published an article explaining how Plaintiffs can reasonably take the last known addresses from Netflix, update them, and provide direct notice to class members in an effective manner using "'[n]umerous means.'" *See* ECF No. 328 at 4 (citation omitted). Plaintiffs' expert also describes cases in which courts have required the parties to use diligent efforts to locate current addresses using publicly available databases. *See id.* at 5 n.3; *see also Chavez v. Netflix, Inc.*, 162 Cal. App. 4th 43, 48 (2008) ("in the case of former members, [notice would be sent] using the e-mail addresses it had previously used to communicate with the former members. Follow-up mail notice would be sent to those whose e-mail addresses came back as undeliverable."); *Browning v. Yahoo! Inc.*, No. C04-01463, 2006 WL 3826714, at *8 (N.D. Cal. Dec. 27, 2006) ("in the event that an Email Notice sent to a Settlement Class Member is bounced back as undeliverable, the Amended Settlement Agreement provides for notice by standard mail."); *Simon v. Toshiba Am.*, No. C 07-06202, 2010 WL 1757956 (N.D. Cal. Apr. 30, 2010) (approving settlement where notice plan -- as described in motion for preliminary approval -- "requires direct email notice to all class members known and reasonably identified from Toshiba's records. For class members whose email addresses are no longer valid, direct notice will be sent to those individuals by first class mail.") (footnote omitted).

Accordingly, Plaintiffs' proposal -- while minimizing their own out-of-pocket costs -- should be rejected because it does not satisfy the clear and well-established requirements of Rule 23 to provide individual notice where practical. Plaintiffs' notice plan should also be rejected because in substituting broad publication notice for the direct individual mailing notice required by Rule 23, the notice plan will have the unnecessary yet damaging effect of disparaging Netflix in the eyes of all non-class members who see the publication notice. ECF No. 454-2 ¶ 33. This

concern is heightened by the fact that Walmart is now aggressively marketing its Vudu online video rental service which it is motivated to tout as a competing alternative to the Netflix service, including by featuring Vudu on the Walmart.com website, *see* Liddiard Decl. Exs. 1-3. Consequently, potential Netflix customers -- who are not members of the class – should not be misled into believing that that the unproven and unfounded allegations described in the settlement notice that Netflix overcharges its customers are true.[1] Given the great potential for unwarranted harm to Netflix, Plaintiffs' plan to ignore 2.1 million class members by substituting broad publication notice in place of the required individual mailed notice should be rejected.

### III. PLAINTIFFS' MOTION SHOULD BE DENIED BECAUSE THE SETTLEMENT WOULD PERMIT WALMART TO GAIN ACCESS TO NETFLIX'S TRADE SECRET CUSTOMER INFORMATION

Plaintiffs' motion for preliminary approval should also be denied because the proposed settlement would permit Walmart to obtain access to Netflix's trade secret customer names and addresses. Even though the settlement suggests that class members will be providing their names and contact information to a third party claims administrator and not directly to Walmart, class members will only be able to redeem their "gift cards" at walmart.com. *See* ECF No. 454 at 14. Consequently, the settlement gives Walmart the power to obtain Netflix's customer information when those customers enter their names and contact information on the walmart.com website when redeeming their gift cards. The gift cards issued to class members will have redemption codes that will be identifiable to Walmart as ones that were provided to Netflix customers as part of the settlement. It will be trivial for Walmart to compile a list of everyone who redeemed a settlement gift card on Walmart.com, at which point Walmart will have

---

[1] Plaintiffs' proposed notice plan itself reveals the potential harm to Netflix that the massive and unnecessary publication plan will cause. For example, the publication plan provides for a "full-page ad" in TV Guide Magazine and People Magazine even though only 2.2 percent and 9.9 percent, respectively, of the readership of those magazines are Netflix customers. ECF No. 454-2, Ex. B at 19-22. In other words, Plaintiffs and Walmart are attempting to use the proposed settlement between them as a way to expose 98 percent of TV Guide Magazine readers and 90 percent of People Magazine readers who are potential future Netflix customers and not class members to view ads that unjustifiably depict Netflix as a company that overcharges its subscribers. Plaintiffs designed this publication plan to smear Netflix's reputation because Plaintiffs are already estimating that only 5.3 percent of the estimated class members will not receive an email notice. This is simply not acceptable to Netflix.

appropriated Netflix's customer list for its own uses. Walmart could easily use that list to send targeted promotions to Netflix customers promoting its Vudu online DVD rental service and otherwise seek to compete unfairly against Netflix with this information. Netflix keeps its customer list as a proprietary trade secret and considers it to be an extremely valuable asset. There is simply no basis for using the class action procedures of Rule 23 to seize this asset from Netflix and hand it over to Walmart for free. The proposed settlement would confer an unfair and unprecedented competitive advantage on Walmart to market its own streaming video rental business, Vudu, to millions of Netflix customers as a direct result of entering into a settlement with Plaintiffs. *See* Liddiard Decl. Exs. 1-3 (news articles describing Walmart's recent attempts to aggressively market its Vudu video streaming service). In light of the unique circumstances of this case – where the class members are <u>not</u> customers of the settling defendant, but rather customers of a competing, non-settling defendant – the Court should exercise special care to safeguard the confidentiality of Netflix's customer information.[2]

To address the acute confidentiality concerns surrounding Netflix's customer list, the appropriate remedy is for the settlement and any approval thereof: (1) expressly to prohibit Walmart from ever using the names and contact information provided by class members when redeeming their gift cards at walmart.com for any purpose other than fulfillment of the orders placed in that transaction; and (2) certifications under oath from Walmart executives that their systems and databases have be modified to ensure that all information obtained from class members who receive and use the Walmart.com coupon is deleted and will not be used for any marketing or other purposes. Alternatively, gift cards could be made to be redeemable only at Walmart retail stores, and not through online transactions that require customer information to fulfill orders (with a similar caveat that Walmart may not use customer information obtained from the in-store sales, such as via credit card transactions, for any other purpose).

---

[2] If appropriate safeguards are not mandated, Walmart will unfairly gain access to Netflix's highly coveted and targeted mailing list that would cost millions of dollars to purchase in the market if it were available (and it is not).

## IV. PLAINTIFFS' MOTION SHOULD BE DENIED BECAUSE THE SETTLEMENT WOULD PERMIT WALMART TO GAIN AN UNFAIR COMPETITIVE ADVANTAGE IN MARKETING ITS COMPETING VIDEO STREAMING SERVICE TO NETFLIX CUSTOMERS

Plaintiffs' motion for preliminary approval should be denied because the settlement will have the effect of directing tens of millions of Netflix subscribers to the walmart.com website to redeem gift cards -- a website on which Walmart has recently begun to display its competing Vudu video streaming service. *See* Liddiard Decl. Exs. 1-3 (news articles in the past week reporting Walmart has moved its Vudu service to the walmart.com website). The "gift card" provided to Netflix subscribers – subscribers who, under the notice plan would have just been given notice that Netflix has been accused of overcharging them – will be unfairly directed to Walmart's competing Vudu service now located on walmart.com at no additional cost to Walmart and with no compensation to Netflix. This inequitable result to Netflix is not justified in a circumstance where there has been no finding of liability against Netflix and indeed, as Netflix demonstrated in its recently-filed motion for summary judgment, where plaintiffs' claims are wholly without merit. Essentially, Walmart is paying $27 million to exit this litigation and it is motivated to steer 40 million video consumer class members to its website that offers a competing video streaming service – the equivalent of a marketing campaign that costs Walmart only 68 cents per potential customer. Whatever benefits Walmart and Plaintiffs' counsel may obtain from the settlement, the expense to Netflix, which is inevitable, should be narrowly circumscribed by the Court.

Consequently, the settlement, and any approval thereof, should strictly prohibit Walmart from (a) placing any Vudu-related materials, advertisements, or promotions on the website pages that will be visited by class members in redeeming their gift cards, and (b) allowing gift cards to be redeemed for Vudu video rentals. Alternatively, gift cards could be made to be redeemable only at Walmart retail stores, and not through online transactions where class members can be solicited to subscribe to Walmart's competing Vudu online movie rental service.

## V. CONCLUSION

For the foregoing reasons, Plaintiffs' motion for preliminary approval should be denied.[3]

Dated: July 29, 2011

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

By: /s/ Jonathan M. Jacobson

*Attorneys for Defendant Netflix, Inc.*

---

[3] Just prior to this filing, Netflix's counsel was provided with information indicating that the currently appointed Lead Counsel's law firm (Baker Hostetler) is also currently representing Walmart in ongoing litigation. Whether or not Walmart itself may have waived this conflict of interest is irrelevant as it seems apparent that the Class has not. *See* Cal. R. Prof. Conduct 3-310. Such a conflict would seem to preclude a finding of adequacy of class counsel, including Lead Counsel who was admittedly involved in negotiating the settlement with Walmart; this, in turn would preclude class certification. Because of the late receipt of this information, Netflix has asked the Baker Hostetler firm to advise Netflix next week as to whether there are facts that would negate this apparent conflict and, if not, what steps they intend to take consistent with the disciplinary rules. Netflix accordingly reserves the right to file a formal motion addressing this issue at the conclusion of its investigation, if necessary.