JONATHAN M. JACOBSON, State Bar No. 1350495 (N.Y.)
DAVID H. REICHENBERG, State Bar No. 4477477 (N.Y.)
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
1301 Avenue of the Americas, 40th Floor
New York, New York 10019
Tel: (212) 999-5800
Fax: (212) 999-5899
Email: jjacobson@wsgr.com

KEITH E. EGGLETON, State Bar No. 159842
MAURA L. REES, State Bar No. 191698
DYLAN J. LIDDIARD, State Bar No. 203055
ANTHONY J WEIBELL, State Bar No. 238850
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304
Telephone: (650) 493-9300
Fax: (650) 565-5100
Email: dliddiard@wsgr.com

*Attorneys for Defendant Netflix, Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| IN RE ONLINE DVD RENTAL ANTITRUST LITIGATION | Master File No.: 4:09-md-2029 PJH (JCS)<br>MDL No. 2029<br><br>Hon. Phyllis J. Hamilton<br><br>**DEFENDANT NETFLIX'S TRIAL BRIEF** |
| **This document relates to:**<br><br>ALL ACTIONS | |

# TABLE OF CONTENTS

Page

I. INTRODUCTION ..... 1

II. CAUSES OF ACTION REMAINING TO BE TRIED ..... 1

III. APPLICABLE LEGAL STANDARDS ..... 2

A. Relevant Market ..... 3

B. Per Se Analysis ..... 4

C. Rule of Reason Analysis ..... 5

D. Monopolization Under Sherman Act Section 2 ..... 6

E. Injury In Fact ..... 7

F. Evidentiary Issues ..... 8

IV. CONCLUSION ..... 9

**TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Abraham v. Intermountain Health Care Inc.*, 461 F.3d 1249 (10th Cir. 2006) ............................ 4

*Bhan v. NME Hosps., Inc.*, 929 F.2d 1404 (9th Cir. 1991) ........................................................ 5

*Broadcast Music, Inc. v. CBS, Inc.*, 441 U.S. 1 (1979) ............................................................... 4

*Brown Shoe Co. v. United States*, 370 U.S. 294 (1962) ............................................................. 3

*Cal. ex rel. Harris v. Safeway, Inc.*, 651 F.3d 1118 (9th Cir. 2011) ............................................. 5

*Capital Imaging Assocs., P.C. v. Mohawk Valley Med. Assocs., Inc.*,
996 F.2d 537 (2d Cir. 1993) ....................................................................................................... 5

*Chi. Prof'l Sports Ltd. P'ship v. NBA*, 95 F.3d 593 (7th Cir. 1996) ............................................. 5

*Corsearch, Inc. v. Thomson & Thomson*, 792 F. Supp. 305 (S.D.N.Y. 1992) .............................. 6

*Fraser v. Major League Soccer, LLC*, 284 F.3d 47 (1st Cir. 2002) .............................................. 7

*F.T.C. v. Arch Coal Inc.*, 329 F. Supp. 2d 109 (D.D.C. 2004) ..................................................... 6

*Gerlinger v. Amazon.com Inc.*, 526 F.3d 1253 (9th Cir. 2008) ................................................ 5, 7

*In re Citric Acid Litig.*, 191 F.3d 1090 (9th Cir. 1999) ................................................................ 4

*J. Truett Payne Co. v. Chrysler Motors Corp.*, 451 U.S. 557 (1981) ........................................... 2

*Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*, 551 U.S. 877 (2007) ................................... 5

*Lektro-Vend Corp. v. Vendo Co.*, 660 F.2d 255 (7th Cir. 1981) .................................................. 6

*Levine v. Cent. Fla. Med. Affiliates, Inc.*, 72 F.3d 1538 (11th Cir. 1996) ..................................... 5

*McGlinchy v. Shell Chem. Co.*, 845 F.2d 802 (9th Cir. 1988) ..................................................... 2

*NCAA v. Bd. of Regents*, 468 U.S. 85 (1984) ............................................................................... 5

*Nova Designs, Inc. v. Scuba Retailers Ass'n*, 202 F.3d 1088 (9th Cir. 2000) .............................. 6

*Nw. Wholesale Stationers, Inc. v. Pac. Stationery & Printing Co.*,
472 U.S. 284 (1985) ..................................................................................................................... 4

*NYNEX Corp. v. Discon, Inc.*, 525 U.S. 128 (1998) .................................................................... 5

*Pac. Exp., Inc. v. United Airlines, Inc.*, 959 F.2d 814 (9th Cir. 1992) .......................................... 2

*Paladin Assocs., Inc. v. Mont. Power Co.*, 328 F.3d 1145 (9th Cir. 2003) ................................ 2, 4

*Palmer v. BRG of Ga., Inc.*, 498 U.S. 46 (1990) ........................................................................... 4

*R.C. Dick Geothermal Corp. v. Thermogenics, Inc.*, 890 F.2d 139 (9th Cir. 1989) ...................... 5

*Rebel Oil Co. v. Atl. Richfield Co.*, 51 F.3d 1421 (9th Cir. 1995) ............................................ 2, 6

*Sicor Ltd. v. Cetus Corp.*, 51 F.3d 848 (9th Cir. 1995) ................................................................ 7

*Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447 (1993) .......................................................... 3

*Sterling Merch., Inc. v. Nestle, S.A.*, 656 F.3d 112 (1st Cir. 2011) ............................................... 7

*T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626 (9th Cir. 1987) ................... 1

*Tanaka v. Univ. of S. Cal.*, 252 F.3d 1059 (9th Cir. 2001) .......................................................... 3

*Texaco Inc. v. Dagher*, 547 U.S. 1 (2006) ...................................................................................... 5

*Thurman Indus., Inc. v. Pay'N Pak Stores, Inc.*, 875 F.2d 1369 (9th Cir. 1989) ........................... 3

*Trishan Air, Inc. v. Fed. Ins. Co.*, 635 F.3d 422 (9th Cir. 2011) .................................................. 7

*Turf Paradise, Inc. v. Ariz. Downs*, 670 F.2d 813 (9th Cir. 1982) ................................................ 4

*United States v. Colum. Steel Co.*, 334 U.S. 495 (1948) ............................................................... 4

*United States v. Oracle Corp.*, 331 F. Supp. 2d 1098 (N.D. Cal. 2004) ........................................ 6

*United States v. Rockford Mem'l Corp.*, 898 F.2d 1278 (7th Cir. 1990) ...................................... 4

*Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398 (2004) .................................................................................................. 2, 6

*Wasco Prods., Inc. v. Southwall Techs., Inc.*, 435 F.3d 989 (9th Cir. 2006) ................................. 7

*Williams v. I.B. Fischer Nev.*, 999 F.2d 445 (9th Cir. 1993) ......................................................... 7

**RULES**

Fed. R. Evid. 402 ........................................................................................................................ 8

Fed. R. Evid. 403 ........................................................................................................................ 8

Fed. R. Evid. 802 ........................................................................................................................ 8

**TABLE OF ABBREVIATIONS**

| | |
|---|---|
| Netflix | Netflix, Inc. |
| Walmart | Defendants Walmart Stores, Inc. and Walmart.com, LLC, collectively |
| PA | The May 2005 Promotion Agreement submitted herewith as Ex. 1 |
| 3U | Unlimited DVD rental subscription plans with three DVD's out at a time |
| Compl. | Consolidated Amended Class Action Complaint, ECF No. 22 |
| DVDR | DVD rental |

## I. INTRODUCTION

The class of Plaintiffs in this action consists of any person or entity in the United States that paid a subscription fee to Netflix from May 19, 2005 to September 30, 2010. Plaintiffs assert four causes of action under the Sherman Act, §§ 1-2, claiming that they suffered injury due to the anticompetitive conduct of Netflix and Walmart. Plaintiffs' claims are based on the allegation that in 2005, Netflix and Walmart entered into a "market allocation" agreement under which Netflix agreed not to sell new DVDs and Walmart agreed not to compete in the business of renting DVDs online.

The evidence does not support Plaintiffs' claims. There was no agreement to allocate markets. In the May 2005 Promotion Agreement ("PA"), Netflix agreed to take over the subscriptions of those Walmart online DVD rental subscribers who desired to switch upon Walmart's exit of the business. The PA included no restrictions on sales of new DVDs, and no restriction on Walmart's ability to re-enter online DVDR at any time it chose. Plaintiffs can likewise point to no evidence of any such agreement outside of the PA. Moreover, Walmart was so insignificant in online DVDR that its exit had no effect on competition, regardless of why Walmart exited. And in any event, there is no evidence of causal antitrust injury, an essential element of all of Plaintiffs' claims: Plaintiffs did not pay higher prices during the class period, and in fact prices actually declined (while output increased). Most of Plaintiffs' case will likely rely on the testimony of two purported experts, John Beyer and Gregory Gundlach. As set forth in Netflix's *Daubert* motions, however, these experts do not meet the required standards of reliability for their testimony to be useful to the Court or the jury, and should be excluded.

## II. CAUSES OF ACTION REMAINING TO BE TRIED

There are four causes of action to be tried:

**Count One: Sherman Act § 1**. To prove this claim, Plaintiffs must show: (1) that there was a contract, combination, or conspiracy, *i.e.*, an agreement or concerted action toward a common goal; (2) that the agreement unreasonably restrains trade, under either a per se rule of illegality or a rule of reason analysis; and (3) that the restraint affected interstate commerce. *See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 632-33 (9th Cir. 1987). In

addition, because they are seeking damages, plaintiffs must also prove causal antitrust injury. *J. Truett Payne Co. v. Chrysler Motors Corp.*, 451 U.S. 557, 562 (1981); *Rebel Oil Co. v. Atl. Richfield Co.*, 51 F.3d 1421, 1433 (9th Cir. 1995) ("causal antitrust injury, is an element of all antitrust suits brought by private parties seeking damages under Section 4 of the Clayton Act.").

**Counts Two through Four: Sherman Act § 2**. Plaintiffs assert three claims pursuant to Section 2 of the Sherman Act: monopolization, attempt to monopolize, and conspiracy to monopolize. The elements of these claims are as follows:

***Monopolization***: The monopolization claim requires Plaintiffs to prove: "(1) Possession of monopoly power in the relevant market; (2) willful acquisition or maintenance of that power; and (3) causal antitrust injury." *Pac. Exp., Inc. v. United Airlines, Inc.*, 959 F.2d 814, 817 (9th Cir. 1992). As further explained by the Supreme Court, "[t]o safeguard the incentive to innovate, the possession of monopoly power will not be found unlawful unless it is accompanied by an element of anticompetitive *conduct*." *Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 407 (2004).

***Attempted Monopolization***: To prove attempted monopolization, "a private plaintiff seeking damages must demonstrate four elements: (1) specific intent to control prices or destroy competition; (2) predatory or anticompetitive conduct directed at accomplishing that purpose; (3) a dangerous probability of achieving 'monopoly power'; and (4) causal antitrust injury." *Rebel Oil*, 51 F.3d at 1433 (citing *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 811 (9th Cir. 1988)).

***Conspiracy to Monopolize***: To prove conspiracy to monopolize, Plaintiffs must show: "(1) the existence of a combination or conspiracy to monopolize; (2) an overt act in furtherance of the conspiracy; (3) the specific intent to monopolize; and (4) causal antitrust injury." *Paladin Assocs., Inc. v. Mont. Power Co.*, 328 F.3d 1145, 1158 (9th Cir. 2003).

## III. APPLICABLE LEGAL STANDARDS

Many of the legal standards that apply to Plaintiffs' claims were more fully discussed in Netflix's briefing on its motion for summary judgment (Dkt. Nos. 386, 461); those standards are briefly summarized here (*infra* Sections III.B-E).

### A. RELEVANT MARKET

Plaintiffs define the relevant market for analyzing their antitrust claims[1] as "the rental of DVDs online by subscription for delivery by mail in the United States." Compl. ¶ 27. In determining the boundaries of a proper product market, it is necessary to consider "the reasonable interchangeability of use or the cross-elasticity of demand between the product itself and substitutes for it." *Brown Shoe Co. v. United States*, 370 U.S. 294, 325 (1962). "[A] product market is typically defined to include the pool of goods or services that qualify as economic substitutes because they enjoy reasonable interchangeability of use and cross-elasticity of demand." *Thurman Indus., Inc. v. Pay'N Pak Stores, Inc.*, 875 F.2d 1369, 1374 (9th Cir. 1989)

Plaintiffs' market definition is incorrect (particularly to the extent Plaintiffs argue that it applies throughout the entire class period), because it fails to take into account numerous facts demonstrating that the alleged market is too narrowly defined. In particular, Plaintiffs ignore the advent of online streaming as a video distribution method that increased in popularity during the class period. Many Netflix subscribers view streaming as a substitute for by-mail DVD rental subscriptions: by the end of the class period, most subscribers obtained content from Netflix through both channels (DVD and streaming), and overall, streaming accounted for the majority of total viewing time of content delivered through Netflix. Any analysis of the sources of competition constraining Netflix through September 2010 is necessarily incomplete unless it accounts for streaming. A properly defined relevant market would include many competitors beyond Walmart and Blockbuster who offer online video delivery, such as Hulu, Vudu (which was acquired by and is now operated by Walmart), Amazon.com, and iTunes.

Similarly, other forms of filmed entertainment delivery besides online DVD rental were available during the class period. These could include, *inter alia*, cable television, satellite television, video on demand (VOD), brick-and-mortar DVD rental stores, and rental kiosks such as Redbox. The importance of such other channels is highlighted by Netflix's surveys of

---

[1] Relevant market definition is necessary for analyzing Plaintiffs' Sherman Act § 1 claim under the rule of reason, and for all of Plaintiffs' Sherman Act § 2 monopolization claims. *Tanaka v. Univ. of S. Cal.*, 252 F.3d 1059, 1063 (9th Cir. 2001); *see also Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 456 (1993).

subscribers who canceled their accounts, which show that a vast majority of respondents indicate an intention to use another channel besides online DVD rental for movie consumption. And, even beyond movie consumption, there are numerous other forms of entertainment competing for consumers' leisure time that could serve as substitutes for online DVD rental.

### B. Per Se Analysis

Plaintiffs cannot show a per se violation of the antitrust laws because the PA was not a market allocation agreement. A market allocation agreement is one in which two companies agree not to compete in each other's market and in which there are no procompetitive efficiencies. *Palmer v. BRG of Ga., Inc.*, 498 U.S. 46, 49-50 (1990); *Turf Paradise, Inc. v. Ariz. Downs*, 670 F.2d 813, 821-22 (9th Cir. 1982). Here, there is no evidence that Netflix agreed not to compete in the sale of new DVDs. There is no evidence that Walmart and Netflix ever even *discussed* – let alone agreed to – an arrangement under which Netflix would not sell new DVDs. *In re Citric Acid Litig.*, 191 F.3d 1090, 1103 (9th Cir. 1999) (even evidence of discussions, without more, would not suffice to establish conspiracy); *see also Abraham v. Intermountain Health Care Inc.*, 461 F.3d 1249, 1258-59 (10th Cir. 2006).

In addition, even if Netflix had agreed not to sell new DVDs, the per se rule would not apply. Per se analysis applies only where the "practice facially appears to be one that would always or almost always tend to restrict competition and decrease output" rather than "one designed to 'increase economic efficiency and render markets more, rather than less, competitive.'" *Nw. Wholesale Stationers, Inc. v. Pac. Stationery & Printing Co.*, 472 U.S. 284, 289-90 (1985); *Broadcast Music, Inc. v. CBS, Inc.*, 441 U.S. 1, 19-20 (1979); *Paladin*, 328 F.3d at 1154-56. The PA here had a number of plausible efficiencies, designed to enhance output in both online DVD rentals and in DVD sales, placing it outside the scope of any per se rule.

The PA was functionally an acquisition by Netflix of Walmart's online DVD rental subscriber base. Mergers and acquisitions are evaluated under the rule of reason (not a per se rule) to determine whether there are any anticompetitive effects and, if so, whether they are outweighed by procompetitive efficiencies. *United States v. Colum. Steel Co.*, 334 U.S. 495, 529-30 (1948); *United States v. Rockford Mem'l Corp.*, 898 F.2d 1278, 1282 (7th Cir. 1990); *see*

*also Gerlinger v. Amazon.com Inc.*, 526 F.3d 1253, 1256 (9th Cir. 2008) (dismissing "market allocation" challenge to Amazon-Borders agreement under which Amazon assumed operations of the Borders.com site). To the extent Plaintiffs seek to argue that a joint promotion agreement between competitors is per se illegal, they are wrong. Joint promotion agreements are not analyzed under a per se rule. *See Cal. ex rel. Harris v. Safeway, Inc.*, 651 F.3d 1118, 1131-36 (9th Cir. 2011) (en banc) (rejecting per se analysis and holding that rule of reason analysis applies to agreement between rival grocery stores).

### C. RULE OF REASON ANALYSIS

Because Plaintiffs can articulate no viable theory of per se liability, the PA must be tested under the rule of reason. *Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*, 551 U.S. 877, 885-87 (2007); *Texaco Inc. v. Dagher*, 547 U.S. 1, 5 (2006). An agreement will be found to restrain trade unreasonably only if its actual or probable effect is to raise prices, restrict output, reduce quality, or otherwise harm consumers in a significant way. *NCAA v. Bd. of Regents*, 468 U.S. 85, 98 (1984); *NYNEX Corp. v. Discon, Inc.*, 525 U.S. 128, 136 (1998); *R.C. Dick Geothermal Corp. v. Thermogenics, Inc.*, 890 F.2d 139, 151-52 (9th Cir. 1989) (en banc) (finding no effect on prices or output); *Levine v. Cent. Fla. Med. Affiliates, Inc.*, 72 F.3d 1538, 1551 (11th Cir. 1996); *Capital Imaging Assocs., P.C. v. Mohawk Valley Med. Assocs., Inc.*, 996 F.2d 537, 546 (2d Cir. 1993) (exclusion of plaintiff radiology group did not increase price or decrease quality); *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1414 (9th Cir. 1991). "The core question in antitrust is output. Unless a contract reduces output in some market, to the detriment of consumers, there is no antitrust problem." *Chi. Prof'l Sports Ltd. P'ship v. NBA*, 95 F.3d 593, 597 (7th Cir. 1996).

The PA had no such effects. Walmart unilaterally decided to exit online DVD rental, and therefore the PA had no effect on any resulting consequences of Walmart's exit. There is also no evidence of consumer harm, regardless of why Walmart exited. There was no increase in prices, restriction in output, or decrease in quality of service after Walmart's exit. Walmart's presence or absence in the market did not impact competition in any way due to its tiny market share (1.5% and declining) and lack of commitment to online DVDR.

Plaintiffs cannot simply rely on an assertion that Walmart was a part of the "competitive equation." Rather, they must show that Walmart itself had some impact in the market, so that its removal made a difference. *See United States v. Oracle Corp.*, 331 F. Supp. 2d 1098, 1166-73 (N.D. Cal. 2004) (Oracle's acquisition of PeopleSoft upheld because elimination of PeopleSoft as independent competitor was not likely to lessen competition substantially in light of continued competition from SAP and others); *F.T.C. v. Arch Coal Inc.*, 329 F. Supp. 2d 109, 147 (D.D.C. 2004) (approving acquisition where acquired firm "does not lead or even influence pricing in the market, does not compete aggressively, and does not have a history of [aggressive] bidding on contracts" such that it was "unlikely that [the acquired firm] will become any more competitive in the marketplace than it is right now").

**D. MONOPOLIZATION UNDER SHERMAN ACT SECTION 2**

Section 2 claims, whether based on allegations of conspiracy to monopolize, attempt to monopolize, or actual monopolization, all require proof of anticompetitive conduct. *Verizon Commc'ns*, 540 U.S. at 407 ("To safeguard the incentive to innovate, the possession of monopoly power will not be found unlawful unless it is accompanied by an element of anticompetitive *conduct*."); *Rebel Oil*, 51 F.3d at 1433. The only conduct alleged here to be anticompetitive, however, is the same conduct leading to the PA and Walmart's exit.

For the same reasons that there was no unreasonable restraint of trade, there was no anticompetitive conduct under Section 2. Acquiring a competitor's business is not, on its own, predatory conduct. *Lektro-Vend Corp. v. Vendo Co.*, 660 F.2d 255, 271 (7th Cir. 1981) ("acquisitions can sometimes provide evidence of predatory conduct [but] are not generally considered predatory"); *Corsearch, Inc. v. Thomson & Thomson*, 792 F. Supp. 305, 325 (S.D.N.Y. 1992) (no Section 2 violation where there was "no evidence that the acquisition was undertaken in order to acquire or maintain a monopoly position and prevent competition"). Where an agreement is found not to be anticompetitive and does not constitute an unreasonable restraint of trade in violation of Sherman Act § 1, there is likewise no basis for a monopolization claim under Section 2. *Nova Designs, Inc. v. Scuba Retailers Ass'n*, 202 F.3d 1088, 1092 (9th

Cir. 2000); *Sicor Ltd. v. Cetus Corp*., 51 F.3d 848, 856 (9th Cir. 1995); *Williams v. I.B. Fischer Nev.*, 999 F.2d 445, 448 (9th Cir. 1993).

Any claim by Plaintiffs that Netflix monopolized the relevant market via earlier "anticompetitive" agreements with other competitors – Amazon, Best Buy, and Musicland – is baseless. First, Plaintiffs waived this claim by failing to allege it in their Complaint. *See Trishan Air, Inc. v. Fed. Ins. Co.*, 635 F.3d 422, 435 (9th Cir. 2011); *Wasco Prods., Inc. v. Southwall Techs., Inc.*, 435 F.3d 989, 992 (9th Cir. 2006). Second, putting aside Plaintiffs' mischaracterizations of the terms of the agreements, the agreements in question were entered into in 1998, 1999, and 2001. The online DVD rental "market" did not even exist at that time, and so there was no market to "allocate." Agreements entered into prior to the emergence of a relevant market – and that, in fact, contributed to the very creation of the market – cannot properly form the basis of a monopolization claim. *E.g., Fraser v. Major League Soccer, LLC*, 284 F.3d 47, 69-71 (1st Cir. 2002).

### E. Injury In Fact

All of Plaintiffs' claims require them to prove causal injury-in-fact. *See supra*, Section II. Here, in light of the insignificance of Walmart as a competitor, and the lack of any impact on competition from its exit, there is no evidence of any injury caused by the PA. Because Walmart had no effect on price or other aspects of competition, Plaintiffs suffered no harm from that exit. After the exit of Walmart, Netflix began introducing new lower-priced plans, while its 3U price remained unchanged for over two years, at which point the price was *lowered*. Plaintiffs paid the same or lower prices for their Netflix subscriptions both before and after the PA – a fact that is dispositive on the lack of injury. *Gerlinger*, 526 F.3d 1253 (plaintiffs demonstrated no injury resulting from Amazon.com's takeover of Borders.com online bookselling website when book prices remained the same or lower after the agreement as compared to before); *see also Sterling Merch., Inc. v. Nestle, S.A.*, 656 F.3d 112, 121-22 (1st Cir. 2011) ("Injury to competition is 'usually measured by a *reduction in output* and an *increase in prices* in the relevant market'"; "Sterling failed to provide evidence that consumer prices increased during the relevant period. In fact, the evidence suggests that, if anything, consumer prices *decreased* during the relevant

period. . . . Sterling did not set forth any evidence from which an inference can be drawn that there was a reduction in output within the relevant market during the relevant period.”).

### F. Evidentiary Issues

Netflix anticipates that the following evidentiary disputes may be raised:

***Daubert* Motions**: Netflix has moved to exclude the testimony of Plaintiffs' experts, John Beyer (economic expert) and Gregory Gundlach (marketing expert). The testimony of these purported experts does not fit the facts of this case, and simply ignores or contradicts the uncontroverted evidence of the events surrounding Walmart's exit from online DVDR in 2005.

**Plaintiffs' Settlement with Walmart**: Evidence of Plaintiffs' settlement with Walmart should be excluded under FRE 403 and 408, as it would tend to unfairly impact the jury's view of the merits.

**Third Party Analyst Reports, Newspaper Articles, Etc**. Evidence consisting of hearsay statements by stock analysts, news reporters, and other third party commentators, to the extent offered by Plaintiffs for their truth, should be excluded under FRE 802.

**Post-Class Period Price Adjustments**: Evidence of post-class period price adjustments made by Netflix should be excluded under FRE 402 and 403. Netflix's pricing adjustments made after the class period are irrelevant to any claims at issue in this action, and any effort to introduce them would be only for the prejudicial purpose of seeking to invoke negative public reaction that occurred in response to recent price changes of certain Netflix subscription plans.

**Pre-Class Period Agreements with Amazon, Musicland and Best Buy**. Evidence of pre-class period promotional agreements between Netflix and these entities should be excluded as irrelevant. As set forth above, *supra* Section III.D, such agreements occurred not only before the class period began, but before any market for online DVDR even existed. As such, these agreements cannot be relevant to any claim by Plaintiffs concerning purported anticompetitive activity in the online DVDR market.

**Personal Finances of Netflix Witnesses**. Evidence concerning the personal finances of Netflix witnesses (such as net worth, salary, stock holdings/sales, or other financial information),

should be excluded. It is not relevant to any issue in the case, and would be introduced solely for prejudicial purposes.

**FTC and State Attorney General Inquiries**: Plaintiffs argued in the context of summary judgment that evidence of investigations by the Federal Trade Commission and the Attorneys General of two states should be excluded. However, the fact that the FTC and Attorneys General inquired into the May 2005 PA and chose not to take any action is highly relevant, and strongly suggests that the PA was not anticompetitive (and certainly not per se illegal). At a minimum, the evidence should be allowed to be used in impeaching the contrary opinions of Plaintiffs' experts.

**IV. CONCLUSION**

Netflix respectfully submits that Plaintiffs will be unable to meet their burden of proof at trial on any of their claims.

Dated: November 15, 2011

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

By: /s/ Jonathan M. Jacobson
Jonathan M. Jacobson

*Attorneys for Defendant Netflix, Inc.*