Robert G. Abrams (*pro hac vice*)
Gregory L. Baker (*pro hac vice*)
**BAKER & HOSTETLER LLP**
Washington Square, Suite 1100
1050 Connecticut Avenue, NW
Washington, DC 20036-5304
Telephone: (202) 861-1699
Facsimile: (202) 861-1783
Email: rabrams@bakerlaw.com
        gbaker@bakerlaw.com

*Lead Plaintiff Class Counsel in MDL No. 2029*

Guido Saveri (22349)
R. Alexander Saveri (173102)
Lisa Saveri (112043)
David Sims (248181)
**SAVERI & SAVERI, INC.**
706 Sansome Street
San Francisco, CA 94111
Telephone: (415) 217-6810
Facsimile: (415) 217-6813
Email: guido@saveri.com
        rick@saveri.com
        lisa@saveri.com
        dsims@saveri.com

*Liaison Plaintiff Counsel in MDL No. 2029*

[Additional Counsel on Signature Page]

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| **IN RE ONLINE DVD RENTAL ANTITRUST LITIGATION** | **Master File No. 4:09-md-2029 PJH**<br><br>**MDL No. 2029**<br><br>**Hon. Phyllis J. Hamilton**<br><br>**PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL OF SETTLEMENT**<br><br>Date:   March 14, 2012<br>Time:   9:00 a.m.<br>Place:  Courtroom 3 |

## TABLE OF CONTENTS

**PAGE**

I.  THE CLASS REACTED POSITIVELY TO THE SETTLEMENTS AND THE CLAIMS PROCESS HAS BEEN A SUCCESS..................................................................................1

II. ONE OBJECTOR'S CHARGE OF FRAUD ON THE COURT IS BASELESS AND RECKLESSLY ASSERTED ...........................................................................................2

III. A SETTLEMENT IS NOT A "COUPON SETTLEMENT" WITHIN THE MEANING OF CAFA WHERE IT PROVIDES THE CHOICE OF CASH AND A NON-EXPIRING GIFT CARD WITH AN ECONOMIC VALUE EQUAL TO ITS FACE VALUE...............................3

    A.  The Settlement Distributes to Claimants Their Choice of Cash or a Non-Expiring Gift Card, Which Is Legally and Factually Distinct from Forcing Coupons on the Class........3

        1.  Federal and State Statutes Regulate Gift Cards as Distinct From Coupons ..........3

        2.  Case Law Illustrates that the Gift Cards Here Are Not "Coupons".....................5

        3.  The Structure of the Settlement Indicates It Is Not a Coupon Settlement............6

    B.  The Actual Value of the Gift Cards Is Their Face Value .................................................7

        1.  The Settlement Agreement's Provision of an Election Between Cash and Gift Card of Equivalent Value Is Evidence of the Gift Card's "Economic Value" to Class Members......................................................................................................7

        2.  The Fact that Claimants' Have Now Exercised Their Choice and the Results Show Gift Cards Were Preferred Over Cash Is Evidence of the Value Class Members Place on the Gift Cards ......................................................................7

IV. SEVERAL OBJECTIONS CAN BE OVERRULED BECAUSE THEY MISUNDERSTAND THE SETTLEMENT TERMS ....................................................................9

    A.  There Is No Reverter to Wal-Mart....................................................................................9

    B.  The Mediation Provision at ¶ 6.1.2.3 Is Not an "Escape Clause" But a Contingency that Has Proven Unnecessary ......................................................................9

    C.  The Settlement Resolves the California State Actions as Against Wal-Mart and Potential Fees for State Action Counsel Will Come from Class Counsel's Fee Award.10

V.  THE COURT-APPROVED NOTICE WAS ADEQUATE ......................................................10

VI. REQUIRING CLAIMS FORMS FOR CASH TO BE MADE BY MAIL IS FAIR..................12

VII. ALLOCATING PAYMENTS IN AN EQUAL AMOUNT TO ALL CLAIMANTS IS FAIR AND REASONABLE ..............................................................................................................12

VIII. THE INCENTIVE AWARDS TO SETTLEMENT CLASS REPRESENTATIVES ARE REASONABLE ........................................................................................................................13

IX.   OTHER OBJECTIONS CONCERNING THE FAIRNESS OF THE GIFT CARDS ARE WITHOUT MERIT .................................................................................................13

X.    THE CLAIM FORM IS SIMPLE, STRAIGHTFORWARD AND FAIR ................................14

XI.   OTHER GROUNDS FOR OBJECTING TO THE ATTORNEYS' FEE REQUEST ARE WITHOUT MERIT .................................................................................................14

XII.  CONCLUSION.............................................................................................................15

# TABLE OF AUTHORITIES

**PAGE(S)**

**Cases**

*Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566 (9th Cir. 2004)............................................................2

*Fernandez v. Victoria Secret Stores, LLC*, No. CV 06-04149 MMM (Shx), 2008 WL 8150856
(C.D. Cal. July 21, 2008)...............................................................................................................8, 9

*Fleury v. Richemont N. Am., Inc.*, No. C-05-4525 EMC, 2008 U.S. Dist. LEXIS 112459 (N.D. Cal.
Aug. 6, 2008) ..................................................................................................................................5

*Hartless v. Clorox Co.*, 273 F.R.D. 630 (S.D. Cal. 2011)......................................................2, 14

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011)................................15

*In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297 (N.D. Ga. 1993).........................14

*In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231 (D. Del. 2002), *aff'd*, 391 F.3d 516 (3d Cir.
2004).............................................................................................................................................11

*In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319 (S.D.N.Y. 2005) ................................13

*Menasha Corp. v. News Am. Mktg. In-Store, Inc.*, 354 F.3d 661 (7th Cir. 2004) ......................5

*Sobel v. Hertz Corp.*, No. 3:06-CV-00545-LRH-RAM, 2011 U.S. Dist. LEXIS 68984 (D. Nev.
June 27, 2011)..................................................................................................................................6

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003) ....................................................................13

*True v. American Honda Motor Co.*, 749 F. Supp. 2d 1052 (C.D. Cal. 2010).........................5, 6

*Williams v. MGM-Pathe Commc'ns Co.*, 129 F.3d 1026 (9th Cir. 1997) .......................9, 14, 15

*Young v. Polo Retail, LLC*, No. C-02-4546 VRW, 2006 U.S. Dist. LEXIS 81077 (N.D. Cal.
Oct. 25, 2006) ..............................................................................................................................8, 9

**Statutes & Rules**

Cal. Civ. Code § 1749.5(b)(1)-(2) ...............................................................................................6

Cal. Civil. Code Cal. Civil Code §§ 1749 – 1749.6.......................................................................4

Class Action Fairness Act, 28 U.S.C. § 1712 ......................................................................passim

**Other Authorities**

Credit Card Accountability Responsibility and Disclosure Act of 2009, Pub. L. No. 111-24, §§ 401-
403, 123 Stat. 1734 (2009) .............................................................................................................5

1    Plaintiffs submit this reply in support of their motions[1] made in connection with final approval

2   of the proposed Settlement Agreement between Plaintiffs and Defendants Wal-Mart Stores, Inc. and

3   Walmart.com USA LLC (collectively, "Wal-Mart").  Accompanying this reply are the Supplemental

4   Declaration of Tore Hodne of Rust Consulting, Inc. ("Hodne Suppl. Decl.") and the Declaration of

5   Todd A. Seaver ("Seaver Decl.").  Plaintiffs address the substance of the twenty-six objections to the

6   proposed Settlement that have been timely lodged.[2]

7    For the reasons set forth below and in Plaintiffs' motions, the Settlement is fair, reasonable and

8   adequate and merit final approval by the Court.

9   **I.     THE CLASS REACTED POSITIVELY TO THE SETTLEMENTS AND THE CLAIMS
         PROCESS HAS BEEN A SUCCESS**

10    To date, 1,176,345 timely claims have been filed through the website and through paper claims.

11   Hodne Suppl. Decl. at ¶ 23.[3]  This represents approximately 3.4% of the estimated 35 million

12   Settlement Class Members.  At this participation rate, the *per capita* amount which Claimants will

13   receive is approximately $12.00.[4]

14

---

15   [1] *See* Pls.' Mot. for Final Approval of Settlement with Wal-Mart Defendants (ECF No. 566) and Pls.'
16   Mot. for Attorneys' Fees, Reimb. of Expenses, and Class Rep. Payments (ECF No. 564).  Capitalized
    terms used herein are defined in these previously-filed motions, the Settlement Agreement, and/or the
17   settlement notice.

    [2] By notice dated yesterday, February 27, 2012, the Court issued a Notice Re Objections To Class
18   Settlement (Dkt. Entry 582) ("Notice").  The Court's Notice explained that the Court "has received a
    number of objections from individuals that do not appear to have been mailed to counsel" and attached
19   those objections. Notice at 1.  Counsel for the settling parties have reviewed the Notice and its attached
    materials.  Class Counsel confirms that six of those objections were not previously received by or
20   otherwise previously known to Class Counsel.   Those are (described by last name of purported
    objector): Kraska, Kyriacos,Leimgruber, Payne, Snider, and Tricome.  Class Counsel has reviewed these
21   six purported objections and determined that they are not objections.  They either request the Court to
    confirm the email notice is not a hoax, request exclusion, request to be included in the litigation, request
22   that the Court protect the Class, or inform the Court that the email notice was not received. None of the
    six request any relief and none notify of intent to appear at the fairness hearing.
23   [3] The claims data are raw as of this filing, as the claims period closed February 14, 2012.
    Approximately 9,000 claims (less than 0.8% of timely filed claims) require attention and follow-up to
24   cure deficiencies which will likely result in additional recognized claims and will occasion
    administrative effort and cost on the part of the claims administrator.  In addition, the claims
25   administrator will be implementing de-duplication measures and fraud detection measures, which
    should lightly impact the total number of recognized claims and which will also occasion further
26   administrative effort and cost.  *See* Suppl. Hodne Decl. at ¶¶ 25-26.
    [4] The rough calculation includes 1,176,345 claims dividing a net settlement fund of $14,143,782, net of
27   notice and administrative costs of $4,548,718, requested attorneys' fees of $6,812,500, reimbursed
    expenses of $1,700,000, and a modest $5,000 incentive award to the nine Settlement Class
28   Representatives for combined incentive awards of $45,000.

The number of Claimants electing cash is nearly 432,000, while just over 742,000 Claimants have chosen the walmart.com Gift Card. Hodne Suppl. Decl. ¶ 24.  The breakdown translates to Claimants preferring the Gift Card to cash, roughly 63% to 37%.

The reaction of the Class Members to the proposed Settlement has been positive. From a Settlement Class estimated at 35 million, a total of 722 timely requests for exclusion have been made. Hodne Suppl. Decl. ¶ 20.  A total of twenty-six Class Members have lodged objections.  For the Court's ease of reference, attached as Exhibit 1 to the Seaver Declaration is a table cataloguing the objectors and their objections.

The reaction of Class Members to the proposed Settlement is a factor in assessing final approval.  *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).  Where, as here, there are not a large number of objections to the proposed settlement, courts recognize a "strong presumption" that settlement's terms are favorable to class members.  *Hartless v. Clorox Co.*, 273 F.R.D. 630, 641 (S.D. Cal. 2011).  Plaintiffs now turn to the substance of the objections.

## II.   ONE OBJECTOR'S CHARGE OF FRAUD ON THE COURT IS BASELESS AND RECKLESSLY ASSERTED

One objector, attorney Theodore H. Frank ("Frank"),[5] levels a spurious charge at Class Counsel and counsel for Wal-Mart.  Frank accuses counsel of fraudulently inducing the Court to preliminarily approve the Settlement by seeking final approval of a settlement agreement different than the one submitted for preliminary approval.  *See* Frank Objection to Proposed Settlement (ECF No. 581) ("Frank Obj.") at 15-16.  According to Frank, "At some point after preliminary approval . . . the settling parties changed the deal they had presented to the Court" so that "[t]he Settlement Agreement now provides that the Gift Card will be 'fully transferable but may not be resold.' Settlement Agreement, § 6.1.2.3." *Id.* at 16.

Frank's accusation is as sloppy as it is incendiary.  To start, Mr. Frank references the wrong paragraph in the Settlement Agreement.  It is ¶ 2.21 of the Settlement Agreement which defines "Gift Card" and which states in relevant part that the "Gift Card shall be fully transferable but may not be resold unless the Settlement Class Member is a licensed reseller."  *See* Settlement Agreement dated

[5] Mr. Frank is an attorney and purported Class Member appearing "*pro per*."

July 1, 2011, attached as Ex. B to Declaration of Guido Saveri (ECF No. 454-1) in Support of Mot. for Prelim. Approval (ECF No. 454). In fact, the Settlement Agreement has not changed since its submission for preliminary approval. The objection offers zero support for the accusation that Class Counsel for the settling parties made "materially inaccurate statements to this Court about the essential terms of the Agreement" by "chang[ing] the deal that they had presented to the Court." Frank Obj. at 15, 16. Nor can Mr. Frank be forgiven for possibly confusing the prior iteration of the settlement executed in December 2010 on behalf of a Netflix subscriber class and a Blockbuster subscriber class. (ECF No. 279.) That agreement, which was withdrawn, contained the exact same definition of the contemplated Gift Card as "fully transferable." *Id.* at ¶ 2.24.

The portion of Frank's objection based on a spurious allegation of misconduct is meritless.

**III.  A SETTLEMENT IS NOT A "COUPON SETTLEMENT" WITHIN THE MEANING OF CAFA WHERE IT PROVIDES THE CHOICE OF CASH AND A NON-EXPIRING GIFT CARD WITH AN ECONOMIC VALUE EQUAL TO ITS FACE VALUE**

Objectors Frank, Kelly Kress ("Kress"), John Sullivan ("Sullivan") and Jon Zimmerman ("Zimmerman") each make various objections which have in common their claim that the Settlement is a "coupon settlement." Objectors Frank and Sullivan object to the request for attorneys' fees because they insist, it is a settlement for "coupons" and the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1712, requires the Court to wait and see how many walmart.com Gift Cards are actually used and in what amount before determining the value of the settlement and therefore the value of the 25% attorneys' fee request.

Objectors Frank, Kress, Sullivan and Zimmerman further object that the settlement is unfair and inadequate because there is no evidence that the Gift Cards have any value.

**A.  The Settlement Distributes to Claimants Their Choice of Cash or a Non-Expiring Gift Card, Which Is Legally and Factually Distinct from Forcing Coupons on the Class**

To label this a "coupon settlement" ignores two important facts: (i) the Gift Card is legally and factually distinct from a "coupon"; and (ii) this Settlement gives every Claimant the freedom to choose cash.

**1.  Federal and State Statutes Regulate Gift Cards as Distinct From Coupons**

CAFA provides in part:

Contingent Fees in Coupon Settlements.  If a proposed settlement in a class action provides for a recovery of coupons to a class member, the portion of any attorney's fee award to class counsel that is attributable to the award of the coupons shall be based on the value to class members of the coupons that are redeemed.

28 U.S.C. § 1712(a).

The objectors ignore that the Gift Cards here (and gift cards in general) are not coupons in terms of how they operate and how the law treats them.  Wal-Mart's policy is that walmart.com Gift Cards never expire.[6]  Moreover, applicable California state law prohibits them from expiring.[7]  This fact alone distinguishes the Gift Cards from coupons.  As a practical matter it makes it unrealistic for the Court to wait for the Gift Cards to be used in order to calculate the value delivered to the Class.

Indeed, unlike coupons, gift cards like the walmart.com Gift Cards here are subject to their own federal and state statutory schemes.  At the federal level, the Credit Card Accountability Responsibility and Disclosure Act of 2009, Pub. L. No. 111-24, §§ 401-403, 123 Stat. 1734, 1751-54 (2009) (attached as Ex. 3 to the Seaver Decl.), governs "Store Gift Cards"[8] and, among other things, generally bars them from expiration, prohibits fees and charges to be levied against the balance, requires them to be issued in a specific dollar amount and to be honored, like cash, upon presentation at the issuing merchant.  *Id*.

---

[6]  The Settlement Agreement provides in relevant part:  "Each Gift Card shall be subject to applicable laws . . . and the walmart.com Gift Card Terms and Conditions (available at www.walmart.com), and any other terms of use or terms and conditions governing Gift Cards in effect at the time the Gift Cards are issued . . . ."  Settlement Agr., ¶ 2.21.

The current Gift Card Terms and Conditions are attached as Ex. 2 to the Seaver Declaration.  They state:  "Walmart Gift Cards *never expire*."  *See* Walmart Gift Card Terms and Conditions, www.walmart.com/cp/Gift-Cards-Terms-and-Conditions/538430 (lasted updated May 6, 2010) (emphasis added).

Plaintiffs acknowledge that ¶ 6.1.2.2 of the Settlement Agreement references "the applicable expiration date, if any" in describing the Gift Cards.  This is not inconsistent with the fact that the Gift Cards will never expire, a fact disclosed in the Gift Card Terms and Conditions, which are expressly referenced in the Settlement Agreement at ¶ 2.21.

[7]  According to the Gift Card Terms and Conditions, "the laws of the State of California shall govern these Terms and Conditions . . . ."  Seaver Decl., Ex. 2.  The applicable California law is Cal. Civil Code Cal. Civil Code §§ 1749 – 1749.6.  The statute makes it unlawful for a gift card to expire.

[8]  The federal regulatory scheme defines the term "Store Gift Card" as

 [A]n electronic promise, plastic card or other payment code or device that is ---

   (i) redeemable at a single merchant or an affiliated group of merchants that share the same name, mark or logo;  (ii) *issued in a specified amount*, whether or not that amount may be increased in value or reloaded at the request of the holder; (iii) purchased on a prepaid basis in exchange for payment; and (iv) *honored upon presentation* by such single merchant or affiliated group of merchants *for goods or services*."  Credit Card Accountability Responsibility and Disclosure Act of 2009, Pub. L. No. 111-24, §§ 401-403, 123 Stat. 1734, 1752 (2009) (emphasis added).

1    State laws across the country likewise regulate gift cards, the federal law acting as a floor with

2    minimum protections. *See*  Seaver Decl. at Ex. 4 (Appendix of state statutes governing gift cards from

3    the National Conference on State Legislatures (NCSL)).

4        The existence of federal and state statutes governing store gift cards sets the Gift Cards apart

5    from the "coupons" and "coupon settlements" which concern CAFA.

6        **2.        Case Law Illustrates that the Gift Cards Here Are Not "Coupons"**

7        While CAFA does not define "coupon," the case law within the Ninth Circuit does.  Judge

8    Phillips recently analyzed "the basic economics of coupons and rebates" in *True v. American Honda*

9    *Motor Co.*, 749 F. Supp. 2d 1052, 1075 (C.D. Cal. 2010).  There a proposed class settlement gave a

10   consumer class of Honda owners a $500 or $1000 rebate on a purchase of a new Honda, with the

11   rebates being non-transferable and expiring in twelve months.  Judge Phillips recognized that "Coupons

12   promote sales without lowering the price to everyone (that is, holding a 'sale')." *Id.* at 1075 (quoting

13   *Menasha Corp. v. News Am. Mktg. In-Store, Inc.*, 354 F.3d 661, 662 (7th Cir. 2004).  According to the

14   economic definition,"[C]oupons aim to facilitate a sale to a purchaser who would not otherwise

15   purchase a product at a higher price . . . ." *Id.*

16       It is plain that walmart.com Gift Cards are not within the definition of "coupons" set out by

17   Judge Phillips in *True*.  The Gift Cards do not promote a "sale" to the holder of the Gift Card, aiming to

18   attract the consumer to buying a particular good at a discount price where the consumer would not buy

19   that good at a higher price.  The Gift Cards simply do not operate as coupons do.

20       What scant other authority cited by objectors Frank and Sullivan for their contention that the

21   Gift Cards are "coupons" within the meaning of CAFA likewise shows they are not.  For example,

22   Frank relies on *Fleury v. Richemont N. Am., Inc.*, No. C-05-4525 EMC, 2008 U.S. Dist. LEXIS 112459

23   (N.D. Cal. Aug. 6, 2008).  There Judge Chen found that the proposed class action settlement's

24   promised $100 credits to be used for purchase of a Cartier-brand watch from defendant's store "could

25   be characterized as coupons" under CAFA.  *Id.* at *9.  Unlike the Gift Cards here, the Cartier watch

26   credits in *Fleury* expired in two years and did not permit unused amounts to be refunded or carried

27   forward as credit.  *Id.* at *9, 17.  By contrast, the Gift Cards here never expire, they permit unused

28   amounts to carry forward to be used at a subsequent time, and under applicable law they can be

redeemed for cash. *See* Cal. Civ. Code § 1749.5(b)(1)-(2).

Judge Chen analyzed CAFA's legislative history for specific illustrations of other non-cash benefits that Congress intended to be viewed as coupons:  (i) the promise of a crib repair kit or a coupon for $55 toward the future purchase of a specific product; (ii) the promise of discounts on Poland Spring water or free water; and (iii) the promise of free golf gloves or golf balls.  2008 U.S. Dist. LEXIS 112459, *10-11.   The walmart.com Gift Cards do not resemble any of the types of non-cash benefits that CAFA's legislative history suggest could constitute "coupons."[9]

### 3.    The Structure of the Settlement Indicates It Is Not a Coupon Settlement

Two of the critical, oft-cited problems with coupon settlements are that they (i) "require class members to do future business with the defendant in order to receive compensation" and (ii) "'they often do not provide meaningful compensation to class members.'"  *True* 749 F. Supp. 2d at 1069 (citations omitted); *see* Frank Obj. at 6 (citing *True* sources).  This Settlement does not suffer from the problems associated with coupons.  It is because this Settlement is not a coupon settlement.

Here, Class Members are not required to do business with Wal-Mart in order to receive compensation from the Settlement.  If they prefer, they can elect to be compensated in cash, and spend it wherever they wish.  This is because the Settlement provides Class Members with their choice of cash (in the form of a mailed check) or a Gift Card in the same dollar amount as their cash award would be.  Paragraph 6.1.2.3 of the Settlement provides:

> 6.1.2.3.  Any Settlement Class Member who wishes to receive a cash payment instead of a Gift Card shall be eligible to do so . . . .  Cash payments instead of a Gift Card shall be in the same amount as the Gift Card would have been . . . .

The actual claims experience here has shown that Claimants prefer the Gift Cards to the cash.  It means the Gift Cards (as well as the cash) provide meaningful compensation.  It begs the question of how the Gift Cards can rationally be viewed as having any less value than their face value *in cash*.

---

[9] Objector Frank also cites *Sobel v. Hertz Corp.*, No. 3:06-CV-00545-LRH-RAM, 2011 U.S. Dist. LEXIS 68984 (D. Nev. June 27, 2011) for the proposition that the Gift Cards are coupons.  But the *Sobel* case is the classic coupon settlement bearing no resemblance to the Gift Cards here.  The *Sobel* court described the settlement as "strictly a coupon settlement.  There is no settlement fund or any provision for cash payments . . . .  Instead each Defendant would issue a coupon . . . for a discount on a future car rental."  *Id.* at * 13.  The coupons would be "valid for 18 months" and "non-transferable."  *Id.* at *14.

Here over 742,000 class members chose Gift Cards over the same amount in cash.  For them, the Gift Cards plainly provide meaningful compensation. Consequently, there is an absence of the problems associated with coupon settlements.

The objections of Frank and Sullivan to the attorneys' fee request should be overruled.  Because the Settlement Agreement does not provide "coupons," CAFA's requirement at 28 U.S.C. § 1712(a) that a court wait for redemption to occur before determining the settlement value for purposes of awarding a percentage of the fund for attorneys' fees does not apply.

**B.      The Actual Value of the Gift Cards Is Their Face Value**

Objectors Frank, Kress, Sullivan and Zimmerman object that the settlement is unfair and inadequate because there is no evidence that the Gift Cards have any value.  *See*, *e.g.*, Zimmerman Objection at 14 (claiming that with regard to the value of the settlement "the Court is left unable to perform the required analysis because the parties have submitted no evidence whatsoever regarding the real monetary value and likely utilization rate of the coupons.").

**1.      The Settlement Agreement's Provision of an Election Between Cash and Gift Card of Equivalent Value Is Evidence of the Gift Card's "Economic Value" to Class Members**

The objectors pretend that only Gift Cards were promised, totally ignoring the fact that the Settlement gives Class Members their choice of cash (in the form of a mailed check) or a Gift Card.

What is significant is that there is no ceiling in the Settlement Agreement on the number of Claimants who could choose cash.  On its face, the Settlement had the potential to provide only cash. That is, if the over 1.1 million Claimants had all elected to take their *per capita* award in cash, each could expect a check of approximately $12.00.  The objections that the value of the Settlement cannot be discerned ignore this fact.  The value of the Settlement is $27,250,000, not a dollar less.

**2.      The Fact that Claimants' Have Now Exercised Their Choice and the Results Show Gift Cards Were Preferred Over Cash Is Evidence of the Value Class Members Place on the Gift Cards**

The claims period has finished.  Over 63% of the over 1.1 million Claimants have elected to receive the Gift Card.

The fact that more Claimants preferred the Gift Card says much about the economic value of the Settlement.  It strongly indicates what the Class Members perceive the economic value of the Gift

1    Cards actually is.

2          The Settlement Agreement provides that the economic value of a Gift Card is equal to its face

3    value, so a $12.00 Gift Card is worth same as $12.00 in cash.  Over 742,000 Claimants saw the Gift

4    Card as perfectly substitutable for cash.  Presumably this is because the Gift Card can be used at

5    walmart.com to purchase a wide variety of products, including groceries, clothing, health and beauty

6    products, toys, books, music, jewelry, and DVDs.  The Gift Cards can therefore be used to purchase

7    products of actual value.

8          According to two courts that have confronted the task of valuing gift cards in the class action

9    settlement context, the critical variable is whether there is any evidence that class members actually

10   desire the gift cards.  In *Young v. Polo Retail, LLC*, No. C-02-4546 VRW, 2006 U.S. Dist. LEXIS

11   81077 (N.D. Cal. Oct. 25, 2006), Chief Judge Walker evaluated a proposed class action settlement

12   where current and former employees of the Polo retail stores had sued Polo over its policy of forcing

13   employees to buy and wear Polo clothing for work.  The settlement fund made available to class

14   members was $400,000 in cash, and Polo gift cards with a nominal value of $500,000.  Evaluating the

15   fairness of the settlement, Judge Walker's inquiry focused on the question of whether "former

16   employees, who allegedly were forced to buy a great deal of unwanted Polo products, *desire* product

17   vouchers so that they could purchase even more clothes."  *Id.* at *14 (emphasis added).  In the absence

18   of evidence of whether class members would desire Polo vouchers, the court used "anecdotal" evidence

19   of the resale value of the vouchers to conclude their economic value was 80-85% of their face value. *Id.*

20   at *14-15.

21         In *Fernandez v. Victoria Secret Stores, LLC*, No. CV 06-04149 MMM, 2008 WL 8150856

22   (C.D. Cal. July 21, 2008), Judge Morrow evaluated a settlement that provided 100% gift cards for

23   Victoria Secret stores to a class of former job applicants who did one-day job "tryouts" without pay.

24   The court reduced the "actual value" of the settlement to 85% of the gift cards' face amount.  Judge

25   Morrow's inquiry, like Judge Walker's in *Young*, focused on whether the class members would desire

26   gift cards and would therefore use them.  Having no direct evidence of the class members' preferences,

27   the court credited argument by counsel that "most class members applied for employment at Victoria's

28   Secret because they were customers of the store" and so were likely to desire the gift cards and use

them.  *Id.* at *10.  Judge Morrow concluded that "Although the argument is somewhat speculative, the court finds it persuasive" and, when valuing the settlement's benefit to the class, found that the gift cards were worth 85% of their face value.  *Id.*

Here, we have evidence of a type and quality that was absent in *Young* and *Fernandez.*  We have direct evidence that every Class Member who chose the Gift Card actually desired the Gift Card.  Because here there is a direct election between the Gift Card and cash—unlike *Young* and *Fernandez*—we do not have to speculate about the Claimants' desires.  The over 742,000 Class Members who elected to take the Gift Card necessarily desired the Gift Card, more so than the same amount in cash.

Consequently, the actual value of the Settlement is $27,250,000.  Under the controlling law of this Circuit, an attorneys' fee award made pursuant to the percentage-of-the-fund method must be based on the entire settlement fund.  *Williams v. MGM-Pathe Commc'ns Co.*, 129 F.3d 1026 (9th Cir. 1997).

**IV.  SEVERAL OBJECTIONS CAN BE OVERRULED BECAUSE THEY MISUNDERSTAND THE SETTLEMENT TERMS**

**A.  There Is No Reverter to Wal-Mart**

Objectors Stephen Griffis ("Griffis") and Zimmerman erroneously assert that ¶ 11.1.1 and ¶ 11.1.4 of the Settlement Agreement provide for a reverter to Wal-Mart.

Paragraph  ¶ 11.1.1 provides that, only "[i]n the event that the Settlement Effective Date does not occur" the money that Wal-Mart has already funded for notice and claims administration will be refunded to Wal-Mart if there are any "amounts not used" by the claims administrator.  In other words, Wal-Mart would get any unused funds it already paid for notice and claims if and only if the Settlement is not ultimately approved.

Paragraph ¶ 11.1.4 is not a reverter either.  That provision merely states that "[i]n the event that Wal-Mart has transferred monies in excess of the amount needed" to pay out claims, attorneys' fees and expenses, notice and administration costs and incentive awards, Wal-Mart is entitled to a return of excess payments into the fund.

**B.  The Mediation Provision at ¶ 6.1.2.3 Is Not an "Escape Clause" But a Contingency that Has Proven Unnecessary**

Objectors Frank and Zimmerman assert ¶ 6.1.2.3 is an "escape clause" that enables the settling parties to change the terms of the settlement after final approval.  They are incorrect.  The provision

contemplates the possibility that claims for cash could prove prohibitively expensive relative to Gift Card claims, recognizing that the settlement fund bears the cost of mailing checks to those who claim cash.  Paragraph 6.1.2.3 provides that, in this eventuality, the parties "agree to mediation before Judge Layn Phillips to devise alternatives."  We now know from the actual claims experience that the claims for cash will not overwhelm the fund, and the contingency of mediation has been rendered moot.  The objection should be overruled.

### C.   The Settlement Resolves the California State Actions as Against Wal-Mart and Potential Fees for State Action Counsel Will Come from Class Counsel's Fee Award

Objectors Maria Cope ("Cope") and Griffis object to the Settlement to the extent it permits California State Action counsel to win an award of attorneys' fees from anything other than the award of fees to Class Counsel, for that would unfairly diminish the value of the benefit to the Class.  The objection can be overruled on the grounds that the Settlement Agreement at ¶ 13.2 does not permit what objectors Cope and Griffis complain of.  Rather, ¶ 13.2 contemplates that if California State Action counsel is awarded any fee, it will come from the "Cash Component" and not from the component earmarked for distribution to Claimants.

Objector Zimmerman makes the confusing and erroneous objection that the Settlement is "indefinite" by not settling anything or binding anyone, because the California State Action is "ongoing" and there "are too many contingencies" to "provide any certainty that [the Settlement] will be binding upon the parties."  Zimmerman Obj. at 13.  The objection rests on a misapprehension of the mechanics of the Settlement in relation to the California State Actions.  This Settlement resolves the California State Actions as to Wal-Mart.  To the extent Netflix is still a defendant in those actions, it is true the actions would be "ongoing."  But that would not make the Settlement "indefinite" or non-binding on the parties to it.  The objection should be overruled.

## V.   THE COURT-APPROVED NOTICE WAS ADEQUATE

Objectors Cope, Kress, Sullivan and Zimmerman object to various aspects of notice.  All are without merit and should be overruled.

Objectors Cope and Kress object to the notice as inadequate because they assert the notice did not specify the amount each Approved Claim would be worth.  However, it is neither necessary nor

possible for a notice to inform class members exactly what the value of their claim will be if they participate in the settlement where individual recovery is dependent on the number and nature of claims actually submitted. *See In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 253 (D. Del. 2002), *aff'd*, 391 F.3d 516 (3d Cir. 2004) ("The notice did not need to include details such as how much each class member might receive from the settlement (a speculative amount at that stage) . . . .").

Objector Sullivan objects to several aspects of the notice.  First, he claims the notice was inadequate because it did not permit an informed opt-out decision in light of the development, after notice was disseminated, that saw Netflix prevail on summary judgment.  Sullivan Obj. at 17-18, 40.  Sullivan claims that notice stated that the Wal-Mart settlement is a "partial settlement" and that plaintiffs would press on in the case against Netflix for further recovery.  When summary judgment was granted after notice was disseminated, Sullivan claims that this event rendered the already-disseminated notice confusing and defective.  He concedes, however, that the settlement claims website was updated immediately with the summary judgment development and that the notice directed Class Members to the settlement website for updates on the litigation. Sullivan requests that the Class be re-noticed.   This objection is without merit and should be overruled.  In the final analysis, Class Members had all the information needed to make an informed decision on opting out of the Wal-Mart Settlement Class in the originally-disseminated notice, despite the subsequent judgment for Netflix.

Sullivan also objects to the notice on the grounds it was a "dual notice" containing a notice of pendency of the litigation class as well as notice of the Settlement. *Id.* at 16-17.  This objection should be overruled, as Sullivan does not explain how serial notices, which would waste class resources, would be any less confusing than a single notice.

Sullivan further objects to the notice because he claims it inadequately informed the Class of what the amount of the attorneys' fee request would be. Sullivan Obj. at 11.  To the contrary, the notice explicitly stated that Class Counsel would seek an award of fees up to 25% of the fund.

Finally, objector Zimmerman claims the emailed notice was confusing because the "From" field did not state it was a legal notice or give sender information.  Zimmerman Obj. at 11.  Whatever one can say about the "From" field (which stated the email was from "OnlineDVDclass.com"), there is no dispute that the body of the email notice makes clear that it is a legal notice.  The "From" field in an

1  email cannot serve all purposes.  The objection should be overruled.

2  **VI.    REQUIRING CLAIMS FORMS FOR CASH TO BE MADE BY MAIL IS FAIR**

3         Objectors Edmund F. Bandas ("Bandas"), Michelle Dolan, Frank, Kress and Sullivan each

4  object to the Settlement's requirement that claim forms electing cash be mailed on the grounds it is an

5  unfair and unreasonable burden.  They point out that claim forms for cash are not available to be

6  submitted online in addition to being submitted by mail, as claims for Gift Cards are.

7         Requiring claim forms for cash to be submitted by mail does not render the Settlement unfair.

8  Claimants electing cash must be mailed physical checks (by contrast the Gift Cards are delivered

9  electronically).  The cost of mailing the checks is borne by the whole Class, not just Claimants electing

10 cash, as the cost is paid from that part of the fund with monies dedicated to notice and claims

11 administration.  Settlement Agr., ¶ 6.1.2.3.  Were Claimants electing to receive checks not required to

12 mail in their claim forms, arguably it would result in a greater benefit to those Class Members claiming

13 cash at the expense of those claiming Gift Cards.

14        Given the size of the Class, there was a real danger that claims could have overwhelmed the

15 $27.25 million fund.  The goal has been to distribute the settlement money to the Class in a meaningful

16 amount.  Anticipating over a million claims, the cost of postage required to mail checks threatened to

17 materially erode the amount of *per capita* payments to Claimants.  In the end, the claims experience

18 was a success, achieving a balance between claims for cash and claims for Gift Cards.  Tellingly, the

19 mail-in requirement can hardly be viewed as much of a "roadblock" (Frank Obj. at 9-10) when over

20 400,000 Class Members put their claim form in the mail to claim payment in cash.  The requirement

21 that claims for cash be mailed does not render the Settlement unfair.  The objections to this effect

22 should be overruled.

23 **VII.   ALLOCATING PAYMENTS IN AN EQUAL AMOUNT TO ALL CLAIMANTS IS FAIR
         AND REASONABLE**

24        Objectors Bandas and Tracy Klinge Cox object to the Settlement's plan of allocation whereby

25 all Claimants are treated equally in receiving a per capita amount, regardless of how long a Claimant

26 has been a Netflix subscriber.

27        The proposed allocation recognizes that while the settlement proceeds of $27.25 million is a

significant amount of money, balanced against an estimated 35 million Class Members, it is necessary to minimize administration costs in order to have a chance to distribute the settlement proceeds meaningfully.  A perfect plan of allocation might calibrate Class Member's damages and tailor individual recoveries to factors such as the number of months of the Netflix subscription, whether the Claimant had a 2-out or 3-out plan or switched amongst plans, and other factors.  This would mean, however, that Claimants would need to submit considerable documentation to support their claim. Moreover the expense of administering a claims process to handle the substantial documentation, increased fraud detection efforts and the cost of building and implementing a formula to award tailored claim amounts would likely drain the settlement proceeds to the detriment of all Class Members.

A plan of allocation, however, need not be perfect, but only need be fair and reasonable.  This means "[a]n allocation formula need only have a reasonable, rational basis . . . " *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 344 (S.D.N.Y. 2005) (citation omitted).  The plan of allocation here, treating all Claimants equally, is fair and reasonable.  The objections should be overruled.

## VIII.  THE INCENTIVE AWARDS TO SETTLEMENT CLASS REPRESENTATIVES ARE REASONABLE

One objector, Griffis, objects to the proposed $5,000 incentive awards for nine Settlement Class Representatives to be excessive.  Here, the record supports the proposed awards.  The named plaintiffs worked with counsel, prepared for and then gave deposition testimony, produced documents and information essential to fulfilling discovery obligations, and stayed abreast on critical aspects of the litigation.  The $5,000 amount is in line with awards for analogous participation in class litigation.  *See Staton v. Boeing Co.*, 327 F.3d 938, 976-77 (9th Cir. 2003) (finding incentive awards between $2,000 and $25,000 reasonable depending on participation in litigation).  Moreover, the total in requested incentive awards is modest in relation to the $27.25 million recovered from Wal-Mart.  The objection should be overruled.

## IX.  OTHER OBJECTIONS CONCERNING THE FAIRNESS OF THE GIFT CARDS ARE WITHOUT MERIT

Objector Kress asserts that an award in the form of a gift card to an online retailer like Walmart.com is unfair for those Class Members who do not like online shopping.  Kress Obj. at 1, ¶ 2. "If the claimant is not an online shopper, the gift card has no value." *Id.*  This objection is meritless.

This hypothetical Class Member can elect cash, but the supposition begs the question of why the hypothetical Class Member subscribed to Netflix, an enterprise conducted online.

Objector Kress further objects to the Gift Cards as unfair because Class Members who use them cannot do so "without incurring additional taxes and shipping." *Id.* 2, ¶ 6. Of course, taxes and shipping costs are not confined to gift card use. Those costs are ubiquitous in cash transactions as well. This objection should be overruled.

## X. THE CLAIM FORM IS SIMPLE, STRAIGHTFORWARD AND FAIR

Objector Sullivan objects to the Settlement as unfair on the grounds that the claim form is confusing. According to Sullivan, the claim form's utilization of two boxes (check one to elect cash, check the other to elect the Gift Card, but only check one box) will cause "numerous class members [to be] confused and who choose both a gift card . . . and cash . . . ." Sullivan Obj. at 15. Plaintiffs acknowledge that this has occurred in some instances (whether due to confusion or other reason), but state that the deficiencies have been or are continuing to be identified and dealt with by the claims administrator in the ordinary course. However, the incidence is less than 0.8% of claims, which indicates the claim form was not unreasonable.

## XI. OTHER GROUNDS FOR OBJECTING TO THE ATTORNEYS' FEE REQUEST ARE WITHOUT MERIT

Objector Frank contends that the valuation of the Settlement for purposes of determining the attorneys' fee award should exclude the payment by Wal-Mart of the over $4.5 million in notice and administration costs. Frank Obj. at 12-15. There is no dispute that Wal-Mart is paying the sum in connection with the Settlement. Consequently, under controlling Ninth Circuit law the attorneys' fee award must be based on the entire fund created by the settlement, not just the part of the settlement proceeds subject to claim by class members. *Williams*, 129 F.3d 1026.

Frank argues that notice and claims administration efforts do not benefit the class. But courts routinely hold otherwise. "[C]ourts base the fee award on the entire settlement fund as that package is the benefit to the class. This amount includes notice and administration costs and separately paid attorneys' fees and costs." *Hartless*, 273 F.R.D. at 645; *see also In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 354 (N.D. Ga. 1993) (holding that the expenses of notice and claims

administration, especially the cost of distributing awards to the class, "inures to the benefit of the class.").

Objector Sullivan makes the novel objection that the requested attorneys' fee award is too high because, by Mr. Sullivan's analysis of the attorney time records, Class Counsel spent only 5% of their time on the Settlement, while the other 95% of the time was spent litigating the case. Sullivan Obj. at 21-25. Mr. Sullivan requests that the Court limit the attorneys' fee award to only the "time spent on the settlement under ABA Task Code 160." *Id.* at 22. The objection should be overruled. Absent Class Counsel litigating the case, there would be no settlement recovery at all. Where attorneys create a common fund, under the controlling law of this Circuit the attorneys' fee request made pursuant to the percentage-of-the-fund method must be based on the entire settlement fund. *Williams*, 129 F.3d 1026.

Sullivan further objects on the grounds that Class Counsel did not document its lodestar with detailed time records. Sullivan Obj. at 20 (acknowledging that "Class Counsel presents many pages of charts and summaries in its fee petition" but not "actual time records"). However, where, as here, Class Counsel requests a percentage of the common fund, full, detailed time records are not required. *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 943-45 (9th Cir. 2011) (requiring assessment of the hours reasonably expended on the litigation under the lodestar method but not percentage-of-the-fund method). In any case, Class Counsel has provided declarations with summary back-up documentation of the lodestar for the Plaintiffs' Steering Committee firms. That lodestar alone exceeds $20 million and the supporting information is sufficient for a lodestar cross-check.

The remaining objections on the attorneys' fee request are generic, unsupported, non-fact and non-law objections that the requested fee amount is too high. Plaintiffs refer to the reasoning in their Motion for Award of Attorneys' Fees (ECF No. 564) as response to these objections.

## XII. CONCLUSION

Accordingly, the objections lodged against the Settlement, the plan of allocation and the request for an award of fees and expenses are meritless and should be summarily overruled.

///

///

///

DATED: February 28, 2012

Respectfully submitted,

BY:   s/Robert G. Abrams
        Robert G. Abrams (*pro hac vice*)

Gregory L. Baker (*pro hac vice*)
**BAKER & HOSTETLER LLP**
Washington Square, Suite 1100
1050 Connecticut Avenue, NW
Washington, DC 20036-5304
Telephone:  (202) 861-1699
Facsimile:  (202) 861-1783
Email: rabrams@bakerlaw.com
        gbaker@bakerlaw.com

*Lead Counsel and Member of the Steering Committee
for Plaintiffs in MDL No. 2029*

Guido Saveri (22349)
R. Alexander Saveri (173102)
Lisa Saveri (112043)
David Sims (248181)
**SAVERI & SAVERI, INC.**
706 Sansome Street
San Francisco, CA 94111
Telephone:  (415) 217-6810
Facsimile:  (415) 217-6813
Email: guido@saveri.com
        rick@saveri.com
        lisa@saveri.com
        dsims@saveri.com

*Liaison Counsel and Member of the Steering Committee
for Plaintiffs in MDL No. 2029*

Joseph J. Tabacco, Jr. (75484)
Christopher T. Heffelfinger (118058)
Todd A. Seaver (271067)
Matthew W Ruan (264409)
**BERMAN DEVALERIO**
One California Street, Suite 900
San Francisco, CA 94111
Telephone:  (415) 433-3200
Facsimile:  (415) 433-6382
Email: jtabacco@bermandevalerio.com
        cheffelfinger@bermandevalerio.com
        tseaver@bermandevalerio.com
        mruan@bermandevalerio.com

Eugene A. Spector
Jeffrey J. Corrigan
William G. Caldes
Theodore M. Lieverman
Jay S. Cohen
Jonathan M. Jagher
**SPECTOR ROSEMAN KODROFF & WILLIS, P.C.**
1818 Market Street, Suite 2500
Philadelphia, PA 19103
Telephone:  (215) 496-0300
Facsimile:  (215) 496-6611
Email: espector@srkw-law.com
      jcorrigan@srkw-law.com
      bcaldes@srkw-law.com
      tlieverman@srkw-law.com
      jcohen@srkw-law.com
      jjagher@srkw-law.com

H. Laddie Montague, Jr.
Merrill G. Davidoff
David F. Sorensen
Sarah R. Schalman-Bergen
**BERGER & MONTAGUE, P.C.**
1622 Locust Street
Philadelphia, PA 19103
Telephone:  (215) 875-3010
Facsimile:  (215) 875-4604
Email: hlmontague@bm.net
      mdavidoff@bm.net
      dsorensen@bm.net
      sschalman-bergen@bm.net

*Members of the Steering Committee for Plaintiffs in MDL No. 2029*

## E-Filing Attestation

I, Todd A. Seaver, am the ECF User whose ID and password are being used to file this document.  In compliance with General Order 45 X.B., I hereby attest that Robert G. Abrams has concurred in this filing.

s/ Todd A. Seaver
Todd A. Seaver